IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>KELLEY TASHIRO<br><br>Defendants | Case No. 1:13-cv-00205-WTL-MJD<br><br>Hon. Mark J. Dinsmore |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSIBLE PARTIES, MOTION TO
STRIKE EXHIBIT C AS IMMATERIAL & SCANDALOUS**

Now Comes Kelley Tashiro ("Tashiro"), by and through counsel, who supplies this Memorandum in Support of her Motion to Dismiss for Failure to Join Indispensible Parties and Motion to Strike Exhibit C as Immaterial & Scandalous:

**I.   Introduction**

Plaintiffs have outmaneuvered the legal system.  They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video. Then they offer to settle—for a sum calculated to be just below the cost of a bare-bones defense. For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with illegally downloading porn. So now, copyright laws originally designed to compensate starving artists allow, starving attorneys in this electronic-media era to plunder the citizenry.

*Ingenuity 13, LLC v. John Doe,* No. 2:12-cv-8333-ODW(JCx) (ECF No. 130, p. 1) (C.D. Cal. May 6, 2013) (Wright, J.) (discussing a similar case that had a mass-Doe strategy).

*Malibu Past*

The Plaintiff, Malibu Media, LLC ("Malibu") is a pornographer and serial litigator, bringing its business-litigation model to courts across the country.  Malibu came into existence on February 8,

1

2011.  Since that time, it has been pushing forth a tsunami of suits[1] in federal courts, including at least 39 in the Southern District of Indiana. Malibu previously engaged in its business model by filing what were more-or-less reverse class action lawsuits.  In those cases, Malibu alleged that by use of the Bit Torrent protocol, Does, such as the current one, act as part of a swarm.  This swarm, allegedly, results in dozens or hundreds of people acting interpedently to infringe Malibu's alleged rights.  Malibu would sue dozens, or hundreds of Does, harvest their contact information, collect settlements without serving Does, and move on to the next case.  This profitable venture had costs of only a $350.00 filing fee and the drafting of a cookie-cutter Complaint & Motion for Expedited Discovery.

It is true that Malibu has now brought one case to trial.[2]  However, it has done so only after being forced to and against a perjurious defendant.  A mere drop of water in a pond.  A review of the cases Malibu brings forth makes it apparent that upon such any meaningful opposition, Malibu has cut and run. Presumably, Malibu does so because the business model has been judicially recognized to extract quick-settlements, rather than actually litigate any case on its merits.  *See, e.g., Third Degree Films, Inc.*, 2012 U.S. Dist. LEXIS 59233, *11-12, *see also*, *Malibu Media LLC v. John Does 1-10*, No. 12-03623 (ECF Doc. 7 at 6), 2012 U.S. Dist. LEXIS 89286 at *8-9 (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in a plaintiff's copyright-enforcement business model.  The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to a trial.").

*Malibu Present*

It appears that now, after a nationwide rejection of the swarm-theory for purposes of joining hundreds of Does, Malibu's pendulum has swung inappropriately far to the other direction.   Malibu

---

[1] According to PACER, Malibu appears to be involved in well over eight-hundred suits, despite existing for only a little over two years, according to public records from the California Secretary of State.
[2] *Malibu Media, LLC v. Does 1-22*, Case No. 5:12-cv-02088-MBB (E.D. Penn).

is now cherry picking defendants and leveling dozens of alleged infringements against them, along with accusing them of downloading other films that have nothing to do with the case at hand.  Why?  The only reason would be to create the impression of a case so massive that the settlement percentages increase – now that Malibu must pay a filing fee for every Doe.

In doing so, however, Malibu has left out all-important initial seeders and at least one third-party Doe.  This new business model is in contravention of nearly every case Malibu has previously filed across this country.  As explained below, this new business-litigation strategy is as fatally flawed as the last.

*Procedural History*

This particular iteration of the business-litigation strategy of Malibu commenced when Malibu filed its cookie-cutter Complaint against an unknown person, based solely upon an Internet protocol ("IP") address that <u>does not identify an infringer</u>.  (ECF Doc. 1).  Despite having no knowledge of whether or not Doe is the actual-infringer in this case, Malibu has sought relief and was granted, *ex parte*, relief that would allow it to discover the identity of the person paying the bill for the IP address 76.23.79.204.  (ECF Docs. 3, 10).  Tashiro's identifying information was discovered, and she was served.  (ECF Doc. 15, 16).  Since that time, she has been granted an extension of time to move.  (ECF Doc. 20).

II. **Legal Argument**

  1. <u>When Malibu has failed to join the initial seeder, an indispensable party, the complaint should be dismissed (Fed. R. Civ. P. 19)</u>

A case may be dismissed for failure to join appropriate parties.  Fed. R. Civ. P. 19.  The Court should undertake a two-step analysis and determine (i) whether an absent party is necessary to the suit, and, (ii) if so, and if that party cannot be joined, whether the party is indispensable so that in good conscience and equity, the suit should be dismissed.  *Clinton v. Babbitt*, 180 F.3d 1081,

1088 (9th Cir. 1999). Here, indispensable parties are absent, and this Court cannot find in good conscience and equity that they should remain un-joined. Accordingly the suit should be dismissed.

In the past, Malibu Media has relied on a swarm-joinder theory – going to great lengths to assert that all members of a so-called swarm[3] act interdependently and in concert to distribute a work and infringe on its rights. In fact, all cases Malibu filed in the Central District of Illinois, until April of this year, asserted such a theory, over and over again. In those cases, Malibu explained why an initial seeder and other Does were important in such an action, indicating: the Does are jointly and severally liable, the Does act in concert, that Bit Torrent requires a swarm, that there must be an initial seeder who starts the process, that all Does work together. *See, e.g., Malibu Media v. Does 1-14*, Case No. 2:2012-cv-02159-HAB-DGB (ECF Doc. 1,¶ ¶ 10, 15, 19, 29, 30, 31) (C.D. Ill. June 14, 2012). Malibu in other Courts has fought to keep all the Does and seeders together when faced with motions to sever, based upon misjoinder. Changing gears, after rejection of swarm joinder in this court and many other courts, Malibu now attempts to sue a single Doe while leaving out indispensable parties – the initial seeder and at least one additional participant in the swarm. Malibu's new tactic amounts to alleging an impossibility – a one-man swarm. Whether or not a mass-joinder of individuals over months is appropriate is not an issue today. What is at issue is whether an initial seeder and at least one-third party must be joined.

*Initial Seeder*

The alleged infringement simply cannot occur without an initial seeder. There must be a person that originally uploads the work, and already having the full file, will not be downloading from any subsequent swarm member. That initial seeder may, in fact, have a legal privilege or right to

---

[3] A term that does not appear in this particular Complaint.

publish or distribute the works for free.[4] If this is the case, then Doe could not have infringed by downloading the Work.

One court, dealing with an intellectual property matter put forth that an unjoined party's rights and actions might affect the outcome of litigation; an absent party must be joined to the action. *Musumeci v. Reborn Products Co., Inc.* 184 U.S.P.Q. 736 (E.D. Pa. 1974) (requiring joinder of the intellectual property rights owner in a breach of contract claim when the patent's validity and underlying rights would have affected the litigation). *Musumeci* is on all fours with the case before the Court today. The validity of the rights asserted by Malibu hinges on a non-party, the initial seeder. This concern over validity is a real concern, considering Malibu's investigator's past.

The investigator retained by Malibu – IPP Ltd. ("IPP") – in this matter was formed under the laws of Germany and is a successor – sharing personnel – to a German company formerly known as Guardaley. Previously, a German law firm retained Guardaley for the similar purposes to Malibu's. That firm later sued Guardaley for being aware of serious flaws in its collections systems, and not disclosing them. Upon Guardaley's appeal to an injunction, the law firm was able to successfully assert that Guardaley operated a "honeypot" scheme. That is, <u>IPP's predecessor was the initial seeder in actions such as this, baiting the Does</u>. See Exhibit A.

In this case, where Malibu has not named or sued an initial seeder is combined with the judicially recognized problematic tactics utilized by plaintiffs such as Malibu in the past, there is reason to entertain the possibility that IPP, or one of its affiliates, may be the initial seeders for the Works. If this is the case, not only should a dismissal be had, but also further investigation into the

---

[4] While at first glance, this may seem like a dubious proposition, it is a real possibility. For example, as to the X-Art Works, one can easily find and view films with that name, among others at http://www.pornhub.com/users/x-art. Many, if not most of the Works can be found this way. E.g., Anneli Leila Menage A Trois can be found here: http://www.pornhub.com/view_video.php?viewkey=2091967778.

matter should be conducted. If it was IPP, or an affiliate, that was the initial seeder, there can be no infringement.

Overall, in Malibu's new one-man-swarm theory, an impossibility, defendants such as Tashiro cannot defend themselves. The initial seeder, possibly having rights to distribute the Work, would provide a defense to her and is an integral part of the action. If the initial seeder committed no infringement, Tashiro could not have either. Accordingly, without this indispensable party joined, the suit should be dismissed.

### Additional Doe

Additionally, in order to "copy" or "distribute" the work, as alleged in the Complaint, there necessarily must have been some transmission by Tashiro to a third-party.[5] The third-party could not possibly be the seeder, because the seeder already has has the full file and would not download something it already possessed. Accordingly, there must be at least one other person alleged to have infringed as well, and joined as a party. On the face of the Complaint, this person exists, as Tashiro did not provide the entire file to IPP. Complaint, ¶¶18, 20. This makes third-party Doe an indispensible party to the action.[6] At least one transaction between Movant Doe and third-party Doe has to have occurred. If not, there is no distribution-infringement occurring, or, the there is simply no mandated joinder. Either way, the Complaint is fatally deficient.

Here, it is evident that there are indispensable parties absent from this action. This Court cannot find in good conscience and equity that they should remain un-joined. To do so would fatally handicap the ability of Tashiro to defend herself and be a waste of judicial resources. Accordingly the suit should be dismissed pursuant to Federal Rule of Civil Procedure 19.

---

[5] Such a transaction would not give rise to a slippery slope of mass-joinder issues Courts have faced before, as it is the same transaction.
[6] A second Doe that participated in the same transaction or occurrence would possibly cut down on Movant Doe's liability, as Malibu can only seek damages per work infringed, not per Defendant infringed. 17 U.S.C. § 504(c)(1). Accordingly, if the second Doe settled, the amount sought by Malibu against Movant Doe would decrease.

2. <u>Exhibit C serves no purpose in this litigation, and should be stricken</u>

This Court can strike any immaterial or impertinent materials. Fed. R. Civ. P. 12(f). Malibu admits that Exhibit C is immaterial, as the "copyrights-in-suit are solely limited to content owned by Plaintiff as outlined in Exhibit B." There is no purpose for this additional Exhibit, C, other than to possibly increase settlement success ratios through fear, a possibility due to Malibu's mass-Doe to single-Doe switch. For this reason, it should be stricken.

### III. Conclusion

For the foregoing reasons, Defendant Doe respectfully requests that this Honorable Court grant its motion.

Respectfully submitted,

/s/Jonathan LA Philips
Jonathan LA Phillips
One of Her Attorneys
456 Fulton St.
Ste. 255
Peoria, IL 61602
309.494.6155
jphillips@skplawyers.com
IL ARDC No. 6302752

**Certificate of Service**

I certify that on June 12, 2013 a copy of the foregoing has been filed with the Clerk of the Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Jonathan LA Phillips