**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| MALIBU MEDIA, LLC | |
| Plaintiff, | |
| v. | Case No. 1:13-cv-00205-WTL-MJD |
| KELLEY TASHIRO | Hon. Mark J. Dinsmore |
| Defendants | |

**MOTION TO REQUIRE PLAINTIFF TO POST BOND FOR COSTS & EXPENSES**

Now Comes KELLEY TASHIRO ("Tashiro"), by and through counsel, who moves this Court for an order requiring the Plaintiff, Malibu Media, LLC, to post a bond in the amount of at least $250,000.00 for costs and expenses, representing a portion of the potential attorney's fees and expenses Tashiro could reasonably expect to incur in this matter.

I.   **Introduction**

While courts, in most cases, do not require plaintiffs to post bond to cover a defendant's potential costs and expenses if a defendant were to prevail, the case at hand is not a "most cases" situation.  In copyright cases, a prevailing defendant is entitled to recover costs, which may include attorney's fees.  17 U.S.C. § 505.  The Seventh Circuit has stated that the presumption in awarding fees to a prevailing Defendant is "very strong."  *Assessment Techs of Wis. LLC v. Wire Data, Inc.* 361 F.3d 434, 436 (7th Cir. 2004).  Malibu is a California company, whose bank accounts and assets are located outside the jurisdiction of this Court.  Accordingly, *if* such costs are awarded, it will be unduly difficult for the Defendant to enforce the collection of the same.

Ordering Malibu to undertake a bond will, at the worst, simply level the playing field for Tashiro who may otherwise be forced into paying a nuisance value settlement.  It goes without saying that not all defendants are paying settlements because they are guilty, some may be paying

them out of shame or for fear of embarrassment.  However, importantly, as Judge Wright noted above, but also because of the cost of fighting such suits, and the <u>potential inability to recoup legal fees even if awarded</u> is certainly a factor for many.  Exhibit B to this Motion clearly indicates that this is a factor considered by at least one of Malibu's attorneys.  This is especially the case when Malibu is attaching the "enhanced surveillance" Exhibit C, which is immaterial, and likely sanctionable under Rule 11(b).  *Malibu Media, LLC v. Doe*, Case No. 3:13-cv-00205 (ECF Doc. 7, at 4) (dealing with similar exhibits to Exhibit C in this case, stating that, "One needn't be a cynic to suppose that an intended purpose–perhaps the primary purpose–of Exhibit C to the complaint in each of these lawsuits is to increase the pressure on a subsequently identified Doe defendant to settle before s/he is publicly linked to hardcore/deviant titles that are completely irrelevant to plaintiff's actual claims in the lawsuit. If this is true–and right now it is the court's operating hypothesis–then plaintiff probably has violated F.R. Civ. Pro. 11(b)(1).")

The result of such a bond may be that further "plundering of the citizenry" ceases. According to Malibu's Complaint, it would seem that it simply means that the funds will be posted, and they will accumulate interest, and be returned to Malibu.  However, to fail to require this undertaking will simply make it more difficult, if not impossible, for Tashiro and other defendants to recover their costs and attorney's fees from a Plaintiff outside this jurisdiction if successful on the merits of their cases.[1]

## II.  Legal Argument

In support of her position, Tashiro submits the following arguments.

1.      This Court has discretion to force the posting of such bond

It must go uncontroverted that this Court has the power to ensure that Malibu will pay costs, including attorney's fees, incurred by Tashiro if he prevails in this matter.  *See, e.g.,*

---

[1] This is the purpose of the bond, in other words, "to ensure that a prevailing party will be able to collect a judicial

*Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994); *AF Holding LLC v. Trinh*, Case No. 12-cv-02393-CRB (ECF Doc. 24) (N.D. Cal. Nov. 9, 2012). As recognized by many Circuits, the fundamental issue surrounding security for costs – and here attorney's fees – is procedural; accordingly, it is this Court's discretion in administering a procedural matter, which is far-reaching. *See, Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir. 1980); *Lance, Inc. v. Dewco Svcs*, 422 F.2d 778, 773-84 (9th Cir. 1970); *Wawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 143 (1st Cir. 1976). Thus, while the Southern District of Indiana may not have a local rule pertaining to bonds in most civil cases, it obviously has jurisdiction to do so. In fact, at least one Appellate Court has approved of local rules that required plaintiffs to post bonds. *See, Aggarwal v. Ponce Sch. of Medicine*, 745 F.2d 723, 727-28 (1st Cir. 1984).

> 2.    Elements approved by at least one appellate court are present in the case at bar, and accordingly, bond should be posted

The First Circuit approved of three elements to consider when requiring a Plaintiff to post bond. They are as follows:

> (1) the plaintiff's probability of success on the merits, and the background and purpose of the suit; (2) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (3) the reasonable extent of the security to be posted, if any, viewed from the non-domiclary plaintiff's perspective.

*Id.*, *see also*, *Hull v. Municipality of San Juan*, 230 F.Supp2d 239, 241 (D.P.R., 2002); *accord*, *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d at 574; *AF Holding LLC v. Trinh*, Case No. 12-cv-02393-CRB (ECF Doc. 24) (N.D. Cal. Nov. 9, 2012). These elements fall squarely in favor of Tashiro, as shown below.

> a.    Probability of Success

Malibu may be one of the most notorious mass-Doe plaintiffs in existence. In its short time of existence, it has filed well over nine hundred lawsuits across the United States. Malibu bases its

3

complaints, including this one, on extremely tenuous circumstantial evidence – to put it mildly – that other Courts have found unlikely to succeed.  *See, e.g. AF Holdings v. Trinh,* Case No. 3:12-cv-2393-CRB (ECF Doc. 23 at 2)(N.D. Cal. Nov. 9, 2012); *Ingenuity 13, LLC v. John Doe,* No. 2:12−cv−8333−ODW(JCx) (ECF No. 130, p. 3) (C.D. Cal.May 6, 2013) (Wright, J.) (suggesting the complaints, and subsequent investigations in these sorts of cases are based upon a "hunch").

Additionally, independent academic experts have published papers regarding this issue. *See,* Piatek, M., et al, *Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice*, USENIX HOTSEC 2008, *at* http://dmca.cs.washington.edu/dmca_hotsec08.pdf ("Copyright holders utilize inconclusive methods for identifying infringing BitTorrent users. . . . there is currently no way for anyone to wholly avoid the risk of complaints." (pp. 1, 6)).  Attached hereto as Exhibit A - as highlighted by Tashiro.

It should also be noted that Malibu goes so far as to state that Tashiro is only "the most likely infringer."  *See,* Comp. ¶ 24.  In other words, it is operating on a hunch.  Other courts have dealt with this issue and stated that:

> The disconnect is how Plaintiff arrived at this conclusion – that the actual infringer is a member of the subscriber's household (and not the subscriber himself or anyone else) – when all it had was an IP address, the name of the Bittorrent client used, the alleged time of download and an unresponsive subscriber.

*Ingenuity 13, LLC v. John Doe*, No. 2:12−cv−8333−ODW(JCx) (ECF No. 130, p. 6) (C.D. Cal.May 6, 2013).   Due to the tenuous nature of Malibu's "hunch", there is certainly a probability of success on the merits.  Additionally, the evidence Malibu has collected does not make this hunch any more likely.  The fact of the matter is that the hunch is wrong, and Tashiro does not know who could have infringed.  *See*, attached Declaration of Kelley Tashiro, Exhibit E.

Perhaps, this Court would be reluctant to dismiss a BitTorrent case, as this, outright, because of the technical complexity of the case.  In doing so, this Court would necessarily allow cases like this to proceed as far as summary judgment.  This not only embarrasses Tashiro, but also runs up up large legal costs for her.  Judge Otis Wright has been able to aptly and simply frame this issue, and indicated, essentially, that there has not been a reasonable investigation in these sorts of cases.

> To allege copyright infringement based upon an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it.  No Court would allow a lawsuit to be filed based on that amount of evidence. . . . In the former case, some chocolate was taken, in the latter case, an encrypted, unusable chunk of zeroes and ones. . . . If a download was not completed, Plaintiff's lawsuit may be deemed frivolous.

> *Ingenuity 13, LLC v. John Doe*, No. 2:12−cv−8333−ODW(JCx) (ECF No. 130, p. 5 - 6)

(C.D. Cal.May 6, 2013).  Further, "a reasonable investigation should include evidence showing that Defendants downloaded the entire copyrighted work – or at least a usable portion. . . " *Id.* at 6.  As indicated by the Complaint, Tashiro has been accused of only uploading a single bit of information, at a single moment in time.  ECF Doc. 1-1.  All of these concerns are doubled by the behavior of IPP, the investigator, as explained in a previous motion's memorandum.  (ECF Doc. 23 at 5-6).  This snapshot is simply not sufficient to show that there was any copyright infringement.

Malibu has not taken a single one of its 900 plus cases to a <u>full</u> trial.[2]  Until the single bellwether trial, a sure-fire win for Malibu when it was undertaken, it, like most other mass-Doe Plaintiffs, cut and run when facing opposition.  This behavior also calls into question its ability to

---

[2] Taking a single case out of nearly one thousand to a "bellwether trial" where no cross-examination was had, with one Defendant who engaged in spoliation of evidence and lying under oath, with two other Defendants admitting liability and only going to trial on damages cannot be called a full trial. *See, Malibu Media v. Does*, Case No. 12-cv-2078 (ECF Doc. 203) (E.D. Penn. June 18, 2013).

prevail.  It is likely that Malibu will respond that it can prevail.  If that is its position, Malibu should not mind posting bond, which it will get back, with interest, if it does prevail.

Finally, this Court may question the probability of success in obtaining attorney's fees as part of costs.  As noted above, the Copyright Act authorizes the same.  17 U.S.C. § 505.  This is likely to prevent defendants from being forced into settling for nuisance values.  *Assessment Technologies of Wisconsin, LLC*, 361 F.3d at 436 ("when the prevailing party is the defendant, who by definition receives not a small award, but no award, the presumption in favor of awarding fees is very strong.  For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights.") (emphasis Tashiro's).

These Bittorrent copyright cases are weak, based on tenuous hunches, and the investigative techniques utilized by Malibu are unsound.  If he succeeds, the law favors awarding Tashiro her costs, and as part of that, her attorney's fees.   Tashiro has shown this, and accordingly, has demonstrated that he has a reasonable chance to succeed on the merits of this case.

   b.   The background of the suit suggests bond be posted

Plaintiff's attorney is one of a handful of well-organized lawyers who regularly file suits like this across the United States.  Malibu has cases filed throughout the United States, most with the same cookie-cutter complaints and allegations and Malibu counsel have filed amicus briefs in each-other's cases.

Courts across the country have repeatedly questioned the tactics employed by BitTorrent copyright infringement plaintiffs, noting the cookie-cutter complaints[3] and filings are calculated not

---

[3] This Court has recognized this fact in previous iterations of cases such as this.  *See, e.g. In re BitTorrent Copyright Infringement Cases*, Case no. 1:12-cv-1189-MMM-JAG (ECF Doc. 12 at 8) (C.D. Ill. Feb. 11, 2013).  In doing so Court has prevented further mass-Doe cases from being brought at the same rate as other locations.  (recommending that Plaintiffs and their counsel "be filed as separate actions against each John Doe.") *Id.* at 12.

to recover for legitimate reasons, but to extort cost-of-defense nuisance value settlements.  *See, Malibu Media, LLC v. Doe*, Case No. 3:13-cv-00205 (ECF Doc. 7, at 4) (same plaintiff, similar Exhibits, "One needn't be a cynic to suppose that an intended purpose–perhaps the primary purpose–of Exhibit C to the complaint in each of these lawsuits is to increase the pressure on a subsequently identified Doe defendant to settle before s/he is publicly linked to hardcore/deviant titles that are completely irrelevant to plaintiff's actual claims in the lawsuit. If this is true–and right now it is the court's operating hypothesis–then plaintiff probably has violated F.R. Civ. Pro. 11(b)(1)."); *Ingenuity 13, LLC v. John Doe,* No. 2:12-cv-8333-ODW(JCx) (ECF No. 130) (C.D. Cal. May 6, 2013); *Voltage Pictures, LLC v. Does 1-198, Does 1-12, Does 1-34, Does 1-371*, Case no. 6:13-cv-290-AA, Order p. 8-10 (OR May 4, 2013)(referring to the "underhanded business model" which the "court will follow the majority of other courts in declining to condone this practice. . . "); *Malibu Media LLC v. John Does 1-16, John Does 1-14, John Does 1-22*, Civil Action Nos. 12-2078, 12-2084, 12-2088, 2012 WL 4717893, at *9 (E.D. Pa. Oct. 3, 2012) ("If [p]laintiff decides instead to continue to 'pick off individual John Does, for confidential settlements, the Court may draw an inference that [p]laintiff is not serious about proving its claims, or is unable to do so."); *Malibu Media LLC v. John Does 1-10*, No. 12-03623 (ECF Doc. 7 at 6), 2012 U.S. Dist. LEXIS 89286 at *8-9 (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in a plaintiff's copyright-enforcement business model.  The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to a trial.").

The Plaintiff has already explained that it intends to make use of summary judgment motions and expert witnesses, and otherwise engage in costly and expensive litigation practices. (ECF Doc. 26).   In addition, Plaintiff, without even having seen what affirmative defenses or counter-claims might be filed, despite operating on a hunch, has alleged they would be baseless and without evidence. *Id* at 4.   In doing so, of course, Defendant must defend herself, at great cost.

This aspect of the background of the case certainly tends towards having Malibu post an undertaking that is reasonable to Tashiro, and that Malibu can afford.

          c.        Reasonableness of amount – Defendant's perspective

Tashiro puts forth the reasonable position that a reasonable amount of security would be the amount that he would reasonably be expected to spend defending himself.  As noted above, there is a strong presumption that Doe's costs, including attorney's fees, should be awarded if he is successful.  17 U.S.C. § 505; *Assessment Technologies of Wisconsin, LLC*, 361 F.3d at 436.  The issue is how do we estimate this amount?

The Federal Circuit, which handles a relatively high number of intellectual property appeals has approved of the use of the American Intellectual Property Law Association's Economic Survey. *See, View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 987 (Fed. Cir. 2000). AIPLA's recent surveys show that copyright litigation in the "Other Central" region of the United States, in cases involving less than one-million dollars, will cost around $250,000.00 through trial. *See,* Exhibit C.  In fact Malibu's counsel in other cases, has indicated[4] that defending a case would cost $600,000.  *See* Exhibit B (communication by Malibu's attorney, Mr. Lipscomb, as filed as an exhibit in that case).  Regardless of the $350,000 difference in costs according to Malibu's attorney, the amount is "indubitably in the 6 figures."  *Id.*

Perhaps, Tashiro and her counsel are overly-optimistic that going to trial will not cost over a half million dollars.  For one, it is evident that Malibu's case is based upon complex technical analyses of Internet traffic, that expert witnesses will be required – somewhat unusual for copyright infringement suits – and preparation for dealing with these issues will be extensive.  Malibu has already pre-emptively threatened to have counter-claims and affirmative defenses dismissed and to file for summary judgment.  Despite this, is only fair that Tashiro underestimate, rather than

---

[4] Perhaps, more appropriately, threatened.

overstate, the amount of undertaking it requests Malibu to post as a bond.  Accordingly, to the Defendant, $250,000.00 is a reasonable, if not low, amount of bond to be posted.

> d.      Reasonableness of amount – Plaintiff's perspective

If the amount estimated to be spent by Tashiro is reasonably based upon a judicially accepted survey, then it would seem that Plaintiff should have to live with the same.  To do otherwise would allow Malibu to place the burden of financing its business model upon Internet Service Providers and this Court.  *Malibu Media LLC v. John Does 1-10*, No. 12-03623 (ECF Doc. 7 at 6), 2012 U.S. Dist. LEXIS 89286 at *8-9 (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in a plaintiff's copyright-enforcement business model.").  Allowing it to avoid doing so so would tip the scales impossibly in Malibu's favor – a fact BitTorrent copyright plaintiffs have exploited thus far – and collect far more settlements from possible innocents.  As indicated above, other Malibu attorneys have certainly shown that they are not afraid to throw around the cost of fighting such cases to further their business model.  *See,* Exhibit B.

Malibu can post this amount of bond.  It has indicated as much in other cases.  *See,* Exhibit D, Declaration of Collette Field (as filed in *Malibu Media, LLC v. Leightner, et al.*, Case no. 12-cv-845-TWP-MJD on February 19, 2013).  In that Declaration, Field stated that Malibu charges members $19.95 per month and that it has tens of thousands of members.  Assuming that "tens of thousands" means a <u>minimum</u> of two-tens, or twenty thousand members, the rules of arithmetic dictate[5] that Malibu makes $4,788,000 per year on subscriptions alone – not even counting its litigation-business model.  Ms. Field, in her sworn to declaration, has indicated she is running a successful enterprise.  It must be at least successful enough to support a nationwide, nine-hundred suit, litigation campaign.  Accordingly, it should be successful enough to post bond on these cases.

---

[5] ($19.95 member / mo.)(20,000 members/1)(12 mo./year).  Even at the discounted rate of $99.95 per year, the amount would be nearly two-million dollars.

As shown, Malibu knows that these cases cost hundreds of thousands of dollars to litigate, and has indicated that it has the resources to post a bond.  Accordingly, regardless of what position it may take in its Response, Malibu should find an amount of $250,000 a reasonable bond to post. This is especially the case if Malibu asserts it has a case it will prevail upon and accordingly will get its bond back, with interest, at the termination of the litigation.

### III.  Conclusion

As demonstrated, the need for a bond in this case is apparent, and well within this Court's wide discretion to order.  To not do so will simply encourage the onslaught of one-thousand more nuisance value suits.

WHEREFORE, Defendant Doe respectfully requests that the Court enter an Order requiring Plaintiff Malibu Media, LLC to post bond of $250,000.00 within seven days of the Court's Order.

Respectfully submitted,

/s/Jonathan LA Philips
Jonathan LA Phillips
One of Doe's Attorneys
418 Fulton St.
Ste. 255
Peoria, IL 61602
309.494.6155
jphillips@skplawyers.com
IL Bar No. 6302752

**Exhibits**

| A | Piatek, M., et al, *Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice*, USENIX HOTSEC 2008, *at* http://dmca.cs.washington.edu/dmca_hotsec08.pdf. |
| B | Email of Malibu Media LLC Attorney Keith Lipscomb. |
| C | American Intellectual Property Law Association Survey, 2011. |
| D | Declaration of Collette Field (as filed in *Malibu Media, LLC v. Leightner, et al.*, Case no. 12-cv-845-TWP-MJD on February 19, 2013) |
| E | Declaration of Kelley Tashiro |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 12, 2013, he caused the foregoing, and all attachments referenced, to be filed with the Court via the CM/ECF electronic filing system, thereby serving all parties of record.

/s/ Jonathan LA Phillips