IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MALIBU MEDIA, LLC <br><br> Plaintiff, <br><br> v. <br><br> KELLEY TASHIRO <br><br> Defendants | Case No. 1:13-cv-00205-WTL-MJD <br><br> Hon. Mark J. Dinsmore |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO REQUIRE PLAINTIFF TO POST BOND FOR COSTS & EXPENSES**

Now Comes KELLEY TASHIRO ("Tashiro"), by and through counsel, who provides this Honorable Court with her Reply Memorandum in Support of her Motion to Require Plaintiff to Post Bond for Costs and Expenses.

I. **Introduction**

On July 12, 2013, Tashiro filed her Motion to Require Plaintiff to Post Bond for Costs & Expenses. (ECF Doc. 30). Malibu Media, LLC ("Malibu") filed its Memorandum in Opposition (the "Response") on July 26, 2013. (ECF Doc. 32). The Response provides distractions[1] and misinformation, but fails to provide a compelling reason why this Court should not ensure that Tashiro will be able to collect her costs, including attorney's fees, here in Indianapolis, rather than going to California to do the same. This is the purpose of the undertaking sought.

II. **Malibu has failed to indicate that Tashiro will not succeed on the merits of her case**

---

[1] Tashiro cannot find any compelling reason that the GQ article is relevant, let alone the entire history of Malibu Media, LLC and its high-end pornographic productions. In fact, page-for-page, including exhibits, the majority of the Response is not relevant, consisting of history, articles, and argument as to the piracy problem, not the issue at hand – posting of a bond. *See, e.g.,* Pltf's Resp., pp. 2 – 4,14 -19, Exs. A & B.

Malibu's primary contention is that Tashiro, or someone in her home downloaded the film. While <u>admitting that Tashiro may not be the infringer</u>,[2] Malibu has not put forth any valid reason to believe that even someone in her home was the actual infringer.  Pltf's Resp. (ECF Doc. 32, pp. 7 – 8).  However, Tashiro has categorically stated she did not download the films, and that despite her inquiry – which would certainly include persons in her home – no on else has admitted to doing the same.  Def's Mot, Ex. E, ¶¶ 3 – 5, 8 (ECF Doc. 30-5).

However, Malibu does make questionable representations regarding the assertion that no neighbors could have been using Tashiro's unsecured wireless router.  Malibu puts forth false assertions that beg a comparison to the *Ingenuity 13, LLC,* Order by Hon. Judge Otis Wright.  In that case, the BitTorrent Plaintiff's attorney mischaracterized the Defendant's property as being large piece of property for the sol purpose of indicating that neighbors could have accessed the wireless signal.  Turns out, the property was a small home in a residential area.  *Ingenuity 13, LLC v. John Doe,* Case. No. 2:12-cv-08033-ODW-JC (ECF Doc. 13, pp. 6-7) (C.D. Cal. May 6, 2013).

Just as in the *Ingenuity 13, LLC* case, Plaintiff has over-stated the unlikelihood of wireless routers being accessible by neighbors.[3]  "Defendant lives in a large home on a half acre corner lot, far from any neighbors."  Pltf's Resp., p. 4 (ECF Doc. 32).  Tashiro is not far from neighbors.  The wall-to-wall distances to the nearest neighbors are approximately: 75 feet westerly, 75 feet northerly, 130 feet and across a street southerly, and 135 feet easterly.  See Ex. A.[4] Wireless

---

[2] Presumably, Malibu's admission that Tashiro might not be the infringer alone shows that there is a likelihood of success on the merits.  This suit was brought against Tashiro, not anyone else in her home.  Further, <u>Tashiro wants to make it clear; she does not know who, if anyone, infringed upon Malibu's rights.</u>  If she did, she would provide the relevant information.

[3] Tashiro admits that long periods of downloading would indicate that a passerby or a visitor would not be likely to be the actual infringer.  However, it this doesn't change the fact that it appears a neighbor was infringing.

[4] The actual address is redacted for the purpose of protecting Tashiro's privacy.

routers typically have a range of 120 feet indoors and 300 feet outdoors.[5]  More advanced routers have more extensive ranges.  All of these distances are clearly within the range of wireless routers.

Malibu attempts to make a mountain of a molehill regarding the fact that infringement ceased.  Pltf's Resp. p. 12 (ECF Doc 32).  Clearly, upon notice of the activity, Tashiro secured her wireless router, ceasing the infringement by non-household members.  In fact, this same result could have been obtained with a cheaper-DMCA or Copyright Alert System notice.  *See*, §IV(B)'s discussion of the same below.

Clearly, there are at least four households that could have been poaching Tashiro's wireless signals.  This combined with Tashiro's explicit denial that she downloaded the film or that anyone she spoke to – including presumably those in her home – denied the same is indicative that a neighbor may have been downloading the film.

### III. The Malibu bellwether trial does not indicate a likelihood of success

A bellwether trial, against a defendant that spoiled evidence and two others admitting guilt, and no cross examination of experts cannot be used to show that Malibu today is likely to succeed on the merits of this case.  Malibu notes the fact it tried the <u>only</u> BitTorrent case so far.  *Malibu Media v. John Doe 1, et al,* Case No. 12-cv-02078 (E.D. Pa. June 10, 2013).  Malibu points out, essentially, the airtight nature of its investigation, which is run by a company having a financial interest in the outcome of the litigation.  Pltf's Resp., p. 5 (ECF Doc 32).  However, Malibu fails to mention that there was absolutely no cross-examination of the so-called investigators.  If we are to take that bellwether trial's direct-only-examinations of investigators as truth, then Tashiro's Declaration should be afforded the same treatment.

Additionally, that testimony of the investigators only supports the proposition that Tashiro's address was being used, not that Tashiro herself was the infringer.  Thus, for the reasons above, in

---

[5] Wikipedia, *Wi-Fi.*  (*available at*, http://en.wikipedia.org/wiki/Wi-Fi) (last accessed July 28, 2013).

§ II of this Reply, connecting Tashiro's IP address to the infringement remains insufficient to show that Malibu is likely to succeed on the merits.

IV. **The amount of undertaking requested is meant to protect Tashiro, not punish Malibu**

Tashiro is simply requesting the confirmation that expected costs of litigating this case are present in the Southern District of Indiana.  To have Tashiro litigate a case here, win, have fees awarded under § 505 of the Copyright Act, and then have to turn around and institute an action in California to collect the fees is unreasonable.[6]  This would constitute a prejudice to Tashiro that would only encourage innocent BitTorrent defendants to settle with nuisance value settlements, unjustly enriching Malibu.  Tashiro is not a multi-million dollar company like Malibu, and accordingly, it is a real risk to defend herself in this case when the difficulties in collecting attorney's fees could occur.  It is worth noting that Malibu has not set forth any amount of an undertaking that it believes to be reasonable in the situation.

Malibu suggest that if it had to post bond in all cases, then it couldn't afford to protect its rights.  However, the Court does not have to consider all of the other cases that Malibu is involved in.  The Court's concern in ruling upon Tashiro's Motion is the case before it.  Tashiro can only request that bond be posted in this case.  Further, Malibu does not have to "pay" anything.  If it prevails, its money will be returned to it with interest.  Malibu can afford this bond.  It is a "successful multi million dollar company."  Pltf's Resp., p. 10 (ECF Doc. 32).

A. Estimation is accurate & should be awarded despite discretion

---

[6] Malibu puts forth that it has never failed to pay costs in litigation.  Pltf's Resp., p. 10 (ECF Doc. 32).  Tashiro is unaware of any case Malibu has had wherein it was ordered to do so, as all but a single case have settled or not been pursued after, presumably, enough settlement money was collected from a mass-Doe action.  Therefore, this contention is without basis and should be treated accordingly.

Malibu next attacks the estimation of costs for Tashiro. It does so by attacking the amount of time that Tashiro's counsel will spend defending his client and noting the costs are discretionary. Both positions are without merit.

### A.     Reasonable estimates that should be awarded were provided

Firstly, Malibu mentions that Tashiro's counsel represents a number of Defendants "and always files the same motion on behalf of each client."[7] Pltf's Resp., p. 11 (ECF Doc. 32). Assuming that Malibu has not asserted that Tashiro's counsel is some sort of hack that files identical motions, Malibu ignores the fact that each motion filed is based upon different factual premises, and having cases in several jurisdictions (S.D. Ind., E.D. Mo., C.D. Ill., S.D. Iowa, and N.D. Ill), each requires research into the different authority applicable to different District Courts, and even Appellate Circuits. Furthermore, this is not a stage of the proceedings wherein a Motion to Quash, Sever, or otherwise is implicated. The current case is being litigated and there is no duplication of efforts in litigating these cases with different defendants.[8]

Moreover, Tashiro didn't make the $250,000.00 number up. She relied upon an estimation that has been approved by this Court in the past, the AIPLA survey. See Def's Mot., p. 8 (ECF Doc. 30); Def's Mot., Ex. C (ECF Doc. 30-3). Additionally, Malibu's counsel in other cases has explicitly stated that the cost to defend is "indubitably in the 6 figures." See Def's Mot. Ex. B (ECF Doc. 30-2). To not accept Malibu's own amounts, and the amounts of an unbiased survey would be absurd.

Next, Malibu correctly notes that attorney's fees are discretionary. As demonstrated in the Motion, here in the Seventh Circuit, there is a "very strong" presumption in awarding them.

---

[7] The Court may wish to consider this statement made by Malibu when it awards attorney's fees to Malibu in any other BitTorrent cases.
[8] Malibu itself points out the great factual differences between different BitTorrent cases when it attempts to distinguish various cases from the one at hand.

5

*Assessment Techs of Wis. LLC v. Wire Data, Inc.,* 361 F.3d 434, 436 (7th Cir. 2004). To do otherwise would result in innocent defendants capitulating to nuisance value suits. The cases put forth by Malibu are easily distinguishable. Those cases involved people with knowledge of infringers' identities who did not provide that information, thus causing their own fees to accrue. As already noted, Tashiro simply does not know who the infringer is, and is not delaying the suit by being silent on the issue. Malibu, if concerned with having to post, not pay, a bond, could have utilized alternative methods of protecting its interests. However, Malibu would not make inordinate amounts of money coercing nuisance value settlements doing so.

      **B.**      **Malibu chose costly-publicly subsidized dispute resolution processes, and Tashiro should not be punished for the its decision**

In 1998, the Digital Millennium Copyright Act[9] went into effect and has provided a regime to protect copyright interests such as those before the Court. It is telling that this cheaper and more efficient tool is utilized by major motion picture studios and recording industry representatives (RIAA). This use has obviated – for the most part – the utilization of costly publicly subsidized dispute resolution processes by these organizations. By simply serving a DMCA Take Down Notice to an Internet Service provider, pursuant to 17 U.S.C. § 512, Malibu could have protected its rights. The Internet service providers, who would be liable for damages if they did not comply, would typically send notices to Does and suspend the accounts of repeat offenders. Thus, so-called pirates have their ships scuttled.

---

[9] Malibu clearly knows about these protections, acknowledging that it intends to discover all existing DMCA takedown notices from Comcast. Pltf's Resp., p. 4 (EFC Doc. 32). Malibu does not explain why it does not utilize this effective process.

Additionally, many major Internet service providers take part in the Copyright Alert System.[10] This, admittedly, private[11] system is commonly referred to as the six strikes program. Hainen, K., *Movie, TV and Broadband Leaders Team to Curb Online Content Theft*. Recording Industry Assoc. of America Press Release (July 2011), *available at*, http://www.riaa.com/newsitem.php?content_selector=newsandviews&news_month_filter=7&news_year_filter=2011&id=2DDC3887-A4D5-8D41-649D-6E4F7C5225A5. With this system, the traffic on ISPs is monitored, and any copyright infringements detected result in graduated responses. Early reminders as to the rights held by companies like Malibu are later replaced with mitigation measures such as throttling of an ISP subscriber's bandwidth. This system not only provides an economical solution to the piracy problem, but it would also prevent innocent defendants from being publicly accused of downloading pornographic films such as "BoundGangBangs.12.11.21.Jodi.Taylor.XXX.720p.MP4-KTR[rbg]." [12] Instead, innocent, misidentified defendants will be educated regarding alleged infringement and will be able to take steps to correct the same – e.g. securing a wireless router, having a parent supervise a child who may have illegally downloaded, or otherwise.

For the same reason that infringement ceased in the case at hand, it would have with these more cost effective measures. Tashiro learned of the hijacked wireless and secured it. Infringement ended.

### C.  Reasonable Compromise

---

[10] This system was developed by reputable Motion Picture Association of America members Walt Disney Studios Motion Pictures, Paramount Pictures, Sony Pictures Entertainment, Twentieth Century Fox Film Corporation, Universal Studios, and Warner Brothers Entertainment, as well as music industry representatives (RIAA, IFTA) and Internet service providers.

[11] While Malibu is entitled to "its day in Court," as are all whose rights are infringed, it remains a fallacy to say there is no manner to protect itself when both a private system and a federal law provide remedies. If Malibu wishes for a private individual to undertake financing her defense, Malibu should be ready to undertake the stresses of litigating in a publicly-subsidized dispute resolution venue as well.

[12] It is no surprised that upon Malibu switching to single-Doe suits, it now includes wholly irrelevant films with more scandalous names, presumably to increase the chance of nuisance value settlements.

If it is this Court's intention to not order Malibu to undertake a $250,000.00 bond, Tashiro would suggest an alternative arrangement to secure her ability to collect on costs, including fees. As indicated by the AIPLA survey, fees through the end of discovery should only be expected to be $110,000.00. Def's. Motion, Ex. C (ECF Doc. 30-3). This fact, combined with the fact that discovery will solidify Tashiro's position of succeeding on the merits, would mean that a bond of $110,000.00 could be undertaken through discovery. At such time as discovery ends, and dispositive motion practice and trial begins, Tashiro could petition the Court to raise the undertaking amount.

## V. Conclusion

As demonstrated, Malibu has failed to adequately provide any factual or legal support for the position that it takes, wherein, it suggests that Tashiro should have to litigate here, then possibly again in California to collect her costs and attorney's fees. Accordingly, she respectfully requests that the relief sought in the Motion be granted.

Respectfully submitted,

/s/Jonathan LA Philips
Jonathan LA Phillips
One of Doe's Attorneys
418 Fulton St.
Ste. 255
Peoria, IL 61602
309.494.6155
jphillips@skplawyers.com
IL Bar No. 6302752

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 31, 2013, he caused the foregoing, and all attachments referenced, to be filed with the Court via the CM/ECF electronic filing system, thereby serving all parties of record.

/s/ Jonathan LA Phillips

8