UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT INDIANA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>KELLEY TASHIRO,<br><br>        Defendant. | )<br>)<br>) Civil Case No. 1:13-cv-00205-WTL-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO BAR TESTIMONY OF IPP INTERNATIONAL UG [CM/ECF 60]**

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................................1

   A.  The Data Evidencing the Infringement Is *Not* Capable of Being Manipulated By Humans 1

     1.  A Very Short Explanation of How BitTorrent Works .......................................................1

     2.  A 10,000 Foot Overview of the Data Collection System Used By IPP...........................2

     3.  The Evidence Produced By the Data Collection System Is Independently Verifiable .....3

       a.  PCAP Computer Files Are Independently Variable.....................................................3

         (i)  Anyone Who Downloads TCPDump – For Free – Can Review and Verify the Infringing Transaction .................................................................................................3

       b.  Every Entry Onto the MySQL Server Log File Correlates To a PCAP .......................4

     4.  The PCAP and Log Files Are Saved on an Uneditable WORM ("Write Once Read Many") Tape Drive................................................................................................................4

   B.  A Short Summary of Mr. Fieser's Possible Testimony........................................................5

     1.  Mr. Fieser Does Not Need to Testify That the Computer Files Transmitted Via BitTorrent Are Copies Because Anyone Can Do That.....................................................6

     2.  Mr. Fieser is Not the Witness Malibu Will Call to Authenticate the Infringement Data at Trial or to Lay the Foundation For its Introduction .........................................................7

   C.  A Very Short Explanation of Michael Patzer's Anticipated Testimony .............................7

   D.  Patrick Page Tested the Data Collection System ................................................................8

   E.  Judge Baylson Found the Data Collection System Was Valid ...........................................8

   F.  Defendant Can Retain An Expert to Test the Data Collection System ...............................9

   G.  Malibu and IPP Have a Written Fixed Fee Agreement .......................................................9

III.   ARGUMENT ........................................................................................................................9

   A.  Malibu is Permitted to Pay For Data Collection Services ..................................................9

   B.  No Witness Has Ever Been Paid For Testimony Much Less on a Contingent Basis ........10

   C.  Seventh Circuit Precedent Holds That Even if Malibu Had Paid a Witness on a Contingency That Witness's Testimony Should Not be Excluded ..................................11

   D.  Malibu Did Not Violate the Federal Anti-Gratuity Statute But Even if it Had That Would Not Be a Basis For Excluding Evidence or Testimony .....................................................12

   E.  Neither IPP Nor Excipio are Subject to the Indiana Private Investigator Firm License Law ............................................................................................................................................12

   F.  Indiana State Licenses Are Not a Prerequisite to Being a Witness...................................13

IV.    CONCLUSION ..................................................................................................................14

## **TABLE OF AUTHORITIES**

*Accord McRunnel v. Batco Mfg.*, 917 F. Supp. 2d 946, 952 (D. Minn. 2013) .............................. 14

*Accord, Milfam II LP v. Am. Commercial Lines, LLC*, 2006 WL 3247149 (S.D. Ind. 2006) ....... 11

*Armenian Assembly of Am., Inc. v. Cafesjian*, 924 F. Supp. 2d 183, 194 (D.D.C. 2013) ............. 10

*Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 112 (D.D.C. 2004) ........................................................ 14

*Dillon Cos., Inc. v. Hussmann Corp.*, 163 Fed.Appx. 749, 756 (10th Cir. 2006) ......................... 14

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1524 (S.D. Fla. 1994) .................................................................................................. 12

*Hare v. McGue*, 178 Cal. 740, 742, 174 P. 663, 664 (1918) ........................................................ 10

*In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 69 (Bankr. N.D. Ill. 2002) .................................... 11

*Indiana Harbor Belt Railroad Co. v. Public Service Comm'n*, 147 Ind.App. 652, 263 N.E.2d 292, 298 (1970) ............................................................................................................................. 13

*Malbrough v. State Farm Fire & Cas. Co.*, 1996 WL 565819, at *2 (E.D. La. 1996) ................. 14

*People v. McNeill*, 316 Ill. App. 3d 304, 306, 736 N.E.2d 703, 705 (Ill. App. Ct. 2000) ............ 10

*Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao Ltda*, 2010 WL 625356 (S.D. Fla. 2010) .................................................................................................. 10

*Principi v. Survivair, Inc.*, 2005 WL 5961991, at *2 (M.D. Fla. 2005) ....................................... 14

*State v. Maudlin*, 416 N.E.2d 477, 481 (Ind. Ct. App. 1981) ...................................................... 13

*State v. Willian*, 423 N.E.2d 668, 671 (Ind. Ct. App. 1981) ....................................................... 13

*Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) ................................................ 12

*U.S. v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) .................................................. 11

*U.S. v. Hodge*, 594 F.2d 1163, 1166 (7th Cir. 1979) ................................................................... 11

*U.S. v. Valona*, 834 F.2d 1334, 1344 (7th Cir. 1987) .................................................................. 11

*United States v. Dawson*, 425 F.3d 389, 394 (7th Cir. 2005) ...................................................... 12

*Valentino v. Proviso Twp.*, 2003 WL 21510329 (N.D. Ill. 2003) ................................................ 12

*W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417, 424 (1945) ....................................... 13

*Wright-Moore Corp. v. Ricoh Corp.*, 794 F. Supp. 844, 860 (N.D. Ind. 1991) ........................... 12

## I. INTRODUCTION

Defendant's Motion to Bar Testimony of IPP International UG (CM/ECF 60) ("the Motion") correctly asserts that Malibu Media, LLC ("Malibu") paid IPP International UG ("IPP"), who is not licensed by the State of Indiana as an investigator, for its data collection services. From these facts, Defendant erroneously argues that the physical evidence obtained by IPP is inadmissible and that IPP's employee should be precluded from testifying. While not titled as such, it is a Motion *in Limine* seeking to exclude relevant evidence and testimony. Neither paying a service provider to record computer data nor the failure of a service provider to have a license is a basis under the Federal Rules of Evidence to exclude relevant evidence and testimony.

## II. FACTUAL BACKGROUND

### A. The Data Evidencing the Infringement Is *Not* Capable of Being Manipulated By Humans

Defendant's entire argument is premised on the possibility of witness bias based upon Malibu's payment for IPP's services. As explained below, the evidence that Malibu uses for purposes of proving infringement occurred is *recorded* in such way that it is *not* capable of being manipulated or altered. Humans play no part in the creation or storage of the evidence. Significantly, the evidence can be independently verified by anyone – including Defendant. Consequently, there is no possibility of biased testimony. The fact section explains why this paragraph is true.

#### 1. A Very Short Explanation of How BitTorrent Works

To understand the evidence upon which Plaintiff relies, this Court needs to know two things about the way BitTorrent works: (a) peers in a BitTorrent swarm connect to each other's computers in order to transmit "pieces" of a computer file (here, the computer files transmitted

1

contain copies of Plaintiff's works); and (b) every "piece" of the computer file – and the entire computer file – being transmitted via BitTorrent has its own *unique* hash value. Hash values are digital fingerprints for pieces of data.[1] Hash values are more reliable than DNA evidence. *See* FN1. A hash value is calculated. Regardless of who calculates the hash value of any certain piece of data, the hash value for that certain piece of data will always be the same.[2]

### 2. A 10,000 Foot Overview of the Data Collection System Used By IPP

The data collection system used by IPP has numerous components. It contains, *inter alia*: (1) a proprietary BitTorrent Client[3]; (2) servers running a MySQL database which log verified infringing transactions; (3) packet analyzers, also known as packet sniffers, which create and analyze PCAPs; (4) servers that run the proprietary BitTorrent Client and record PCAPs; (5) WORM ("Write Once Read Many") tape drives for storing the PCAPs and MySQL server data; (6) a program to synchronize the servers' clocks with both a GPS clock and an atom clock[4]; (7) a proprietary program for checking the MySQL log files against the contents of the PCAPs; and (8) a proprietary program which checks the information contained in an Excel Spreadsheet against what is in the PCAPs and server's log files. *See* Patzer, at ¶ 5, Exhibit M; and Exhibit C, Mr. Fieser's testimony during the Bellwether Trial transcript at p. 100.

---

[1] See Exhibit A, citing numerous district and appellate court decisions describing hash values and finding that they are reliable unique identifiers for data akin to digital fingerprints.
[2] *See* Composite Exhibit B, which is an article explaining that hash values can be calculated and websites advertising commercially available free hash calculators.
[3] In other words, a software program that enables the BitTorrent protocol to work. The BitTorrent Client used by Excipio is not commercially available and its code is a trade secret. Patzer, at ¶ 6. It was written to overcome the unique challenges of entering into a massive number of BitTorrent transactions with a massive number of people without distributing data. *Id.*, at ¶ 7.
[4] If the servers are not synchronized with both the GPS clock and atom clock to within one hundredth of a second the infringing transaction is not logged but instead disregarded. Patzer, at ¶ 8.

3.  The Evidence Produced By the Data Collection System Is Independently Verifiable

The *evidence* that the data collection system produces is comprised of PCAP computer files and MySQL server log files. Each entry on the MySQL log file correlates to a specific PCAP file. Patzer, at ¶ 9.

a.  PCAP Computer Files Are Independently Variable

Data sent through the internet is delivered in the form of "packets" of information.[5] PCAP stands for "Packet Capture." A PCAP is a computer file containing captured or recorded data being transmitted between two computers.[6] A "Packet Analyzer" records packets of data being transmitted between two computers over a network, such as the internet, and saves it in a computer file called a PCAP.[7] Packet analyzers also enable users to read and analyze PCAPs. IPP's data collection system uses a proprietary packet analyzer *and* TCPDump to record the *entire* infringing transaction. TCPDump is an open source free packet analyzer.[8]

(i)  Anyone Who Downloads TCPDump – For Free – Can Review and Verify the Infringing Transaction

*Anyone* who downloads TCPDump – for free – can review and verify the entire transmission of a piece of Malibu's copyrighted work from Defendant's IP address. The proof of infringement is a PCAP *recording* of Defendant's IP Address *sending* a piece of the copyrighted work to the MySQL server. The PCAP recording speaks for itself. Testimony about what is contained in the PCAP can be elicited at trial by either IPP's employee, Mr. Fieser, Malibu's computer forensic expert Mr. Patrick Paige, Excipio's independent contractor, Mr. Michael Patzer, or via a demonstration during trial by any other witness. The demonstration

---

[5] *See* Exhibit D, Wikipedia Article on "Internet Protocol," at paragraph 2.
[6] *See* Exhibit E, Wikipedia Article on "PCAP."
[7] *See* Exhibit F, Wikipedia Article on "Packet Analyzer."
[8] http://www.tcpdump.org/#

3

would merely require the witness to install TCPDump so that he or she could read and analyze the PCAP.

### b. Every Entry Onto the MySQL Server Log File Correlates To a PCAP

Defendant sent the investigative server numerous "pieces" of each one of the computer files that contain a copy of Malibu's works. Accordingly, TCPDump recorded numerous BitTorrent transactions for each infringing computer file. *See* Exhibit G. Each one of these transactions was logged in a MySQL log file *and* fully recorded as a PCAP. Significantly, every entry on the MySQL server log file correlates to a specific PCAP. Patzer, at ¶ 9. Both the MySQL log file and the PCAP are computer records.

### 4. The PCAP and Log Files Are Saved on an Uneditable WORM ("Write Once Read Many") Tape Drive

"Write once read many (WORM) describes a data storage device in which information, once written, cannot be modified. This write protection affords the assurance that the data cannot be tampered with once it is written to the device."[9] Both the PCAPs and log files are saved onto WORM tape drives. Patzer, at ¶ 10. There is no possibility that the information on these WORM drives can be edited. *Id.,* at ¶ 11. Further, each of the WORM tape drives is electronically stamped with a German government issued time stamp at least every twenty four hours. *Id.,* at ¶ 12.

---

[9] *See* Exhibit H, Wikipedia article entitled "Write once read many."



B.      A Short Summary of Mr. Fieser's Possible Testimony

Mr. Fieser is the only employee of IPP who *may* testify. His testimony is unnecessary. Therefore, Malibu will *not* likely call Mr. Fieser. What follows is a short summary of what Mr. Fieser would say if Malibu calls him.

Tobias Fieser is a salaried employee of IPP. Fieser, at ¶ 4, Exhibit L. He does not have an ownership interest in IPP nor any other entity involved in or affiliated with IPP's data collection system. *Id.*, at ¶ 7. Mr. Fieser is not being paid for his testimony and does not have the right to receive any portion of a settlement or judgment in Plaintiff's favor.[10] *Id.,* at ¶ 8.

Mr. Fieser has three primary functions at IPP: (1) verify that the BitTorrent computer files as evidenced by their unique hash values are copies of the original works; (2) extract the MySQL server data and make it available to IPP's clients, here Malibu's counsel; and (3) upload

---

[10] Malibu would reimburse IPP for Mr. Fieser's travel and lodging costs and pay IPP a reasonable flat daily rate fee for Mr. Fieser's time away from work.

5

a declaration prepared by IPP's clients' counsel (in this case Malibu's attorney) into a computer program and sign a declaration if a green light appears.[11] *See* Exhibit C, Mr. Fieser's testimony during the Bellwether Trial transcript at pp. 92, 100. The computer program verifies the attested to infringement data is contained in the servers' MySQL log files. This ensures it has not been altered by counsel during the suit formation process. *Id.*

1. <u>Mr. Fieser Does Not Need to Testify That the Computer Files Transmitted Via BitTorrent Are Copies Because Anyone Can Do That</u>

Mr. Fieser does not need to testify that the computer files transmitted via BitTorrent are copies of Malibu's movies. To explain, the computer files have *unique* cryptographic hash values and are playable movie files. Accordingly, anyone can watch the BitTorrent computer file copy and compare it to the original for purposes of ascertaining whether it is a copy. For this reason, in all other recent matters around the country which have approached trial, opposing counsel has stipulated that the computer files contain copies. If opposing counsel will not so stipulate then Malibu will ask this Court to take judicial notice. Judicial notice is appropriate under rule Fed. R. Evid. 201(b) because it is "a fact that is not subject to reasonable dispute [and] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A stipulation or judicial notice is particularly appropriate because the movies contain adult content. Consequently, it may be uncomfortable or distracting for jurors to watch them. Nevertheless, in the absence of a stipulation or judicial notice, Malibu could have Patrick Paige, its expert witness, Plaintiff's principle, or Mr. Patzer calculate the hash values of the

---

[11] Each month approximately 80,000 U.S. citizens infringe Malibu's copyrighted works. Malibu's counsel culls through this infringement data received by IPP and sues 100-150 of the worst-of-the-worst infringers. To identify potential defendants, Malibu's counsel analyzes various things such as length of infringement, number of infringed works, and evidence of third party infringements the content of which can be used to identify a specific person. After using IPP's infringement data counsel sends it back as formatted declarations.

6

subject computer files at or before trial and play the copy and original in a split screen. This proves A is a copy of B.

> 2. Mr. Fieser is Not the Witness Malibu Will Call to Authenticate the Infringement Data at Trial or to Lay the Foundation For its Introduction

At trial, Malibu will call Mr. Patzer to testify that the PCAPs and MySQL log files contain evidence that proves that an infringement was committed by a person using Defendant's IP Address. Malibu will not use Mr. Fieser for this purpose because he will not be able to establish the chain of custody to the PCAP. To explain, Mr. Patzer, not Mr. Fieser, restores the PCAPs saved onto the WORM tape drives and makes forensically sound copies of them for use at trial. Thus, only Mr. Patzer can testify to the chain of custody.

> C. A Very Short Explanation of Michael Patzer's Anticipated Testimony

Michael Patzer works as an independent contractor predominantly for Excipio GmbH, a German company. Patzer, at ¶ 2. Excipio contracts with IPP to provide IPP with the data collection system that IPP uses to detect infringement of Malibu's works.[12] *Id.*, at ¶ 4. Mr. Patzer designed, implemented, maintains and monitors the data collection system that Excipio both owns and uses to identify the IP addresses used by people to commit copyright infringement via the BitTorrent protocol. *Id.*, at ¶ 3. *See also* Exhibit I, Mr. Patzer's testimony during the Bellwether Trial transcript at p. 54. No one at Excipio has an ownership in IPP or vice versa. *Id.*, at ¶ 15. Mr. Patzer does not have an ownership interest in Excipio. *Id.,* at ¶ 16. He is not paid for his testimony and is not entitled to any portion of any money received from a settlement

---

[12] IPP used to maintain and operate and use its own system. At some time unknown to Malibu, but well in advance of any of the infringement that was logged in this case, IPP entered into a license agreement with Excipio to use its system. The two companies now both compete with each other and are licensor-licensee. Under this arrangement, IPP licenses the use of Excipio's system and servers. Patzer, at ¶ 3. IPP adds value and distinguishes itself by, *inter alia*, customer specific analysis tools and its client service.

7

or judgment in Malibu's favor.[13]  *Id.,* at ¶ 18.  Malibu has never paid Excipio or Mr. Patzer anything.  *Id.,* at ¶ 19.

Mr. Patzer will answer all of the questions necessary to lay the foundation for the introduction into evidence of the PCAP and MySQL log files as business records within the meaning of Fed. R. Evid. 803(6).  Further, he will answer all of the questions necessary to authenticate the PCAP and MySQL log files pursuant to Fed. R. Evid. 901(a).  Finally, Mr. Patzer will testify that the PCAPs are recordings of computer transactions during which a person using IP Address 98.222.184.69 sent pieces of the infringing computer files to the servers that he personally maintains and monitors.

D.   Patrick Page Tested the Data Collection System

Malibu's computer forensic expert, Patrick Paige, tested the data collection system.  His report is attached as Exhibit J.  His test involved seeding public domain movies, i.e. movies that are not protected by copyright.  *See* Exhibit J.  He gave IPP the titles of the works.  *Id.*  IPP, using Excipio's system, found the works and entered into BitTorrent transactions with Mr. Paige's test servers.  *Id.*  Mr. Paige used a packet analyzer on his test servers to record all of the transactions in PCAPs.  *Id.*  He compared the PCAPs he recorded during the transactions with the PCAPs that were recorded by IPP using Excipio's system.  *Id.*  They matched perfectly.  *Id.*  This could not happen unless Excipio's system accurately created PCAPs of transactions.  *Id.*

E.   Judge Baylson Found the Data Collection System Was Valid

Judge Baylson presided over the Bellwether trial wherein Malibu was the first ever Plaintiff to try a BitTorrent copyright infringement case.  At the trial, Judge Baylson had an independent court appointed computer expert in attendance.  After the trial, Judge Baylson found

---

[13] Malibu does intend to reimburse Excipio for Mr. Patzer's travel and lodging cost and pay a reasonable flat daily rate fee for Mr. Patzer's time away from work.

that IPP's data collection system "is valid." *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("Malibu [] expended considerable effort and expense to determine the IP addresses of the infringing parties, and the technology employed by its consultants . . . was valid.")

  F. <u>Defendant Can Retain An Expert to Test the Data Collection System</u>

Defendant has the right to hire an expert to test the data collection system. Defendant has chosen instead to attack the data collection system based upon unfounded speculation about the potential for biased testimony. Defendant's attack does not specify how the system may be flawed or how testimony that merely reads computer records can be biased. This is no surprise because there is no possibility for biased testimony.

  G. <u>Malibu and IPP Have a Written Fixed Fee Agreement</u>

Malibu and IPP have a written fixed fee agreement pursuant to which Malibu pays IPP for providing the service of collecting data about infringements. Field, at ¶ 8, Exhibit K. IPP has not been paid anything for this case. Fieser, at ¶ 10. Malibu's prior oral agreement with IPP to pay IPP a small portion of the amount received from a settlement or judgment from Malibu's litigation does not apply to this case. Field, at ¶ 7. Malibu has never paid *any* fact witness to testify in this case or any other case. *Id.*, at ¶ 9.[14]

**III. ARGUMENT**

  A. <u>Malibu is Permitted to Pay For Data Collection Services</u>

Malibu has not paid nor offered to pay any individual for testimony. The fee Malibu pays IPP is for data collection services. Paying IPP for data collection services is neither unethical nor prohibited by law. "[P]arties are free to pay individuals, including fact witnesses, for providing information and assisting with litigation, so long as the payment is not for their

---

[14] Malibu pays Mr. Paige, an expert, an hourly rate to prepare for and appear at legal proceedings.

9

testimony." *Armenian Assembly of Am., Inc. v. Cafesjian*, 924 F. Supp. 2d 183, 194 (D.D.C. 2013). "[T]his Court is unaware of any authority that interprets Rule 4-3.4(b) as barring counsel from compensating someone for their efforts in collecting evidence." *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao Ltda*, 2010 WL 625356 (S.D. Fla. 2010). "Anyone has a right, when threatened with litigation, or desiring himself to sue, to employ assistance with a view of ascertaining facts as they exist, and to hunt up and procure the presence of witnesses who know of facts and will testify to them." *Hare v. McGue*, 178 Cal. 740, 742, 174 P. 663, 664 (1918). At significant expense, IPP provides Malibu with labor and a data collection service. Malibu Media is permitted to pay IPP for its service.

      B.    <u>No Witness Has Ever Been Paid For Testimony Much Less on a Contingent Basis</u>

Defendant erroneously conflates Malibu's proper payment to IPP for its data collection services with the false allegation that Malibu paid Tobias Fieser for testimony. Mr. Fieser is a salaried non-equity owning employee of IPP. Fieser, at ¶¶ 4, 7. Malibu has never paid nor offered to pay Mr. Fieser anything. *Id.*, at ¶ 11. When, as here, "[i]t is clear that the [individual] himself, as a witness, is not eligible to receive compensation for his testimony . . . [the] case does not even involve the payment of a fee to a witness." *People v. McNeill*, 316 Ill. App. 3d 304, 306, 736 N.E.2d 703, 705 (Ill. App. Ct. 2000). In *McNeil,* the witness's employer's compensation was contingent on the outcome of the case. Like here, however, the witness was not paid for his testimony. The *McNeil* Court refused to exclude the witness and opined that the defendant could always attempt to impeach the witness's credibility on the basis that his employer had a contingent interest in the case.

10

    C.    <u>Seventh Circuit Precedent Holds That Even if Malibu Had Paid a Witness on a Contingency That Witness's Testimony Should Not be Excluded</u>

"The *per se* exclusion of whole categories of evidence is disfavored by the Federal Rules of Evidence. It is a fundamental tenet of those rules that, with few exceptions, 'all relevant evidence is admissible,' Fed. R. Evid. 402, and 'every person is competent to be a witness,' Fed. R. Evid. 601." *U.S. v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (refusing to prevent the federal government's confidential informant from testifying even though the federal government had offered the confidential informant *contingent* compensation for his testimony.) Notably absent from Fed. R. Evid. 402 and 601 is that a witness be disinterested or uncompensated in order to be permitted to testify.

Consistent with the foregoing, the Seventh Circuit expressly permits the introduction of testimony from paid contingent witnesses. *See U.S. v. Hodge,* 594 F.2d 1163, 1166 (7th Cir. 1979) allowing a witness who infiltrated a drug ring to testify over a defendant's objection that his "due process rights were violated by the government's use of a paid informer engaged upon a contingent fee arrangement." According to the Seventh Circuit, "the method of payment is properly a matter for the jury to consider in weighing the credibility of the informant." *Id.*, at 1167. *See also U.S. v. Valona,* 834 F.2d 1334, 1344 (7th Cir. 1987) (citing *Hodge*, refusing to bar testimony and holding payment goes to credibility which is an issue for the jury.) *Accord, Milfam II LP v. Am. Commercial Lines, LLC*, 2006 WL 3247149 (S.D. Ind. 2006) (allowing the testimony of a witness paid on a contingency). "Merely showing that [the witness] may have an incentive to exaggerate his testimony is insufficient to bar that testimony." *In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 69 (Bankr. N.D. Ill. 2002). "[T]he Seventh Circuit held that the 'rule against employing expert witnesses on a contingent-fee basis .... is a rule of professional conduct rather than of admissibility of evidence .... [and] it does not follow that evidence obtained in

11

violation of the rule is inadmissible." *Valentino v. Proviso Twp.*, 2003 WL 21510329 (N.D. Ill. 2003) citing *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988).

  D. <u>Malibu Did Not Violate the Federal Anti-Gratuity Statute But Even if it Had That Would Not Be a Basis For Excluding Evidence or Testimony</u>

Defendant's assertion that Malibu violated 18 U.S.C. § 201(c)(2) – which prohibits knowingly paying a person to testify – is baseless. First, Plaintiff has an agreement to pay IPP for its data collection efforts. It does not pay Mr. Fieser nor does it pay IPP for Mr. Fieser's testimony. Second, Mr. Fieser's testimony is truthful. Therefore, 18 U.S.C. § 201(c)(2) does not apply. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1524 (S.D. Fla. 1994) ("Because there is no evidence in the record that the testimony elicited through [Defendant's] monetary inducements was false testimony, the Court concludes that the evidence does not support a violation of § 201(c)(2).")

Third, and most significantly here, 18 U.S.C. § 201 is a criminal statute *not* an evidentiary rule of exclusion. Indeed, binding Seventh Circuit precedent holds that even if testimony is proffered which violates 18 U.S.C. § 201(c)(2) the testimony should not be excluded under Fed. R. Evid. 403 or any other rule because "exclusion confers windfalls on the guilty," and "a jury should be competent to discount appropriately testimony given under a powerful inducement to lie." *United States v. Dawson*, 425 F.3d 389, 394 (7th Cir. 2005).

  E. <u>Neither IPP Nor Excipio are Subject to the Indiana Private Investigator Firm License Law</u>

Neither IPP nor Excipio are subject to the Indiana Private Investigator Firm License Law (the "Act") because they do not operate in Indiana. *See* IC § 25-30-1-3. "Indiana has a general policy of refusing to give statutes extraterritorial effect." *Wright-Moore Corp. v. Ricoh Corp.*, 794 F. Supp. 844, 860 (N.D. Ind. 1991) *aff'd*, 980 F.2d 432 (7th Cir. 1992) citing *W.H. Barber*

*Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417, 424 (1945) and *Indiana Harbor Belt Railroad Co. v. Public Service Comm'n,* 147 Ind.App. 652, 263 N.E.2d 292, 298 (1970). IPP and Excipio are both companies organized and existing under the laws of Germany. Fieser, at ¶ 5; Patzer, at ¶ 13. Neither is an Indiana entity. *Id.*, at ¶ 6; ¶ 14. Neither operates in Indiana. Neither has an employee or agent in Indiana. *Id.* Neither conducts business in Indiana. *Id.* Neither pays taxes in Indiana. *Id.* Here, Defendant sent pieces of Malibu's copyrighted movies to Germany where the infringement was recorded. Defendant's IP address was not geolocated to a place within this district until *after* the infringement occurred. Accordingly, at the time the infringement occurred and was logged there was no way of knowing where Defendant resided.

Significantly, "[t]he professional licensing boards, commissions, and committees within the Indiana Professional Licensing Agency are charged with the responsibility of disciplining licensees who have violated practice standards, acted dishonestly, or acted unethically."[15] It is "the duty of a prosecuting attorney to whom the board reports a violation of this chapter to cause proceedings to be commenced against a person violating this chapter and to prosecute the person to final termination." IC § 25-30-1-20. No such proceeding has commenced in this case and the Private Detectives Board has not found a violation of the Act. This court does not have jurisdiction or authority to ascertain whether a licensing statute has been violated.

    F.    <u>Indiana State Licenses Are Not a Prerequisite to Being a Witness</u>

Indiana Courts have consistently held that state licensure is not a prerequisite to the admissibility of testimony. *See State v. Maudlin*, 416 N.E.2d 477, 481 (Ind. Ct. App. 1981) ("[a] practitioner of a profession is not barred from testifying in a court in this state merely because he has not been admitted to practice here."); *State v. Willian*, 423 N.E.2d 668, 671 (Ind. Ct. App. 1981) ("it is the education, training, knowledge, and experience in a given field rather than

---

[15] http://www.in.gov/ai/appfiles/pla-litigation/

13

licensing by the state of the forum which renders a witness competent to testify as an expert[.]") Federal courts across the country universally agree that state licenses are not a prerequisite for a witness to give either lay or expert witness testimony. *See Principi v. Survivair, Inc.*, 2005 WL 5961991, at *2 (M.D. Fla. 2005) ("whether Mr. Hollis is a licensed [professional] . . . has no bearing on the admissibility of his testimony," quoting Fed. R. Evid. 702). "[A] license is not a prerequisite to expert testimony under the Federal Rules." *Malbrough v. State Farm Fire & Cas. Co.*, 1996 WL 565819, at *2 (E.D. La. 1996). *See also Dillon Cos., Inc. v. Hussmann Corp.*, 163 Fed.Appx. 749, 756 (10th Cir. 2006) (finding that "there is no authority that an expert . . . . is not qualified to testify because he was not licensed in the state where the trial occurred.") *Accord McRunnel v. Batco Mfg.*, 917 F. Supp. 2d 946, 952 (D. Minn. 2013) ("The Court holds that licensing in the jurisdiction of the lawsuit is not a prerequisite for admissibility under Rule 702.") *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 112 (D.D.C. 2004) ("Courts frequently admit the testimony of experts even if the expert is not licensed to practice in the jurisdiction in which the court sits.")

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: February 12, 2014

                                                   Respectfully submitted,

                                                   NICOLETTI & ASSOCIATES, PLLC

                                By:    /s/ *Paul J. Nicoletti*
                                       Paul J. Nicoletti, Esq. (P44419)
                                       36880 Woodward Ave, Suite 100
                                       Bloomfield Hills, MI 48304
                                       Tel: (248) 203-7800
                                       Fax: (248) 203-7801
                                       E-Fax: (248) 928-7051
                                       Email: paul@nicoletti-associates.com
                                       *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

  I hereby certify that on February 12, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

            By:  /s/ *Paul J. Nicoletti*