**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT INDIANA**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. <u>1:13-cv-00205-WTL-MJD</u> |
| | ) | |
| v. | ) | |
| | ) | |
| KELLEY TASHIRO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL [CM/ECF 64]</u>**

**I.    <u>INTRODUCTION</u>**

On January 20, 2014, Defendant moved to compel responses to five interrogatories and two requests for production.  Defendant's motion to compel improperly seeks information pertaining to three categories.  First, Defendant seeks to compel information regarding "other peer infringers" despite Plaintiff having revised its 26(a) disclosures to not include this information.  Defendant cannot articulate how this information is relevant and seeks it only for the purpose of harassing Plaintiff.   Second, Defendant seeks to compel confidential information involving contracts with third-parties.  Plaintiff will produce this information under a protective order.   Allowing Defendant to disseminate this information will impact Plaintiff's business relationship and ability to work with third parties.  Finally, Defendant seeks settlement amounts and judgments from Plaintiff's past cases.  This information is irrelevant because Plaintiff will stipulate that it will only seek $750 per infringement in the Complaint.  For these reasons, as explained more fully below, Defendant's Motion to Compel should be denied in its entirety.

1

## II.   **FACTS**

### A.   A Very Short Explanation of How BitTorrent Works

To understand the evidence upon which Plaintiff relies, this Court needs to know two things about the way BitTorrent works: (a) peers in a BitTorrent swarm connect to each other's computers in order to transmit "pieces" of a computer file (here, the computer files transmitted contain copies of Plaintiff's works); and (b) every "piece" of the computer file – and the entire computer file – being transmitted via BitTorrent has its own *unique* hash value.   Hash values are digital fingerprints for pieces of data.[1]   Hash values are more reliable than DNA evidence.   *See* FN1.   A hash value is calculated.   Regardless of who calculates the hash value of any certain piece of data, the hash value for that certain piece of data will always be the same.[2]

### 1.   A 10,000 Foot Overview of the Data Collection System Used By IPP

The data collection system used by IPP has numerous components.   It contains, *inter alia*: (1) a proprietary BitTorrent Client[3]; (2) servers running a MySQL database which log verified infringing transactions; (3) packet analyzers, also known as packet sniffers, which create and analyze PCAPs; (4) servers that run the proprietary BitTorrent Client and record PCAPs; (5) WORM ("Write Once Read Many") tape drives for storing the PCAPs and MySQL server data; (6) a program to synchronize the servers' clocks with both a GPS clock and an atom clock[4]; (7) a proprietary program for checking the MySQL log files against the contents of the PCAPs; and

---

[1] See Exhibit A, citing numerous district and appellate court decisions describing hash values and finding that they are reliable unique identifiers for data akin to digital fingerprints.

[2] *See* Composite Exhibit B, which is an article explaining that hash values can be calculated and websites advertising commercially available free hash calculators.

[3] In other words, a software program that enables the BitTorrent protocol to work.   The BitTorrent Client used by Excipio is not commercially available and its code is a trade secret.   Patzer, at ¶ 6.   It was written to overcome the unique challenges of entering into a massive number of BitTorrent transactions with a massive number of people without distributing data.   *Id.*, at ¶ 7.

[4] If the servers are not synchronized with both the GPS clock and atom clock to within one hundredth of a second the infringing transaction is not logged but instead disregarded.   Patzer, at ¶ 8.

(8) a proprietary program which checks the information contained in an Excel Spreadsheet against what is in the PCAPs and server's log files. *See* Patzer, at ¶ 5, Exhibit J; and Exhibit C, Mr. Fieser's testimony during the Bellwether Trial transcript at p. 100.

> ### 2. The Evidence Produced By the Data Collection System Is Independently Verifiable

The *evidence* that the data collection system produces is comprised of PCAP computer files and MySQL server log files. Each entry on the MySQL log file correlates to a specific PCAP file. Patzer, at ¶ 9.

> ### a. PCAP Computer Files Are Independently Variable

Data sent through the internet is delivered in the form of "packets" of information.[5] PCAP stands for "Packet Capture." A PCAP is a computer file containing captured or recorded data being transmitted between two computers.[6] A "Packet Analyzer" records packets of data being transmitted between two computers over a network, such as the internet, and saves it in a computer file called a PCAP.[7] Packet analyzers also enable users to read and analyze PCAPs. IPP's data collection system uses a proprietary packet analyzer *and* TCPDump to record the *entire* infringing transaction. TCPDump is an open source free packet analyzer.[8]

> ### (i) Anyone Who Downloads TCPDump – For Free – Can Review and Verify the Infringing Transaction

*Anyone* who downloads TCPDump – for free – can review and verify the entire transmission of a piece of Malibu's copyrighted work from Defendant's IP address. The proof of infringement is a PCAP *recording* of Defendant's IP Address *sending* a piece of the copyrighted work to the MySQL server. The PCAP recording speaks for itself. Testimony

---

[5] *See* Exhibit D, Wikipedia Article on "Internet Protocol," at paragraph 2.
[6] *See* Exhibit E, Wikipedia Article on "PCAP."
[7] *See* Exhibit F, Wikipedia Article on "Packet Analyzer."
[8] http://www.tcpdump.org/#

about what is contained in the PCAP can be elicited at trial by either IPP's employee, Mr. Fieser, Malibu's computer forensic expert Mr. Patrick Paige, Excipio's independent contractor, Mr. Michael Patzer, or via a demonstration during trial by any other witness. The demonstration would merely require the witness to install TCPDump so that he or she could read and analyze the PCAP.

b.   <u>Every Entry Onto the MySQL Server Log File Correlates To a PCAP</u>

Defendant sent the investigative server numerous "pieces" of each one of the computer files that contain a copy of Malibu's works. Accordingly, TCPDump recorded numerous BitTorrent transactions for each infringing computer file. *See* Exhibit G. Each one of these transactions was logged in a MySQL log file *and* fully recorded as a PCAP. Significantly, every entry on the MySQL server log file correlates to a specific PCAP. Patzer, at ¶ 9. Both the MySQL log file and the PCAP are computer records.

3.   <u>The PCAP and Log Files Are Saved on an Uneditable WORM ("Write Once Read Many") Tape Drive</u>

"Write once read many (WORM) describes a data storage device in which information, once written, cannot be modified. This write protection affords the assurance that the data cannot be tampered with once it is written to the device."[9] Both the PCAPs and log files are saved onto WORM tape drives. Patzer, at ¶ 10. There is no possibility that the information on these WORM drives can be edited. *Id.,* at ¶ 11. Further, each of the WORM tape drives is electronically stamped with a German government issued time stamp at least every twenty four hours. *Id.,* at ¶ 12.

---

[9] *See* Exhibit H, Wikipedia article entitled "Write once read many."

B.    Patrick Page Tested the Data Collection System

Malibu's computer forensic expert, Patrick Paige, tested the data collection system.  His report is attached as Exhibit I.  His test involved seeding public domain movies, i.e. movies that are not protected by copyright.  *See* Exhibit I.  He gave IPP the titles of the works.  *Id.*  IPP, using Excipio's system, found the works and entered into BitTorrent transactions with Mr. Paige's test servers.  *Id.*  Mr. Paige used a packet analyzer on his test servers to record all of the transactions in PCAPs.  *Id.*  He compared the PCAPs he recorded during the transactions with the PCAPs that were recorded by IPP using Excipio's system.  *Id.*  They matched perfectly.  *Id.*  This could not happen unless Excipio's system accurately created PCAPs of transactions.  *Id.*

## III.    LEGAL STANDARD

"[I]n making its ruling [on a motion to compel], a district court should independently determine the proper course of discovery based upon the arguments of the parties."  *Cannon v. Burge*, 05 C 2192, 2007 WL 2410392 (N.D. Ill. Aug. 20, 2007) citing *Gile v. United Air Lines, Inc.,* 95 F.3d 492, 496 (7th Cir.1996).  "The burden is on the moving party to demonstrate actual and substantial prejudice from the denial of discovery."  Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 11(V)-B citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (denial of motion not an abuse of discretion "absent a clear showing that the denial of discovery resulted in actual and substantial prejudice" to moving party).

"Rule 26(b)(1) … grants the court the power to limit discovery in certain instances, including those when the discovery requested poses a burden to the producing party that is far greater than the benefit it offers to the requesting party. *Crosetto v. Heffernan*, 88 C 433 C, 1990 WL 304213 (N.D. Ill. Sept. 26, 1990).  "The court must essentially conduct a balancing test weighing the value of the material sought against the burden of providing it."  *Estate of*

*Belbachir ex rel Belbachir v. United States*, 08 C 50193, 2010 WL 3239444 (N.D. Ill. Aug. 13, 2010).

IV.   **ARGUMENT**

   **A. Defendant's First Request for Production Seeks Documents That Are Irrelevant, Overbroad, And Not In Plaintiff's Possession, Custody, Or Control**

Defendant's first request for production of documents seeks all documents and ESI relating to the use of any software, hardware, and related technology by IPP or any other investigator relating to the Hash Values in the suit.

   **Defendant's Request To Produce No. 1**: All documents and ESI relating to the use of any software, hardware, and related technology by IPP, Limited or any other investigator relating to Hash Values, as defined above. This request specifically is requesting not just the production for this particular case, but the entirety of the documents, logs, and other ESI and documentation for all monitoring of the Hash Values in any legal action, worldwide.

   **Plaintiff's Response**: Plaintiff objects on the basis that this request is overbroad insofar as it seeks information which would evidence third party infringements as opposed to just Defendant's infringements. Plaintiff avers that the vast majority of information requested herein is not in its possession, custody or control, but rather in IPP International UG's possession, custody or control. Further, IPP International UG charges a fee to third parties for extracting data from its servers. Plaintiff further objects on the basis that this request is unduly burdensome as it pertains to the production of documents, logs, and other ESI and documentation for all monitoring of the Hash Values in any legal action. Notwithstanding the foregoing objection and waiving same, Plaintiff will produce the PCAP files which demonstrate that a computer using Defendant's IP Address connected to IPP International UG's servers and delivered a piece of a computer file that contains a copy of each of the copyrighted works at issue in this case as evidenced by its unique cryptographic hash value. Plaintiff avers that it does not have any other documents which describe IPP International UG software, hardware, and related technology other than those which have been attached to the court papers in this case. Defendant should be aware, however, that the technology, software, and hardware were well explained in testimony during the Bellwether Trial. The case number is 12-cv-2078, in the United States District Court for the Eastern District of Pennsylvania. A copy of the transcript of this testimony is available on CM/ECF.

1. <u>Plaintiff Has Produced Documents Responsive to this Request</u>

Plaintiff has produced to Defendant (1) a PCAP and log file for each hash file infringed by Defendant; (2) Plaintiff's expert report on IPP's technology; (3) a MySQL log detailing every transaction recorded by IPP with Defendant's IP address; (4) a complete list of additional surveillance recorded by IPP.  This is in addition to the functional description of IPP's software provided when Plaintiff filed its Motion for Leave (See CM/ECF 3-3) and the list of infringements in the Complaint.

2. <u>This Request is Irrelevant and an Undue Burden</u>

Defendant's request is irrelevant and an undue burden in so far as it relates to "the entirety of the documents, logs, and other ESI and documentation for all monitoring of the Hash Values in any legal action, worldwide."

a. <u>Defendant Fails to Establish That the Request is Relevant</u>

Defendant failed to establish that receiving documents pertaining to other peer-infringers is relevant.  Indeed, Defendant has not even articulated what evidence he expects to receive. Plaintiff originally listed on its 26(a) disclosures "other peer infringers".  Plaintiff's logic was that because it is possible that one computer connected to another computer when in the swarm, each computer would potentially have IP logs that would validate the other computers.  Plaintiff realized that in reality it was not practical to subpoena all the computers and forensically examine them in order to actually make this information relevant.  Plaintiff amended its 26(a) disclosures to remove "other peer infringers" because they are not a practical source of evidence.

Defendant has failed to express why information relating to the hash value is relevant. Instead, he only makes three conclusory statements: (1) it is relevant for data relating to liability; (2) setting statutory damages; and (3) Plaintiff listed it in its 26(a) disclosures.  He does not offer

any more explanation.  Defendant's request should be denied because he has failed "to address how this information would be relevant to this case and what type of meaningful evidence would result from this inquiry."  *Pupo-Leyvas v. United States*, 208CV344RLY-WGH, 2009 WL 2245073 (S.D. Ind. July 27, 2009) (refusing to compel discovery when movant cannot articulate why it is relevant).

As explained above, Plaintiff has removed it from its 26(a) disclosures because it is not practical to obtain evidence.  Plaintiff has stipulated to seek only the minimum award of $750 per infringement in this case so it not relevant to the issue of statutory damages[10].  In terms of data relating to liability, Defendant has not explained how other peer infringers may have data that would relate to her liability.  At best, another peer infringer may or may not have a record of Defendant's IP address on his or her computer.  If a peer infringer does not have a record of Defendant's IP address is does not exculpate her because not every member of the swarm shares data with each other.

b.  Defendant's Request is an Undue Burden

Even if this information contains a modicum of relevancy, "the burden or expense of the proposed discovery outweighs its likely benefit."  *See* Fed. R. Civ. P. 26(b)(C).  "In ruling on a discovery motion, courts consider the totality of the circumstances, weighing the value of material sought against the burden of providing it."  *Kimberly-Clark Worldwide, Inc v. First Quality Baby Products, LLC*, 2011 WL 1343166 at * 1 (E.D. Wis., 2011), quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir.2002).  "A party need not provide discovery of electronically-stored information 'from sources that the party identifies as not reasonably

---

[10] Argument briefed in full on page 17.

8

accessible because of undue burden or cost." Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 11(V)-B.

Plaintiff's litigation management system is not designed to sort its cases by hash value. Defendant's request requires Plaintiff to produce every document and ESI file relating to IPP surveillance in every case involving any one of the twenty-eight hash values in this case. This would result in an extraordinary amount of documents, many of which are covered by attorney-client work product. Indeed, this request would include every declaration by Tobias Fieser, every complaint, every MySQL file, every additional surveillance and Exhibit C data, every PCAP, every log file for potentially hundreds of defendants. Plaintiff should not be compelled to produce this information when Defendant cannot even articulate why she needs it, other than to harass Plaintiff and drive up Plaintiff's costs. The burden of producing is far greater and disproportionate to the relevancy of Defendant's case. *See Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989) ("although it may be considered remotely relevant, its production would be unduly burdensome and disproportionate to this litigation.")

"[I]t would be manifestly unreasonable to expect or require a responding party … to manually sift through thousands of individual files and then to develop presently non-existent computer programs to analyze the data." *Marozsan v. Veterans Admin.*, S84-500, 1991 WL 441905 (N.D. Ind. June 24, 1991). Just as in *Marozsan* the Northern District of Indiana found it unreasonable for a party to sift through thousand of files and develop computer programs to analyze the data, this Court should not force Plaintiff to do the same here. Plaintiff would be forced to sort through hundreds if not thousands of files and develop a program to log and record the hash values which correspond to Defendant's request.

Further, as set forth above, IPP logs millions of transactions globally each month for Malibu Media.  For each hash value, each infringer within the swarm connects to IPP's servers hundreds, if not thousands of times.  Each connection contains a PCAP and log file.  Plaintiff incurs a fee of $150.00 per hour for IPP to produce these files from its servers.  The cost for IPP to produce PCAPs for each time a peer infringer on one of the hash values connected to IPP's servers will total *hundreds of thousands of dollars*.  Plaintiff should not be forced to incur such costs when defense counsel does not even know how he would use this information.  He has no plan and this request is intended solely to harass Plaintiff.

3.  <u>The PCAPs are not Within Plaintiff's Custody or Control</u>

Plaintiff also objects to Defendant's First Request for Production because the documents requested are not in Plaintiff's possession, custody, or control.  A party is only required to produce documents in its "possession, custody, or control…"  *See* Fed. R. Civ. P. 34(a).  "Federal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand."  *United States v. Approximately $7,400 in U.S. Currency*, 274 F.R.D. 646, 647 (E.D. Wis. 2011).  "[A] party seeking production of documents bears the burden of establishing the opposing party's control over those documents."  *See Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992).

Defendant fails to set forth any explanation as to how Plaintiff is in control of these documents.  The mere assertion that Plaintiff has an ongoing business relationship or even a contractual relationship with IPP is not sufficient to establish Plaintiff's control over these documents.  *See Evan Law Grp. LLC v. Taylor*, 2011 WL 72715 at *10 (N.D. Ill. Jan. 6, 2011)

(Court held that a responding party does not have legal entitlement to documents merely because the requesting party asserts that the responding party has an extensive professional relationship with a non-party.)

Further, such a request "completely circumvent[s] the protections afforded by Federal Rule of Civil Procedure 45." *Id.* "The fact that a party could obtain a document if it tried hard enough…does not mean that the document is in its possession, custody, or control; in fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) (holding that control did not exist where a party could not order a non-party to surrender documents). "The existence of this legal right of control depends upon the relationship between the parties, usually arising from statute, affiliation or employment." *Technical Concepts, L.P. v. Cont'l Mfg. Co.*, 1994 WL 262119 at * 1 (N.D. Ill., 1994) (Even where it was clear that a business relationship existed between a party and a foreign non-party, control did not exist because there was no employment or superior-subordinate relationship or affiliation between the party and nonparty).

Defendant's citation to *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007) is off point. In *Columbia*, the California court ordered production of third party electronic data because the Defendant had the option of either requesting it from the third party or re-routing it through its own servers. *Id.* at 453 ("As the record reflects that Defendants have the ability to reroute the Server Log Data through their own servers, should it prove impracticable for Defendants to acquire the information from Panther.") Here, the *only* way for Plaintiff to receive the information Defendant requests is to request it from IPP and incur a large fee. Plaintiff should not be forced to do so when Defendant considers the information "mostly useless".

11

Plaintiff cannot demand that IPP surrender the documents requested.  In fact, in order to produce such documents Plaintiff would need to compensate IPP to extract and compile this data.  Malibu Media and IPP do not have overlapping owners and are not in the same business.  IPP is nothing more than a regularly used third party vendor to Malibu Media.  Beyond this business agreement, there is no link that the two separate entities have with one another.  To assert that Plaintiff has control over IPP's documents merely because of the existence of a service agreement between Plaintiff and IPP is erroneous.

**B.  Plaintiff Has Produced All Documents within Its Possession, Custody or Control in Response to Defendant's Second Request for Production of Documents**

Defendant moves to compel Plaintiff to produce all documents and ESI related to its 26(a) disclosures.  Plaintiff has already produced all of these documents.

**Defendant's Request To Produce No. 2**: All documents and ESI noted or related to Malibu's Rule 26(a) disclosure, whether or not said disclosure was inadvertent.

**Plaintiff's Response**: Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request, if any such documents exist.

Other than documents that relate to "other peer infringers" which is no longer included on Plaintiff's 26(a) disclosure, Defendant's motion to compel does not even state what documents he is moving to compel.  As for the documents related to "other peer infringers" this request is identical to his first request for production set forth above and Plaintiff's objections, likewise, are the same.

**C.  Defendant's Eighth Interrogatory Seeks Information Outside of Plaintiff's Possession, Custody or Control**

Defendant's Eighth Interrogatory seeks contact information for the "other peer infringers" for each hash number in this action.  As explained above, Plaintiff revised its 26(a) disclosures and it no longer includes "other peer infringers".

**Defendant's Interrogatory No. 8**: Please provide the name and all contact information, or if represented the name and contact information for counsel, for each and every "peer infringer" as noted in Malibu's Rule 26(a) disclosure for each of the Hash Numbers implicated in this action.

**Plaintiff's Response**: Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory.

1. <u>Defendant's Request is Impossible</u>

Defendant's request seeks the identities and contact information of *every* peer infringer who downloaded the same files as Defendant. It is impossible to know the name and contact information for every peer infringer in each of the 28 hashes involved in this suit. Therefore, Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory.

Each hash will likely have hundreds, if not thousands of peer infringers. IPP may not have entered into transactions with all of the peer infringers for each hash file. And, as set forth above, Plaintiff is not in possession of the data that would include the IP addresses for all peer infringers related to the hash value. Indeed, IPP only provides Plaintiff with data for US and German peer infringers.

Even if Plaintiff was in possession of all IP addresses, which it is not, the only way for Plaintiff to learn the identity of a peer infringer is to file suit against and subpoena the infringer's ISP to learn the infringer's identity. *See* CM/ECF 3-2 at ¶8. BitTorrent is an Internet protocol, available to peer infringers throughout the world. To obtain the information in Defendant's request, Plaintiff would not only need the IP address of every infringer, but also to file suit and subpoena their ISPs for their contact information. Some ISP's do not keep records for very long. *Id.* at ¶10. Some international ISPs may not at all. Plaintiff would need to file tens of thousands of suits and still would not be able to obtain all of the necessary information. It is impossible for Plaintiff to comply with Defendant's request.

2. <u>Producing the Contact Information for Infringers Plaintiff Has Sued on These Hash Files is an Undue Burden</u>

Defendant's motion does not directly address why his request for the name and contact information for other peer infringers is relevant.  That being said, his motion implies that the interrogatory was only intended to seek the name and contact information of infringers that Plaintiff has sued, despite the sweeping request set forth in the interrogatory.  *See* CM/ECF 65 at *4.  Complying with Defendant's request to produce the name and contact information of other defendants Plaintiff has sued on the same hash value is an undue burden.   Defendant unreasonably states "it is alleged that such production is unduly burdensome because of sloppy record keeping on Malibu's part."  *Id.* at *4.  This is not the case.  It is an undue burden because of the confidentiality surrounding the defendants' information.   In Defendant's third interrogatory, Defendant acknowledges the confidentiality at issue and states "Note: Tashiro understands the confidential nature of settlements entered into, and does not request the identity of those persons who have settled in this action, or any other action involving the so-called 'swarms' complained of."  *See* CM/ECF 64-1 at *2.

The names and contact information Plaintiff receives from ISPs are confidential.  In order for Plaintiff to obtain them, it must receive a Court order pursuant to the Cable Communications Act.  *See* 47 U.S.C. § 551(c)(2)(B).  In some of its cases, Plaintiff has entered into confidential settlements with peer infringers.   These agreements prevent Plaintiff from disclosing such information without providing notice and an opportunity for the individual to object.  In other cases, Plaintiff has willingly entered into a protective order preventing such disclosure.  Often courts prohibit Plaintiff from sharing this information with anyone.  Indeed, in all of Plaintiff's Maryland cases, Plaintiff is prohibited from disclosing this information by court order.  *See e.g. Malibu Media v. John Doe*, 13-cv-00350-PWG (D. Md. Aug. 1, 2013), CM/ECF 33.

14

Defendant's failure to address any relevant purpose for requesting this information is telling. Unless Defendant intends on contacting each defendant for purposes of examining their hard drive, there is no basis to receive this information. Defendant is likely aware of the great difficulties it would cause Plaintiff to provide this information and seeks it for the purpose of harassing Plaintiff.

### D.   Plaintiff Will Produce the Information Requested in Defendant's Fourth Interrogatory

Defendant's Fourth Interrogatory seeks dates of first infringement for each hash value detected by IPP. While Plaintiff believes its objection is valid, and Plaintiff has never had this information in its possession, it is not worth arguing over. Plaintiff spoke with Excipio and learned that this information can be produced without burden or a large expense. Plaintiff will produce this information to Defendant in the next seven days.

### E.   Plaintiff Will Produce the Information Requested In Defendant's First Interrogatory Pursuant to a Protective Order

Defendant's first interrogatory seeks Plaintiff's private contracts with IPP. Plaintiff requests the Court enter a protective order to prevent Defendant or defense counsel from disseminating this information onto the Internet. *See* Plaintiff's Motion for Entry of a Protective Order filed contemporaneously. Defendant also seeks information relation to Mr. Lipscomb's financial compensation by Plaintiff. Mr. Lipscomb's agreement with Plaintiff is not based on a contingency and not relevant to any matter in this case.[11]

> **Defendant's Interrogatory No. 1**: Please identify all persons or business entities that have an interest, financially, or otherwise, in this litigation, including, but not limited to, owners or members of Malibu, counsel for Malibu, forensic

---

[11] Should your Honor disagree and find that Mr. Lipscomb's compensation is in anyway relevant, Plaintiff will submit it for your Honor's review in camera. It should not be the subject of blog posts or hate groups.

consultants, and/or witnesses, or to whom payment for any settlements are sent to, and specifically and in detail describe the nature of the interest.

**Original Response**: Attorney Paul Nicoletti has a standard tiered contingency fee agreement. IPP, Ltd. is a fact witness who will testify that its technology detected that a person using Defendant's IP address was downloading and distributing Plaintiff's copyrighted works. IPP, Ltd.'s technology is not capable of being manipulated by a human. With that as background, IPP, Ltd. is entitled pursuant to an oral contingency fee agreement to a small portion of the proceeds from the resolution of this case. Plaintiff objects to disclosing the exact percentage on the basis that it is confidential information. Notwithstanding the foregoing, Plaintiff will provide the exact percentage if the parties enter into a stipulated protective order. Malibu Media, LLC owns the copyrights, which have not been assigned to anyone. Malibu Media, LLC is responsible for paying all of the costs and fees associated with the litigation. And, Malibu Media, LLC is the only other entity that has a financial interest in the outcome of this litigation. Malibu Media will provide the exact percentage upon each party agreeing and signing a protective order.

**Plaintiff's Amended Response**: Attorney Paul Nicoletti has a standard tiered contingency fee agreement. Malibu Media, LLC owns the copyrights, which have not been assigned to anyone. Malibu Media, LLC is responsible for paying all of the costs and fees associated with the litigation. Malibu Media, LLC is the only other entity that has a financial interest in the outcome of this litigation. The parties have not entered into a settlement agreement. Therefore, it has not been determined where any settlement monies will be sent. No other entity is entitled to any share of the monies which may be paid from Defendant to Plaintiff.

Both IPP's oral and written agreement with Plaintiff are confidential commercial information within the meaning of Rule 26(c)(1)(G). If disclosed, IPP may raise the amount it charges Plaintiff for its data collection services. Plaintiff is getting a good deal from IPP and wishes to maintain it. Disclosing the terms of the agreement would also adversely affect IPP's business; its other customers may accuse it of overcharging them. Alternatively, another data scanning service may attempt to poach Plaintiff away from IPP. Finally, third party bloggers will certainly use this information to harass Plaintiff and IPP.

The information is also not relevant and unfairly prejudicial. As explained in Plaintiff's Memorandum In Opposition to Bar Testimony, no witness has ever been paid for testimony, and

the evidence reported to Plaintiff by IPP is independently verifiable.  Further, Plaintiff does not plan to call anyone from IPP.  Consequently, at the appropriate time, Plaintiff will move *in limine* to prohibit this evidence from being introduced at trial.  There is simply no reason to disseminate it now.  If Defendant wants to make arguments about the agreements then Plaintiff can file its interrogatory answer describing the oral agreement and the written agreement under seal.

In *Directory Concepts, Inc. v. Fox*, 2008 WL 5263386, at *7 (N.D. Ind. 2008), the Northern District of Indiana entered a protective order preventing the "Disclosure of Non–Party Private Information [because it] would risk unnecessary annoyance or embarrassment of non-parties, would unfairly and gratuitously invade the privacy of non-parties, would subject non-parties to the possibility of identity theft, and would strain the business relationships the parties have with the non-parties."  The *Directory Concepts* Court also found disclosure "would enable a competitor to target the producing party's customers and potential customers, undercut the producing party's pricing, and mimic the producing party's successful business plan."  The rationale set forth in *Directory Concepts* applies equally in this case.   A protective order is warranted here too.[12]

### F. Defendant's Third Interrogatory is Irrelevant Because Plaintiff Stipulates that it will only Seek $750 in Statutory Damages

Defendant's third interrogatory seeks the amount of money that Malibu Media has obtained through settlement, judgment, or otherwise for each hash value.  This request is irrelevant because Malibu Media agrees to seek only $750 in statutory damages per infringement, the minimum award under law.  *See* 17 U.S.C. 504(c)(1).  Therefore, the amount

---

[12] Plaintiff does not have the date of first recorded infringement for each .torrent file in its possession.  However, Plaintiff is obtaining this information from Michael Patzer and will produce it.

Malibu Media has recovered in settlements cannot possibly be relevant to a discretionary award. Defendant has not provided any argument to the contrary.

That being said, should the Court determine that an award above the minimum statutory damages is necessary to deter behavior by Defendant such as spoiling evidence,[13] the Court may do so. *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013) ("Bryan White's wiping clean of his computer in attempting to cover up the fact that he had downloaded the BitTorrent software, as well as five of Malibu's movies, required a substantial penalty, and also to make a statement that would effectively deter others from acting as Bryan White had acted in this case"). This determination will only involve consideration of Defendant's conduct and not Plaintiff's previous compensation.

> **Defendant's Interrogatory No. 3**: Please provide the amount of money that Malibu Media, LLC has obtained through settlement, judgment, or otherwise, for the alleged infringement through participation in each of the so-called "swarms" complained of (Hash Values appearing in ECF Doc. 13-1), whether in this particular action, or any other action across the United States. Provide a detailed calculation of the same. Note: Tashiro understands the confidential nature of settlements entered into, and does not request the identity of those persons who have settled in this action, or any other action involving the so-called "swarms" complained of.

> **Plaintiff's Response:** Plaintiff objects to this interrogatory on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information. Plaintiff is only suing Defendant for statutory damages. The amount of money that Plaintiff has obtained from third party Defendants via settlements or judgments is not a factor used to set the quantum of statutory damages which should be assessed against Defendant. To explain in greater detail, Malibu Media has elected only to receive statutory damages so any calculation towards actual damages is irrelevant. Further, Malibu Media can only collect up to $150,000 per infringed work in this case, per an award of damages. 17 U.S.C. § 504(c) states that there are maximum statutory damages per work, per case: "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one

---

[13] Defendant deleted hundreds of files containing BitTorrent Clients and .torrent files the day before her computer was imaged. *See* Plaintiff's Motion for Sanctions, filed contemporaneously.

work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally . . . as the court considers just." Id. This "action" has not gone to trial and Plaintiff has not been "award[ed]" any statutory damages. Plaintiff's settlement amount is not relevant because a confidential settlement is not an "award of damages" only an amount entered after finding a defendant liable is an award, entered by a judge, jury, or arbitrator. Black's Law Dictionary specifically defines award as: "award, n. (14c) A final judgment or decision, esp. one by an arbitrator or by a jury assessing damages. — Also termed arbitrament." AWARD, Black's Law Dictionary (9th ed. 2009), award.    The District Court of Colorado examined this issue and stated: "[Defendant's] argument that Plaintiff's alleged settlements with other defendants precludes recovery of statutory damages severely misreads the statute.  Because Plaintiff has not received any award for actual damages in this action, 17 U.S.C. § 504(c)(1) does not bar Plaintiff from pursuing its claim for statutory damages. Thus, Mr. Batz's First Defense cannot succeed under any circumstance." Malibu Media, LLC v. Batz, 12-cv- 01953, CM/ECF 120 *5 (D. Colo April 5, 13) (refuting the argument that receiving settlements precludes a recovery of statutory damages). Plaintiff's position is that any settlement proceeds it has received from this action would not be factored into any consideration for awarding statutory damages and is therefore not relevant. Plaintiff further objects on the basis that this request is an undue burden. Here, Plaintiff has alleged Defendant infringed thirty-one separate works. In order to determine the amount of settlement for each work, in each swarm, throughout the country would be unduly burdensome, particularly when Plaintiff's records do not reflect settlements by swarm.

### G. Defendant's Ninth Interrogatory Seeks Information that is Irrelevant and an Undue Burden

Defendant's Ninth Interrogatory seeks a list of each and every suit or legal action worldwide that implicates the same hash numbers in the complaint.  As set forth above on pages 9-11, this information is irrelevant and an undue burden to Plaintiff.

**Defendant's Interrogatory No. 9**: Please provide a list of each and every suit or legal action, world-wide, that implicates the same Hash Numbers as the case at bar.

**Plaintiff's Response**:  Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible information.  Plaintiff further objects on the basis that this request is unduly burdensome.  Plaintiff further avers that it does not keep a list of actions correlated to Hash Value.  And, that to gather and cull this information Plaintiff would have to review each of the cases that it has filed and individually check to see if that case involved the same Hash Value.   The case number for each of Plaintiff's suits may be looked up using RCF Express [http://www.rfcexpress.com/search.asp] by clicking "copyright" in the case type

19

field and typing "Malibu Media" in the party field.  Thereafter, using CM/ECF, Defendant could just as easily as Plaintiff obtain a copy of each of the complaints in the cases.  Each of these complaints references a hash value or a set of hash values.  Accordingly, pursuant to Fed.R.Civ.P. 33(d)(1), Plaintiff avers that since the burden of deriving or ascertaining the answer to this interrogatory will be substantially the same for either party then Defendant as the interrogating party should be responsible for culling and reviewing the documents necessary to answer this interrogatory.

## V.   CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel in its entirety.

Dated: February 12, 2014

NICOLETTI & ASSOCIATES, PLLC

By:   /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2014, a true and correct copy of the foregoing document was served via U.S. Mail and/or email to the following:

Jonathan LA Phillips, Esq.
418 Fulton St.
Ste. 255
Peoria, IL 61602
E-mail: jphillips@skplawyers.com
*Attorney for Defendant*

By:   /s/ *Paul J. Nicoletti*