UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT INDIANA

| | |
|---|---|
| MALIBU MEDIA, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KELLEY TASHIRO, and ) <br> N. CHARLES TASHIRO ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Case No. 1:13-cv-00205-WTL-MJD |

**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR
SPOLIATION OF EVIDENCE AND PERJURY**

**I.   INTRODUCTION**

This litigation is tainted by lies and fraud put forth by both of the Defendants and enabled by their counsel.  As such, this Court should not permit the case to proceed any further.  First, one of the Defendants spoiled evidence by erasing numerous files from one of their hard drives the night before they were turned over for forensic imaging.  Defendants do not dispute this fact.[1]  Plaintiff's works could have been amongst the files deleted.  Mr. Tashiro is the last person to have used the spoiled hard drive.  Indeed, the night before the drive was turned over to Plaintiff, Mr. Tashiro unnecessarily and inexplicably plugged the drive into Mrs. Tashiro's laptop, purportedly glanced at the files and then unplugged it.  However, Mr. Tashiro has no explanation for why or how the files were deleted.

After uncovering the spoliation, Plaintiff's expert delved deeper into his examination of the drives.  Upon doing so, examination of Mrs. Tashiro's laptop revealed that the Defendants misrepresented the number of hard drives in their home.  Specifically, Defendant Kelley Tashiro

---

[1] Defendant's purported expert states "I concur with Mr. Paige's finding that there were many files and folders deleted on 22 December 2013."  CM/ECF 101-1, at p. 1.

1

maintained that there were only four computer devices in her home during the relevant timeframe. Those four devices were produced to Plaintiff for forensic imaging and examination. However, Plaintiff's expert uncovered evidence *proving* that Defendants own numerous other USB devices that were <u>not</u> disclosed to Plaintiff and not turned over to Plaintiff for imaging and inspection. When contacted about the omission, defense counsel responded quickly without any investigation whatsoever and vigorously denied the existence of any additional drives while also taking the opportunity to unnecessarily disparage Plaintiff. Later, a hearing was held before your Honor where defense counsel again maintained that the additional missing drives do not exist.

In light of Defendants' repeated representations denying existence of the drives, Plaintiff spent a significant amount of time working on a strategy to further prove to Your Honor that the drives in fact existed and that Defendants were being untruthful. Plaintiff's efforts were expended in vain, however, because recently defense counsel decided to actually conduct a reasonable investigation into the matter. Not surprisingly, Plaintiff was right all along; the Tashiros actually possess a previously undisclosed Western Digital external hard drive – just as Plaintiff said. This new information was revealed to Plaintiff on May 31, 2014, though an improper <u>Fourth</u> Supplement to Defendant's answers to Plaintiff's interrogatories. Defendants thus repeatedly committed perjury. And, by failing to conduct a reasonable investigation before asserting a position defense counsel unreasonably and vexatiously multiplied the proceedings.

Defendants, and their counsel, cannot repeatedly lie and then attempt to negate their falsehoods with a casual "supplement" months later. In sum, Defendants, and their counsel, have been untruthful and acted fraudulently throughout the course of the litigation. Plaintiff respectfully suggests that this Court cannot allow this tainted case to proceed any further.

Accordingly, this Court should grant Plaintiff's Motion for Sanctions and enter a default judgment in Plaintiff's favor.

## II. FACTS

### A. Multiple Hard Drives Owned and Used by Defendants Contain Evidence of BitTorrent Use

On December 23, 2013, Defendant turned over four hard drives to Quantum Discovery for forensic imaging. *See* Declaration of Patrick Paige ("Paige"), CM/ECF 76-1, ¶ 17. One hard drive was unable to be imaged because it is unreadable. *Id.* at ¶ 20. Mr. Paige examined the images of the other three hard drives. *Id.* at ¶ 21. His examination revealed evidence of extensive BitTorrent use. *Id.* at ¶ 24. Defendant Kelley Tashiro's personal laptop computer contained bookmarked BitTorrent sites created under her husband's user login. Paige, CM/ECF 109-2, ¶ 3. The "Torrents" bookmark folder containing links to http://isohunt.com/ and www.torrentreactor.net was created in 2005. *Id*. Another of the Defendants drives was repeatedly used to download BitTorrent files and also had BitTorrent software installed on the hard drive. CM/ECF 76-1, ¶ 24.

### B. Defendants Spoiled Evidence

Numerous files and folders associated with BitTorrent use were <u>*deleted*</u> from one of the hard drives on December 22, 2013 at approximately 10:00 pm. *Id.* at ¶ 25. That was the night before the hard drives were turned over to Quantum Discovery for imaging. *Id.* Defendant's purported expert "concur[s] with Mr. Paige's finding that there were many files and folders deleted on 22 December 2013." CM/ECF 101-1, p. 1. Despite having been erased, Mr. Paige recovered seventy-three (73) deleted BitTorrent files. Paige, CM/ECF 76-1, ¶ 26. Many of them are associated with adult movies. *Id*. And, many of the erased adult content files are of the exact same type detected by Plaintiff's investigator in Plaintiff's Additional Evidence report of third

3

party infringements. *See* Exhibit A. BitTorrent clients, that enable the BitTorrent protocol to work, were also deleted. Paige, CM/ECF 76-1, ¶ 26. One hundred seven (107) files and folders were also deleted on December 22, 2013 at 10:00 pm. *Id.* at ¶ 27. Most of these were parent folders containing *thousands* of files. *Id.* Copies of Malibu Media's movies *could* have been in these folders. *Id.* at ¶ 28.

### C. Plaintiff's Additional Evidence Irrefutably Links Both Defendants to the Spoliation and BitTorrent Use

Plaintiff's expert report contains a list of files erased from the spoiled hard drive. The erased files from the spoiled hard drive correlate directly with the files listed on Plaintiff's Additional Evidence report of third party infringements. *See* Exhibit A. The same exact types of files that were stored on the spoiled drive and later erased were also detected being infringed by Plaintiff's investigator. *Id.* Further, Plaintiff's Additional Evidence connects Defendants to BitTorrent use because both Defendants testified that Defendant Kelley Tashiro is a Rick Springfield fan. *See* Deposition of Kelley Tashiro, at p. 27:18-25; 28:1-23; Deposition of N. Charles Tashiro, at p. 28:17-8. Plaintiff's Additional Evidence includes the third-party work, "Songs for the End of the World" by Rick Springfield.[2] Either Defendant Kelley Tashiro used BitTorrent to download the work herself or her husband did and gave her a copy of it. Regardless, both Defendants are implicated in the BitTorrent use and their denials ring hollow.

---

[2] Defendant admits that she has this album but claims she has it on a CD although she purportedly cannot remember where she purchased it. *See* Deposition of Kelley Tashiro, at p. 28:8-16. Further, when asked "Did you ever download the album Songs for the End of the World from BitTorrent?" Defendant's husband answered, "No, *not that I'm aware*." Deposition of N. Charles Tashiro, at p. 30:2-4. This is the same suspiciously infirm answer that he gave when asked directly if he deleted torrent files from the hard drive.

4

### D. Defendants and Their Counsel Intentionally Misrepresented the Number of Hard Drives

Until May 31, 2014, Defendant Kelley Tashiro and her counsel[3] maintained that only four hard drives existed: (1) a Dell Inspiron 1545 laptop; (2) an iPad Four; (3) a Sony Vaio desktop; and (4) a "Hard Drive of a Mr. Ed Stover."  *See* Defendant's Fourth Supplement to Answers to Plaintiff's First Set of Interrogatories, attached hereto as Exhibit B.  On April 8, 2014 at 7:01 pm undersigned e-mailed defense counsel notifying him that "[i]t has been brought to my attention that there are several hard drives/external devices that the defendant failed to disclose in discovery responses . . . These external hard drives should have been disclosed and produced as part of your client's response to Request for Production Nos. 1 and 9."  *See* E-mail of April 8, 2014 at 7:01 pm, attached hereto as Composite Exhibit C.  The e-mail identified three devices and requested their immediate production – a Western Digital WD 5000AAV External 1.65, a Western Digital WD My Passport 070A 1032, and a Western Digital WDC WD40 0BB-00DEA0.  *Id.*  On April 8, 2014 at 9:56 pm, approximately three hours later, defense counsel responded, denying existence of the drives.

> My client is unaware of these drives, so there is no 'failure to disclose.' . . . <u>We have listed all devices in the home, or used by my client, per the interrogatories.</u> . . . why is this just now coming up?  I understand that your client is grasping at straws at this point, but that doesn't excuse questions being raised in a timely manner?

*See* E-mail of April 8, 2014 at 9:56 pm (underlining in original).  The next day Defense counsel, still maintaining that the drives do not exist, wrote to undersigned:

> Considering the patently absurd nature of the accusations (i.e. the impossibility of them) the unfounded threats of further spoliation and perjury are not well taken.  I would strongly suggest that you consult with Mr. Paige, Q-Discovery, and otherwise prior to filing any baseless supplements to Motions or further motions, as I will be holding you to your Rule 11 obligations.

---

[3] Defendant N. Charles Tashiro was not added as a party to the case until May 15, 2014.

*See* E-mail of April 9, 2014 at 12:21 pm.  Later that day, defense counsel wrote,

> Paul: They were not provided, because they do not exist, or at least [] not known to exist by Kelley Tashiro.  I understand that your client has no evidence that Tashiro infringed and is now grasping at any circumstantial evidence it can find, but I *strongly* suggest that you inquire with Q-Discovery to ensure that you meet your Rule 11 obligations.  These devices are either something that QDiscovery plugged into the computer, or a drive that was disclosed . . . It is not my job to provide you advice to prevent a Rule 11 violation, but as a professional courtesy, I'm telling you that all ducks should be in a row, and all investigation had, because you're going down a wrong path here on bad information."

*See* E-mail of April 9, 2014, at 3:40 pm.

Prior to a telephonic hearing before Your Honor, Plaintiff submitted a positional statement regarding the undisclosed missing hard drives demonstrating that the drives exist and should have been produced.  At the hearing, on April 21, 2014 at 3:20 pm, Defense counsel continued to represent that the drives did not exist.  Your Honor indicated that Plaintiff could file a motion to compel production of the drives but that such a motion was unlikely to be successful in light of defense counsel's representation that the drives did not exist since the Court cannot order production of nonexistent evidence.  CM/ECF 114.

### E. Defendants and Their Counsel Lied to Plaintiff and This Court

On Saturday, May 31, 2014, nearly two months after Plaintiff first brought the missing hard drives to defense counsel's attention, undersigned received a blank e-mail from defense counsel that attached Defendant's Fourth Supplement to Answers to Plaintiff's First Set of Interrogatories (Exhibit B).  Defendant's Fourth Supplement amended Defendant's answers to Plaintiff's interrogatories by adding a *previously undisclosed* Western Digital hard drive to the list of devices "used in [Defendant's] home during the preceding two years."  The supplement states:

> Kelly Tashiro only recently became aware of an additional external harddrive contained within the household.  Kelly Tashiro was unaware of the drive's

6

existence previously, but through continued and dutiful investigation has learned that a Western Digital External HD with the identifying information sought visible in the picture below . . . Kelley Tashiro was not the primary user of this 'computer device;' Charles Tashiro was.

*Id.* at No. 4.

### III.  LEGAL STANDARD

"Spoliation consists of '[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible.'" *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) citing *Black's Law Dictionary* 1409 (7th ed.1999).  "Spoliation evidence is ordinarily admissible not as to a single issue only, but rather bears on the strength of the case in general and the defendant's consciousness of guilt." *Id.* (*citing* 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 278 (1979), *revised by* James H. Chadbourn).  In considering whether a party violated their duty to preserve evidence and prevent spoliation "Indiana courts analyze three factors . . . (1) the relationship between the parties, (2) the reasonable foreseeability of the type of harm to the type of plaintiff at issue, and (3) the public policy promoted by recognizing an enforceable duty." *Reinbold v. Harris*, 2000 WL 1693792, at *2 (S.D. Ind. 2000).  Further, "[c]ourts [] will find that when the party sought to be held liable for spoliation could have informed the party in possession that a lawsuit existed and requested the evidence be preserved, that party may be held liable for spoliation." Koesel, Margaret M. and Tracey L. Turnbull, *Spoliation of Evidence*, Chapter 1, American Bar Association, ABA-SPEVD CH. 1 (2006).

Sanctions for spoliation of evidence may be had in various forms.  "A dismissal of a claim or entry of default judgment is the most severe sanction. Another possible sanction is the exclusion of testimony or other evidence regarding the destroyed evidence.  A lesser sanction is

the giving of a spoliation or adverse inference instruction to the jury." *Smith v. Borg-Warner Auto. Diversified Transmission Products Corp.*, 2000 WL 1006619, at *7 (S.D. Ind. 2000) (citations omitted).

## IV. ARGUMENT

### A. Defendants Breached Their Duty to Preserve Evidence

There is no question that numerous files and folders were deleted from one of the drives the night before they were turned over for forensic imaging. Neither side disputes this. Although it seems most likely that Defendant Charles Tashiro, being the last person to use the hard drive before it was turned over for forensic imaging, erased the evidence, Kelley Tashiro had a duty to preserve the evidence. Spoliation sanctions are therefore appropriate against both Defendants.

Both Defendants are the only two people who had access to the hard drives the night before they were turned over. *See* Deposition of Kelley Tashiro, CM/ECF 109-3, at p. 45:11-17. Defendant Kelley Tashiro was aware of her duty to preserve the evidence. She testified at her deposition that she "was instructed not to delete anything." *Id.* at p. 45:1. Knowing that her husband also used the devices, she was obligated to ensure that he also did not delete anything. As stated above, "[c]ourts [] will find that when the party sought to be held liable for spoliation could have informed the party in possession that a lawsuit existed and requested the evidence be preserved, that party may be held liable for spoliation." Koesel, Margaret M. and Tracey L. Turnbull, *Spoliation of Evidence*, Chapter 1, American Bar Association, ABA-SPEVD CH. 1 (2006).

Indeed, all three Indiana factors weigh in favor of finding that Defendant Kelley Tashiro had a duty to preserve the evidence: (1) the parties are adverse and Defendants had sole

8

possession, custody, and control of the evidence; (2) Defendant Kelley Tashiro knew, or should have known, that any deletions or alterations of the evidence by herself or her husband would negatively affect Plaintiff's ability to prove its case since the infringement was committed using one of her computer devices; and (3) in online copyright infringement cases such as this, there is a strong public interest in recognizing an enforceable duty by a defendant to ensure that material computer evidence is not deleted or altered. *See e.g. Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013) ("Bryan White's wiping clean of his computer in attempting to cover up the fact that he had downloaded the BitTorrent software, as well as five of Malibu's movies, required a substantial penalty, and also to make a statement that would *effectively deter others* from acting as Bryan White had acted in this case.")

Additionally, Defendant Charles Tashiro was aware of the lawsuit prior to the spoliation taking place. *See* Deposition of N. Charles Tashiro, CM/ECF 109-4, p. 61:12-16, (acknowledging that the Comcast letter put him and his wife on notice of the lawsuit causing him to purportedly change his wireless password.) He collected all of the hard drives and gave them to Defendant Kelley Tashiro before turning them over. *Id.* at pp. 36:20-5; 37:1-25; 38:1-14. When asked if he is the one that deleted the files, Defendant Charles Tashiro answered "Not that I was aware of." [4] *Id.* at p. 42:6. He also testified that he plugged the drive in, determined that it worked, saw the main folder open automatically, "glanced at it for a moment and then unplugged it."[5] *Id.* at pp. 42:7-25; 43:1-20. He then turned the subject hard drives "over to [his] wife to

---

[4] Significantly, Defendant did not answer with a firm conviction. His choice of language in answering the question calls into doubt his sincerity.

[5] It is unclear exactly why Defendant's husband plugged in the hard drive that night prior to relinquishing it. Doing so was unnecessary and is suspicious. Even if the hard drive was broken, Defendant was required to produce it and, as with the other hard drive that was unable to be imaged, QDiscovery would have informed Plaintiff if the drive was broken or unreadable. There was no need for either Defendant to test the hard drives or perform any other action with regard to the hard drives besides turning them over to QDiscovery for forensic imaging.

take to QDiscovery." *Id.* at p. 43:21-2. Defendant Charles Tashiro has no explanation for why the files were deleted or how they were deleted. Mr. Tashiro's feigned ignorance is a lie. Computer files do not automatically delete themselves. The deleted files were highly relevant. Here, it is patently obvious that Mr. Tashiro intentionally deleted these files and is now attempting to avoid the consequences of this misconduct by pretending ignorance thereof. His actions are akin to a child being caught with crumbs on his face and his hand in the cookie jar but telling his mother that he did not steal and eat any cookies. Mr. Tashiro's actions are obvious and his denial is childish and reeks of perjury.

Both Defendants were aware of the lawsuit when the spoliation occurred. Defendant Kelley Tashiro was aware of her duty to not delete anything from the hard drive. Even if Defendant Charles Tashiro was unaware of the duty not to delete anything, Defendant Kelley Tashiro was required to ensure that the hard drives were not mutilated, altered, or destroyed. And, Defendant Charles Tashiro should have reasonably known that altering the hard drives by deleting BitTorrent activity was improper in light of the allegations targeted at his wife. Accordingly, both Defendants are liable for spoliation of the drive and should be sanctioned.

### B. Default Judgment Should be Entered Against the Defendants for Their Spoliation

By deleting the BitTorrent files, Defendants intentionally altered and destroyed relevant material evidence in an attempt to purposefully mislead and defraud Plaintiff and the Court. Accordingly, this Court should enter a default judgment against the Defendants. In the Bellwether trial, the Honorable Judge Baylson held that spoliation and perjury deserve "a heavy dose of damages" to deter others. He also noted that "[i]n a criminal case, this conduct would be denominated as obstruction of justice."

> [I]n this case, because of Bryan White's having perjured himself at the Rule 104 hearing and having taken steps to destroy and conceal evidence, a further *substantial award of damages was necessary*. In a criminal case, this conduct would be denominated as obstruction of justice. Bryan White's wiping clean of his computer in attempting to cover up the fact that he had downloaded the BitTorrent software, as well as five of Malibu's movies, required a substantial penalty, and also to make a statement that would *effectively deter others* from acting as Bryan White had acted in this case.

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013).

In this case, because of the intentional spoliation, perjury, and discovery abuses no sanction short of default judgment is appropriate. Neither this Court nor Plaintiff should be forced to endure any further lies or deceit perpetrated in bad faith and unlawfully by the Defendants in order to attempt to escape liability for the infringement. Default judgment is routinely awarded in such situations. *See e.g. Atl. Recording Corp. v. Howell*, 2008 WL 4080008 (D. Ariz. 2008) (court entered default judgment against defendant who deleted peer-to-peer program, deleted infringing files from his hard drive, and then gave false copies of his hard drive to plaintiff's expert); *Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701 (C.D. Cal. 2007) (entering default judgment against defendants when defendants operated a BitTorrent website and destroyed evidence of online postings and then lied to the court about it); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006) (granting default judgment when defendant wiped her hard drive, stating "defendant's conduct shows such blatant contempt for this Court and a fundamental disregard for the judicial process that her behavior can only be adequately sanctioned with a default judgment.")

### 1. That Plaintiff's Expert Was Able to Recover Some of the Deleted Files is of No Consequence

That Defendant did not succeed in completely erasing the deleted files by making them unrecoverable or attempt to wipe the hard drive is of *no* consequence. "Spoliation consists of

11

'[t]he intentional destruction, *mutilation*, *alteration*, or *concealment* of evidence[.]'" *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (emphasis added) quoting *Black's Law Dictionary* 1409 (7th ed.1999). There is simply no question that by deleting BitTorrent and other relevant files, Defendants mutilated, altered, and concealed relevant evidence. Indeed, if Defendants had succeeded in erasing the files entirely to the point that they were unrecoverable, Defendants would have succeeded in defrauding both Plaintiff and the Court by knowingly producing altered and fraudulent evidence. Such egregious efforts to mislead and escape justice cannot go unpunished.

### 2. That Plaintiff's Works Were Not Able to be Found on the Hard Drives Does Not Absolve Defendants of Liability for Spoliation

Defendant's purported "expert" focuses heavily on the fact that none of Plaintiff's works were able to be found on the hard drives. First, this does not undermine Defendant's spoliation and attempt to cover up other relevant BitTorrent files and folders. "Spoliation evidence is ordinarily admissible not as to a single issue only, but rather bears on the *strength of the case* in general and the *defendant's consciousness of guilt*." *Cahoon*, 734 N.E.2d at 545 (Ind. 2000), citing 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 278 (1979), *revised by* James H. Chadbourn. That the erasures occurred, regardless of the fact that they may not have included Plaintiff's films, bears on the strength of Defendants' denials of liability and consciousness of guilt. Indeed, an innocent defendant with nothing to hide has no reason to alter evidence. And, Patrick Paige, justifiably swore that Plaintiff's works "could have been deleted from the drive during the Defendant's mass erasure the night before the computer devices were turned over to Quantum Discovery." CM/ECF 76-1, at p. 5. It is possible that the entire freespace or parts of it could have been wiped without any traceable entries made or updated on

12

the drive's master file table. Defendants' spoliation taints the proceedings and infects the credibility of Defendants' case in all respects.

### C. Defendant Kelley Tashiro Should be Sanctioned for Committing Perjury by Repeatedly Misrepresenting the Number of Hard Drives in Her Home and Failing to Produce Them

"False testimony in a formal proceeding is intolerable. We must neither reward nor condone such a 'flagrant affront' to the truth-seeking function of adversary proceedings . . . Perjury should be severely sanctioned in appropriate cases." *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 323, 114 S. Ct. 835, 839, 127 L. Ed. 2d 152 (1994). The Federal Rules of Civil Procedure require that "[e]ach interrogatory must . . . be answered separately and fully in writing *under oath*." Fed. R. Civ. P. 33(b)(3) (emphasis added). Providing knowingly false answers to interrogatories "obstruct[s] the 'judicial process'—a process which 'clearly includes a party's right to full, complete, and truthful discovery." *Dotson v. Bravo*, 202 F.R.D. 559, 573 (N.D. Ill. 2001) *aff'd,* 321 F.3d 663 (7th Cir. 2003) (sanctioning party for perjurious answers to interrogatories.). "Until discovered, [perjury] infects all of the pretrial procedures, and interferes 'egregiously with the court's administration of justice.' Acts of perjury seriously undermine the very core of the judicial system[.]" *Dotson v. Bravo*, 202 F.R.D. 559, 575 (N.D. Ill. 2001) *aff'd,* 321 F.3d 663 (7th Cir. 2003) (sanctioning party for intentionally providing false and misleading answers on a continual basis during discovery) (citation omitted). Further, perjury is a crime punishable by up to five years in prison. *See* 18 U.S.C. § 1621.

Plaintiff's First Set of Requests for Production and First Set of Interrogatories to Defendant were sent on September 12, 2013 and Defendant's responses were not timely received. Counsel for Defendant claims that they were late because he was attempting to ensure that the responses "were 100% accurate." *See* E-mail of October 17, 2013 at 11:48 pm, Exhibit

C. Notwithstanding the purported attempt to obtain 100% accuracy, Defendant was repeatedly unable to provide complete and accurate answers. To wit: Defendant supplemented the responses four separate times throughout the course of the litigation. Defendant's responses were supplemented on December 31, 2013, January 16, 2014, January 19, 2014, and again on May 31, 2014.

The evidence uncovered by Patrick Paige, and confirmed by Defendant's most recent supplement, proves that Defendant Kelley Tashiro repeatedly failed to answer Plaintiff's interrogatories truthfully and fully in violation of Fed. R. Civ. P. 33(b)(3), despite answering them under oath. There is simply no reason why "Kelly Tashiro only recently became aware of an additional external harddrive contained within the household." Defendant neglects to even attempt to explain the reason for the material omission. There is no explanation for why "Kelly Tashiro was [purportedly] unaware of the drive's existence previously . . . ." Similarly inexplicable is the assertion that "through continued and dutiful investigation" Defendant Kelley Tashiro learned that a Western Digital hard drive was in her house and used by her husband as of May 31, 2014. Defendant has had since October 2013 to conduct a "dutiful investigation" and she offers no explanation for why she failed to do so from the start.

Defendant's Fourth Supplement reeks of lies and fraud and does not cure the repeated perjurious misrepresentations asserted before this Court and Plaintiff.

**1. Defendant's Fourth Supplement Does Not Cure the Perjury**

Defendant's Fourth Supplement does not abrogate the fraud and misrepresentations that Plaintiff and its investigator uncovered after much hard work. Indeed, the Seventh Circuit case *Lyons Partnership, L.P. v. Holmes*, 34 F. App'x 229, 230-31 (7th Cir. 2002) is directly on point. In *Lyons*, the plaintiff sued the defendant for "renting and performing in costumes that infringed

on its copyrights." *Id.* In response to the plaintiff's detailed interrogatories relating to the infringing costumes, the defendant "repeatedly denied ever owning or renting" the infringing costumes. However, a year later, in a "supplemental response," the defendant admitted to possessing certain costumes. The Seventh Circuit upheld the district court's decision to enter a default judgment against the defendant for the improper discovery responses and purported "supplement." The district court characterized the "initial discovery responses [as] 'dishonest' and that dishonesty was willful – who better than the defendant herself would know about the existence of costumes that were responsive to the requests." *Id.* It further held that the only possible explanation for the dishonesty was an attempt to evade liability.

> <u>The only interpretation possible is that she was attempting to defend herself by lying to the plaintiff.</u> Even now, she attempts to argue that there was no lie, but the record speaks much louder than her protestations.... <u>The "supplements" are not supplements; they are a complete recantation of earlier answers–at a later date when it suits her purpose</u>.
>
> I find that the <u>defendant has been willfully dishonest</u>. <u>I can conceive of no sanction less than default that will not in some fashion reward defendant for her willful misrepresentation of the facts underlying this dispute, so I further find that default would be an appropriate sanction.</u>

*Id.* (citing the district court).

Similar to *Lyons*, Defendant's discovery responses were willfully dishonest since "who better than the defendant herself would know about the existence of [hard drives] that were responsive to the requests." *Id.* Defendant's Fourth Supplement is a "complete recantation" of earlier answers, e-mails, and arguments made before this Court asserted "at a later date when it suits her purpose." *Id.* Defendant, through counsel, repeatedly represented to Plaintiff and this Court that no other hard drives existed when this was simply untrue.

Even if Defendant Kelley Tashiro was able to successfully deflect the blame to her husband by claiming that her husband was the primary user of the device and not her, and

15

therefore she did not know about it, she has still left both Plaintiff and the Court with no explanation for why this device was not disclosed prior to May 31, 2014 and why she repeatedly maintained that it did not exist. Regardless of whose fault it is, Mr. Tashiro is also now a Defendant to this lawsuit. And, Defendant Charles Tashiro's deposition testimony makes the Defendants' fraud even more suspect. Defendant Charles Tashiro testified that he collected the four drives that were turned over to Q-Discovery for forensic imaging – which were the only drives represented as present in the household. *See* Deposition of N. Charles Tashiro, at 36:20-25; 37:1-2. In doing so, Mr. Tashiro remembered to collect an old hard drive that was being stored in the closet and which he claimed that he last used in 2011. *Id.*, at p. 37:3-21. After 2011, Mr. Tashiro did not use the drive. *Id.* Indeed, he testified that he would not have used it because "it was in the closet so [he] wouldn't have remembered to take it out." *Id.*, at 37:1-2. He did remember to take it out and turn it over to Plaintiff however. Notwithstanding the fact that Mr. Tashiro remembered to collect a hard drive that had purportedly been sitting unused in a closet for close to three years, Mr. Tashiro neglected to produce the Western Digital hard drive – of which he is purportedly the "primary user." Mr. Tashiro's omission was obviously willful.

In light of the Defendants' willful and repeated perjury, no sanction short of default judgment should be entered against them.

### V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court enter a default judgment against Defendants and award Plaintiff its reasonable fees and expenses.

Dated: June 20, 2014

Respectfully submitted,

NICOLETTI LAW, PLC

By: /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P-44419)
33717 Woodward Ave, #433
Birmingham, MI 48009
Tel: (248) 203-7800
E-Fax: (248) 928-7051
Email: pauljnicoletti@gmail.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *Paul J. Nicoletti*