**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>KELLEY TASHIRO and N. CHARLES TASHIRO<br><br>Defendants | Case No. 1:13-cv-00205-WTL-MJD<br><br>Hon. Mark J. Dinsmore |

**RESPONSE IN OPPOSITION TO:**
**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR SPOLIATION OF EVIDENCE AND PERJURY (ECF DOC. 130) (the "Motion")**

**I.   Introduction**

Malibu Media, LLC ("Malibu") attempts to accuse not only the Defendants, but also, improperly, Defendants' counsel,[1] of lying to this Court and committing spoliation. It brings these accusations in order to short-circuit this case, avoiding a decision on the merits. Malibu only seeks one sanction, default judgment. Malibu seeks this drastic sanction based upon unfounded speculation, misconstruing facts, and reliance on non-binding law. Neither the law, nor the facts, is on Malibu's side with respect to this issue. This case should proceed forward, have written discovery completed, parties and experts deposed, and proceed to summary judgment or trial.

---

[1] Malibu, without any solid basis to believe it to be true, accused Defendants' counsel of enabling "lies and fraud." Such accusations not only unfairly tarnish the reputation of counsel, but also of diminish the standing of the profession and the justice system as a whole. Such unfounded attacks on the reputation of counsel are especially inappropriate here, where they do not even further the motion that was brought. Indeed, the Seventh Circuit's Rules of Professional Conduct specifically prohibit "absent good cause, attribute[ing] bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety." Lawyers Duty to Other Counsel, ¶ 4, *Stds. for Professional Conduct within the 7th Fed. Jud. Cir.*, available at, https://www.ca7.uscourts.gov/Rules/rules.htm#standards. Counsel for Defendants has repeatedly called for civility, apologized for any perceived slights, and sought to start "fresh" when it appeared that anyone felt that zealousness could be construed to approach incivility.

II. **Applicable Law**

    A.    <u>Seventh Circuit law on spoliation</u>

Binding Appellate precedent[2] dictates that spoliation only occurs when (i) evidence is intentionally destroyed, (ii) in bad faith, and (iii) for the purpose of hiding adverse information. *Bracey v. Grondin*, 712 F.3d 1012, 1018-1019 (7th Cir. 2013). In fact, the relevant consideration is not if the evidence was destroyed, but rather, what the reason for doing so was. *Id.*, *citing*, *Park v. City of Chicago,* 297 F.3d 606, 615 (7th Cir. 2002). Bad faith only exists if destruction is "for the purpose of hiding adverse information." *Faas v. Sears, Roebuck, & Co.,* 532 F.3d 633, 644 (7th Cir. 2008), *citing, Rummery v. Ill. Bell Tel. Co.,* 250 F.3d 553, 558 (7th Cir. 2001).

There can be no burden shifting, it is the moving party that must establish that destruction occurred in bad faith. *Bracey,* 712 F.3d at 1019. It must do so with clear and convincing evidence. *Rodgers v. Lowe's Home Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 7405, 2007 WL 257714, at *7 (N.D. Ill. 2007), *see also, Miksis v. Howard,* 106 F.3d 754, 763 (7th Cir. 1997). Indeed, offering up "no evidence, other than [] speculation" has resulted in the denial of a motion for sanctions. *Id.*, *citing, Rummery v. Ill. Bell Tel. Co.,* 250 F.3d at 558. In this Circuit, merely establishing a duty to preserve evidence does not entitle a litigant to sanctions – even as minimal one as an adverse instruction to the jury. *Id.* at 1020.

Finally, even if a sanction is warranted, that sanction must be proportionate to the circumstances. *Am. Family Mut. Ins., Co. v. Roth*, 2009 U.S. Dist. LEXIS 32519, 13 (N.D. Ill. Feb. 20, 2009), *citing, Collins v. Illinois*, 554 F.3d 693 (7th Cir. 2009). District Courts are cautioned to act "with caution and restraint" in sanctioning parties. *Schmude v. Sheahan,* 420 F.3d 645, 650 (7th Cir. 2005). Spoliation of evidence does not usually allow for default judgment.

---

[2] Perhaps realizing that binding Seventh Circuit precedent does not help its case, Malibu appears to have chosen to rely almost solely upon Indiana state court cases, treatises, and factually distinguishable district court cases.

"Spoliation sometimes permits, but rarely if ever requires, the ultimate sanction of dismissal of the case against the plaintiff or entry of default judgment against the defendant." *Am. Family Mut. Ins., Co. v. Roth*, 2009 U.S. Dist. LEXIS 32519, 13 (N.D. Ill. Feb. 20, 2009), *citing, Mathis v. John Morden Buick, Inc.,* 136 F.3d 1153 (7th Cir.1998).

### B. Seventh Circuit Law on Perjury and Interrogatory Answers

Only providing *knowingly* false answers to interrogatories is sanctionable. *Dotson v. Bravo,* 202 F.R.D. 559, 575 (N.D. Ill. 2001), *aff'd,* 321 F.3d 663 (7th Cir. 2003). No Court should enter sanctions for perjury when there is no reason to believe the Court has been mislead or deceived by supposed perjured testimony. *United States ex rel. Johnson v. Goldstein*, 158 F.2d 916 (7th Cir. 1947). Even if there is an untruthful statement, when harmless, or inadvertent, such statements can go without sanctions. *Villa v. City of Chicago*, 1986 U.S. Dist. LEXIS 17022, 7 (N.D. Ill. Dec. 2, 1986). The law frowns on playing "gotcha" and relying upon the innocent blunder of a party to allow the other an opportunistic advantage. *Rodgers v. Lowe's Home Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 7405, 20-21 (N.D. Ill. Jan. 30, 2007). Sanctions for inadvertent misstatements regularly result in no sanctions. *See, e.g., Baranski v. Serhant,* 106 F.R.D. 247, 250 (N.D. Ill. 1985).

### III. Argument Regarding Purported Spoliation Through Deletion

The current Motion concerns the alleged spoliation of evidence, not what the Defendants did, or did not do, years prior to the alleged period of purported infringing activities. Malibu has failed to meet its aforementioned, unshiftable, burden to prove, by clear and convincing evidence, that evidence was (A) destroyed (B) in bad faith (C) for the purpose of hiding adverse information. Rather than recognize this Seventh Circuit standard, Malibu repeatedly argues the Indiana *Cahoon* case, and various treatises. This can only be because Malibu cannot prove its case under the law of the Seventh Circuit.

Fundamentally, no evidence was destroyed. Even if it were, there is no evidence it was in bad faith and Malibu's speculation is insufficient, as a matter of law, for sanctions. Further, none of the information deleted is relevant, thus it couldn't have been for the purpose of hiding adverse information. Finally, even if spoliation was proven, the sole sanction that Malibu seeks – ending this case without looking into the merits – far exceeds any reasonable sanction that should be levied.

> A. It has gone uncontroverted that no files have been destroyed, and in fact, are all accessible to anyone wishing to review them

Spoliation requires the destruction of evidence. *See, e.g., Bracey v. Grondin*, 712 F.3d 1012, 1018-1019 (7th Cir. 2013). Thus, if evidence is not destroyed, as is the case here, there can be no spoliation. Certain files were marked as deleted from one of the hard drives in the Defendants' home. See, Exh. A, Decl. of Delvan Neville, ¶ 5. However, it has gone uncontroverted that every single file that was *marked* as deleted was fully accessible and not destroyed. Mr. Neville, in his declaration, went to great lengths to explain why all files are completely accessible in an NTFS file system, despite being *marked* as deleted. *Id.*, ¶¶ 7-13. Thus, Malibu, having filed thousands of these cases, must know that its characterization of the "erasure" of files is blatantly inaccurate. Motion, p. 12.

Indeed, while Mr. Paige made no effort to actually ascertain what files were present – preferring to simply state that files "could" have been deleted (Motion, p. 12), Mr. Neville was able to find each and every file on the drive, and show that not a single file was made unrecoverable. The Motion rests upon the half-baked analysis of Mr. Paige. Unfortunately, Mr. Paige did not fully investigate the issue. Perhaps an analogy[3] may provide guidance to the Court.

---

[3] Appropriate factual backing for the entirety of the analogy can be found in Exh. A to this Response.

4

1. *The hard disk drive as a library*

It is not a stretch of the imagination to consider a hard disk drive as a library, with the individual files being books sitting on shelves. A patron seeking a book, say *Moby Dick,* would first go to the card catalog to learn the location of that particular book. Likewise, when seeking a file, a computer would utilize the Master File Table (MFT). Exh. A, ¶ 8. Within the card catalog are individual cards providing the location of the book. Similarly, within the MFT are file records and directory records, which point to the particular location of the file.

When a file is deleted on a computer it is not destroyed, it is simply marked as deleted in the MFT and the file is marked as available for writing over. Exh. A, ¶ 10. In the card catalog analogy, the card catalog (the MFT) would simply have the card for *Moby Dick* removed, and placed in a box on top of the card catalog while the book on the shelf gets a sticker showing that if space is needed, the book can be thrown out. Until the librarian, or computer, needs the space, the file is not overwritten, and the book is not thrown out. *Id.* ¶ 10.

Here, the files were marked deleted just before the hard drives were turned over. Paige admits this in his declaration. Motion, Exh. A, Decl. of Patrick Paige, p. 2. This is the equivalent to a card being removed from the card catalog moments before the library was closed. In the case at hand, because there was no need for additional space, no file was overwritten. That is, *Moby Dick* remained on the shelf, with its card in the box on top of the catalog. Exh. A, ¶ 16 ("any copyrighted media present on the drive before the deletion event would have remained intact when examined by Mr. Paige"). This Court can no more find spoliation occurred here than it could in a *Moby Dick* theft case because a card from the card catalog was removed, and sticker placed on the book.

    2.    *Other Courts have understood that a file marked for deletion*
            *does not equate to its actual destruction*

This is not the first time that this very Court has been faced with a question as to whether

or not a file marked as deleted is actually destroyed. Indeed, this Court faced the question in *Davis v. Carmel Clay Schools*, 2013 U.S. Dist. LEXIS 141888, 19-20 (S.D. Ind. Sept. 30, 2013). In that case, the Court noted that a file is only destroyed, and unrecoverable, after being overwritten. *Id.* In that case, the Court appeared to recognize that questions regarding spoliation only concerned those files that were unrecoverable. *Id.* Further, that Court, contrary to Malibu's assertions, recognized that *even overwriting a file*, by plugging a hard drive into another device meant to write to it, could be unintentional. *Id.* Indeed, when considering when the question revolves around deletion of files from a USB device, such as the hard disk drive here, it is important to consider whether or not use of a commercial wiping device that purposefully overwrites data was used. *Mintel Int'l Group, LTD. v. Neergheen,* 2010 U.S. Dist. LEXIS 2323, 25 (N.D. Ill. Jan 12, 2010).

      This Court should recognize that the files were never destroyed. Unlike the heavily relied upon citation to the Eastern District of Pennsylvania case, here, the files were not intentionally written over and, thus, destroyed. Motion, p.9. In that case, the defendant attempted to wipe/scrub/permanently make inaccessible certain files. Malibu states, *without support from its expert,* that the drive could have been wiped. Motion, p. 12. Mr. Paige never said that. Indeed, Mr. Neville didn't say that. That is not the case here. No one has alleged the use of a commercial wiping device, or purposeful overwriting. The files were there for inspection. *See, Mintel Int'l Group, LTD. v. Neergheen,* 2010 U.S. Dist. LEXIS 2323, 25 (N.D. Ill. Jan. 12, 2010) (finding that, in a case with exceedingly more damning evidence than the rampant speculation here, no spoliation occurred). Even Malibu appears to recognize that the files were actually available for inspection. Motion, p. 12. Spoliation of files marked deleted doesn't occur simply because Malibu's purported

6

expert didn't bother to look at them or, worse,[4] did look at them and ignored what he found.

Further, any reliance upon an argument that the file was "altered," and thus spoiled is improper. Firstly, Malibu has failed to cite to any *binding precedent* on this proposition, rather, relying upon Indiana state law. Motion, p. 12, *citing*, *Cahoon*, 734 N.E.2d at 545 (Ind. 2000). If Malibu were to succeed on this argument, the lives of every single one of the tens of thousands of Malibu defendants, *many of whom are dismissed for inadequate evidence*, would revert to the 1950's. *Pltf's Status and Informational Report for Cases in the N.D. Ill.*, pp. 3-4, 6, Case No. 14-cv-693 (ECF Doc. 17) (Apr. 6, 2014 N.D. Ill.) (showing that 259 of the 886 defendants, or nearly 30%, were dismissed for insufficient evidence). Every internet connected device, when being used will be copying, moving around, transmitting, writing over, and otherwise "altering" the information on its storage mechanisms. Thus, if this Court accepts that the mere alteration of a hard drive is sufficient for spoliation, every one of the tens-of-thousands of defendants in Malibu cases nationwide would have to, immediately upon receipt of a notice from their ISP regarding the initial subpoena seeking their identity, cease using their TVs, their phones, their tablets, computers, and any other internet connected device until litigation was over. Such an argument fails as brought on non-Seventh Circuit law and as being ludicrous.

### 3. *Malibu's extensive reliance on the duty to preserve evidence is not sufficient to prove spoliation*

Malibu extensively discusses the Defendants' duty to preserve evidence. Motion, p. 8-10. Even assuming, arguendo, that there was a failure to preserve evidence (which was done) the failure would not serve to prove spoliation. *Rodgers v. Lowe's Home Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 7405, 2007 WL 257714, at *7 (N.D. Ill. 2007). Accordingly, Malibu's heavy reliance on this point is misguided. Even a negligent deletion of files is not sufficient to warrant a sanction as minor

---

[4] Strangely, Mr. Paige did look at some files, just not others. Motion, Exh. A, p. 2.

as an adverse instruction.  *Rodgers*, at *17.  The deposition transcripts and other discovery show that any deletion that occurred was not knowing, and accordingly, by accident – at the worst, negligent.  *See, e.g.*, ECF Doc. 101-3, p. 9.

> B.  Malibu relies upon speculation and assumptions to
> suggest that files marked as deleted were done so in bad faith

The law is clear, Malibu has a burden to prove, by clear and convincing evidence that any purported destruction of evidence was in bad faith.  *See, e.g., Bracey,* 712 F.3d at 1019.  This burden cannot be shifted.  *Id.*  Arguments that assert "lack of access to the evidence necessary to show spoliation" do not shift the burden.  *Id.*  Just as in the *Rummery* case, Malibu relies upon speculation as to why it thinks the files were marked as deleted.  This is improper.  *Rummery,* 250 F.2d at 644.

Malibu points to no facts explaining why any purported spoliation was in bad-faith.  It simply asserts that files were marked as deleted.  Motion, *generally*.  However, this lack of evidence did not keep Malibu from speculating.  Instead, Malibu relies upon speculation such as "an innocent defendant with nothing to hide has no reason to alter evidence."  Motion, p. 12.  This is patent speculation, and part of Malibu's apparent *modus operandi*.  Malibu also speculated in the first iteration of this motion, wherein the motion stated that "Undersigned [counsel] will take it a step further; the files were likely in these folders and that is why there were deleted."  (ECF Doc. 76). Despite Malibu's assertions otherwise, this very Court has recognized that purposefully plugging a hard drive into a device meant to write to it cannot be construed to be intentionally attempting to delete files.  *Davis v. Carmel Clay Schools*, 2013 U.S. Dist. LEXIS 141888, 19-20 (S.D. Ind. Sept. 30, 2013).   The law is clear, Malibu's speculation is insufficient to make its spoliation case.  Accordingly, the Motion should be denied.

      C.      <u>None of the files marked as deleted were relevant, let alone adverse to the Defendants</u>

Finally, to prove its spoliation motion, Malibu must show, by clear and convincing evidence, that the purpose of the spoliation was to hide adverse evidence. *Faas v. Sears, Roebuck, & Co.,* 532 F.3d 633, 644 (7th Cir. 2008), *citing, Rummery v. Ill. Bell Tel. Co.,* 250 F.3d 553, 558 (7th Cir. 2001). While Malibu may make mountains out of molehills, or in the alternative, attempt to shame the Defendants,[5] regarding the Defendants long-ago use of peer-to-peer protocols and pornographic preferences, the files marked for deletion are irrelevant. Being irrelevant, they are certainly not adverse.

Mr. Neville's declaration is clear. It does not mince words when it states that every single one of the files that were marked for deletion were created *well* before the purported infringement period. Exh. A, ¶ 14. Mr. Paige did not controvert this statement. Not a single torrent file on the hard drive – marked as deleted or not – was created since 2009. Indeed, after a detailed, painstaking, analysis of each of the files marked as deleted, none of them were Malibu works. Exh. A, ¶ 24.

The rub is that Malibu has failed to put on clear and convincing evidence that any of the deleted files would be adverse. Malibu has apparently refused to even look at the files to try to determine if they are adverse. Just as with the other two factors, Malibu has failed to meet its burden.

      D.      <u>Even if spoliation occurs, Malibu seeks an overly extreme sanction, default.</u>

Malibu is seeking one sanction, default. Malibu is seeking to avoid trying this case, as overwhelming evidence is building that shows it cannot win. Such a sanction is well out of line.

---

[5] Notably, this Motion contains an Exhibit that was previously stricken from the Complaint, and noted, in other Courts, to be utilized for the purposes of harassment.

9

Spoliation rarely requires such a harsh sanction. *Am. Family Mut. Ins., Co. v. Roth*, 2009 U.S. Dist. LEXIS 32519, 13 (N.D. Ill. Feb. 20, 2009), *citing, Mathis v. John Morden Buick, Inc.,* 136 F.3d 1153 (7th Cir.1998). The impropriety of Malibu's request belies its true nature, to short-circuit the truth finding purpose of this Court. It is the fundamental goal of this Court to have cases decided on their merits, and sanctions sought here would contravene that purpose. *Rodgers v. Lowe's Home Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 7405, 38 (N.D. Ill. Jan. 30, 2007), *citing*, *Conley v. Gibson,* 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Hormel v. Helvering,* 312 U.S. 552, 557-58, 61 S. Ct. 719, 85 L. Ed. 1037 (1941); *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316, 108 S. Ct. 2405, 101 L. Ed. 2d 285 (1988); *Hefferman v. Bass,* 467 F.3d 596, 599 (7th Cir. 2006).

Such a sanction would be patently unjust, even if spoliation was proven. The sanction would need to be proportionate to the damage caused. *Am. Family Mut. Ins., Co. v. Roth*, 2009 U.S. Dist. LEXIS 32519, 13 (N.D. Ill. Feb. 20, 2009), *citing, Collins v. Illinois*, 554 F.3d 693 (7th Cir. 2009).

Even assuming spoliation occurred, which it did not, Malibu was not prejudiced by the spoliation. It immediately knew of the files being marked as deleted, brought it up, and Defendants' expert concurred. The only time wasted on the matter has been due to Malibu's repeated, baseless, attempts at short-circuiting the truth-finding process. There was no damage done by the purported spoliation, thus, any sanction should be incredibly minor. However, Malibu does not ask for any minor sanction, it solely seeks the most extreme sanction – default. This Circuit "has a well-established policy favoring trial on the merits over a default judgment". *Rodgers v. Lowe's Home Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 7405, 38, *citing, Sun v. The Bd. of Trustees of the Univ. of Ill.*, 473 F.3d 799, 2007 U.S. App. LEXIS 872, 2007 WL 93313 at *11 (7th Cir. Jan. 16, 2007). Accordingly, the Motion should be denied.

  E. For the same reasons, the purported spoliation for non-disclosure falls flat

As explained below, Kelley Tashiro did not know of the additional, most recently disclosed, drive. Thus, there could not have been any intentional withholding of the drive. Accordingly, the Motion, as it relates to spoliation to a disclosed drive must fail. Further, Malibu has a burden of putting on clear and convincing evidence that the drive contains adverse evidence. *Rodgers v. Lowe's Home Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 7405, 2007 WL 257714, at *7 (N.D. Ill. 2007).

Malibu has the drive. It was provided, some time ago, for inspection. Malibu has had the opportunity to inspect the drive. Despite all of this, Malibu has failed to point to any adverse evidence on that drive that it claims was hidden. This is because an inspection of the drive will reveal that there is not a single Malibu Media related file on that drive. Indeed, in the *Davis* case, the Court refused to infer bad faith because the moving party, while showing that six out of dozens of files were made unrecoverable, did not supply evidence of bad-faith. *Davis v. Carmel Clay Schools*, 2013 U.S. Dist. LEXIS 141888, 21 (S.D. Ind. Sept. 30, 2013).

## IV. Argument Regarding Purported Perjury

Should a person who makes a simple mistake, not recognizing that her husband had failed to find, and turnover, one of the many computer devices and hard disk drives in the home, be denied the right to have her case tried on the merits? Of course not. Yet, this is the second time that Malibu accuses Kelley Tashiro of perjury when seeking to end-run the truth seeking process. *See,* ECF Doc. 76. "Mistakes are inherent in the human condition. The most gifted of judges make them." *Rodgers v. Lowe's Home Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 7405, 20-21 (N.D. Ill. Jan. 30, 2007), *citing, Willy v. Coastal Corp.,* 503 U.S. 131, 139, 112 S. Ct. 1076, 117 L. Ed. 2d 280 (1992); *Marek v. Chesny,* 473 U.S. 1, 13, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985)(Rehnquist, J., concurring); *Olympia Equipments v. Western Union,* 802 F.2d 217, 219 (7th Cir.1986).

Malibu has failed to provide any explanation, rising above pure speculation, as to why it believes that Kelley Tashiro committed perjury. Instead, engaging in logical contortions, it attempts to paint an innocent woman as taking part in "a crime punishable by up to five years in prison." Motion, p. 13. The fact of the matter is that Kelley Tashiro did not know of the drive – so she did accurately answer the discovery. Kelley Tashiro did not commit perjury.

    A.    Reliance on discovery responses with standing objections is procedurally improper until such objections are ruled upon

Malibu hangs its hat on Kelley Tashiro's Response to Interrogatory 4. That interrogatory was inartfully drafted and was objected to. Malibu failed to define use – which could mean the mere storage of information while sitting in the back of a closet *or* actively copying and transferring files. See, Motion, Exh. B, p. 3, *see also,* Exh. B, p. 5, ¶¶ 2 and 3 (indicating Malibu has continued purposefully drafting vague discovery requests, despite knowledge of the foregoing issue). Tashiro even sought clarification and promised a more responsive answer if clarified. *Id.* Malibu never sought any ruling on this objection. Thus, the objection still stands. If Malibu wants responses, it should issue proper requests, or, in the alternative, obtain rulings on objections.

As the objection stands, Kelley Tashiro was not required to answer. It is absurd to punish her for providing some information despite the objection. Indeed, if the purpose of the discovery system set forth in the Federal Rules is to avoid judicial intervention in discovery, rewarding Malibu for its inartfully drafted discovery requests will sabotage that system. Any smart defendant will simply object to the vague, undefined, unduly temporally broad, compound, improper, and harassing requests – all of which are contained in the twenty-five interrogatories issued – and refuse to answer until ruled upon. To do otherwise will run the risk of Malibu playing a game of "gotcha," not truth finding.

Malibu has not sought a ruling on the objection, and it wasn't waived. Until it does so,

reliance upon any portion of the response is improper, especially when seeking a default. Accordingly, there can be no sanction.

      B.      Making mountains out of molehills for good-faith supplements
             <u>cannot serve as grounds for a finding of perjury or discovery sanctions</u>

Even if Malibu were able to rely upon discovery requests that, to date, still have standing objections, its argument still fails. Malibu points to the fact that Kelley Tashiro supplemented her discovery responses several times. Motion, p. 14. What Malibu doesn't state is that the right to supplement discovery was reserved. What Malibu doesn't point out is that even a fleeting glance shows three of the dates to be just over two-weeks apart, indicative of Kelley Tashiro's honest, good faith, effort to ensure full and complete responses. Malibu is essentially arguing that the incredibly common practice of seasonably supplementing discovery responses, even when that right is reserved, is somehow indicative of bad-faith. The absurdity of this argument is compounded by the fact that discovery requests were so inartfully drafted as to require *non-waived* objections that have yet to be ruled upon.

Likewise, Malibu attempts to paint Kelley Tashiro in a bad light for her brief explanation that she only recently became aware of the additional drive. Apparently, Malibu wants *more* explanation, despite being told that Tashiro was not the primary user of the drive. Kelley Tashiro didn't have to provide any explanation for her supplement, let alone even more explanation. If Malibu wants an explanation, it should issue additional, *proper*, discovery. Unfortunately, Malibu's "gotcha" games have made any attempt by the Tashiros to work out, explain, or otherwise satiate Malibu, despite its improper discovery, incredibly dangerous.

      C.      Kelley Tashiro cannot perjure herself by stating what she
             <u>knows, instead of what she didn't know</u>

The truth of the matter is that Kelley Tashiro was unaware that the last hard drive was missing. Malibu first made Kelley Tashiro aware of the issue by claiming that THREE hard drives

were undisclosed. Malibu represented to the court that three hard drives were undisclosed during a Local Rule 37-1 conference. However, Kelley Tashiro had to point out to this Court, and Malibu, that two of the serial numbers provided, in fact, corresponded to drives provided to Malibu. However, Malibu's expert, the same man who didn't actually bother to look at all of the files on a drive, failed to recognize that these additional devices were, in fact, disclosed and turned over. Malibu never brought up the other two drives again. It can be surmised that Malibu knows it was incorrect and it should not be a surprise that all involved then took its allegations with a grain of salt. Despite the apparent inaccuracy of Malibu's claims, Kelley Tashiro, *again*, undertook looking for additional drives. She found out about it. It does not contain relevant files. She disclosed it.

As the interrogatories show, the Tashiros have a great deal of hard-drives and computer devices. As the interrogatories, and Exhibit B – Requests to Admit and their responses, show, Kelley Tashiro was not the primary user of the missing drive. Indeed, Exhibit B shows that Kelley Tashiro had no reason to believe the drive existed. Exh. B., p. 5, ¶ 6 (N. Charles Tashiro denying that the drive was reasonably discoverable by Kelley Tashiro).

The explanation is simple, Kelley Tashiro did not know of, or remember, that the drive existed. Malibu's rampant speculation in an attempt to prove what went on in Tashiro's head is improper. If Kelley didn't know, she can't commit perjury. There cannot be perjury without an intentional misstatement. The Motion must fail.

## V. Conclusion

It is evident that Malibu' has neither the facts, nor the law, to warrant the sole sanction it seeks, default judgment. Accordingly, the Motion should be denied.

Respectfully submitted,

/s/ Jonathan LA Phillips
Shay Phillips, Ltd.
456 Fulton St. | Ste. 255
Peoria, IL 61602
309.494.6155 | jphillips@skplaywers.com
IL ARDC No. 6302752
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on July 16, 2014, a copy of the foregoing has been filed with the Clerk of the Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Jonathan LA Phillips