**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT INDIANA**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 1:13-cv-00205-WTL-MJD |
| | ) | |
| v. | ) | |
| | ) | |
| KELLEY TASHIRO, and | ) | |
| N. CHARLES TASHIRO | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS**
**MOTION FOR SANCTIONS**

**I.      INTRODUCTION**

Defendants' Response to Plaintiff's Motion for Sanctions advocates for this Court to hold that a hard drive has not been spoiled unless files have been deleted from it in such a way that the files are completely unrecoverable. As framed, that issue assumes a disputed fact. Namely, based on its computer forensics expert, Plaintiff contends that material evidence was deleted and is unrecoverable. Nevertheless, even if it was not, the Court could not adopt Defendants' proposed rule of law because to do so would have the Court rule that parties are entitled to knowingly materially alter their hard drives by deleting relevant evidence so long as there is some chance that a computer forensics expert might be able to recover the evidence later on. Clearly this Court cannot grant such a license. The deletion itself is the culpable act and whether or not Defendants actually succeeded in their efforts to hide evidence is of no consequence.

Further, since filing Plaintiff's Motion for Sanctions, additional perjury has come to light which has muddied the litigation even further. At this stage, truth and lie are inextricably entangled and Defendants' credibility has been destroyed. Significantly, Plaintiff has learned

1

that the Western Digital Hard Drive which the Defendants repeatedly maintained did not exist was last used on December 22, 2013 – the night before the other four (4) hard drives were turned over to Q-Discovery for forensic imaging.  Thus, Defendants knew that five (5) hard drives were in their home but made the conscious decision to only turn over four (4) of them and then maintain that the fifth did not exist.  Additionally, Defendant N. Charles Tashiro's responses to Plaintiff's requests for admission irrefutably prove that the he lied during his deposition.  There is simply no reason to allow Defendants to further their efforts to escape liability by intentionally lying directly to Plaintiff and the Court.  Defendants must be held accountable for their actions and the Court should demonstrate a zero tolerance policy for purposeful spoliation and perjury by entering a default judgment against the Defendants.

## II.     DEFENDANTS SPOILED EVIDENCE

### A. Defendants' Deletions Clearly Constitute Intentional Destruction of Relevant Evidence in Bad Faith

Defendants argue that the Indiana Supreme Court's definition of spoliation as the "intentional destruction, mutilation, alteration, or concealment of evidence" is inapplicable and that "spoliation only occurs when (i) evidence is intentionally destroyed, (ii) in bad faith, and (iii) for the purpose of hiding adverse information."  Response, p. 2.  Despite Defendants' misrepresentations, Plaintiff's Motion clearly argues intentional destruction of evidence in bad faith for the purpose of hiding adverse information.  "By deleting BitTorrent files, Defendants intentionally altered or destroyed relevant material evidence in an attempt to purposefully mislead and defraud Plaintiff and the Court."  Plaintiff's Motion for Sanctions, CM/ECF 130, at p. 10.  Defendants' assertion that Plaintiff "cannot prove its case under the law of the Seventh Circuit," is incorrect.  Response, p. 3.

The _only_ explanation for why certain select files were erased from one of Defendants'

hard drives the night before they were turned over for imaging and investigation, is that Defendants – in all likelihood Defendant N. Charles Tashiro who used the drive that night for some unknown reason – purposefully deleted those files.   There is no other explanation. Computer files do not erase themselves.  There was no automatic process in place to erase files. Even if there was, there is no explanation for why only some files were deleted but not others. Defendants fail to even attempt to suggest a different possible explanation and instead maintain their position of feigned ignorance and mere shoulder shrugs.

Defendant asserts that Plaintiff has failed to meet its burden to show that sanctions are proper because "Malibu relies upon speculation as to why it thinks the files were marked as deleted."  Response, p. 8.  Defendant is wrong.  Plaintiff has satisfied its burden because the circumstantial evidence has eliminated any other possibility.  The _only_ explanation that remains is purposeful action by one of the Defendants.  Defendants' bad faith is clear.  In a lawsuit that centers around the use of BitTorrent to download and distribute adult content, purposeful deletion of adult content BitTorrent files simply cannot have any good faith explanation.  Any attempt to claim to the contrary is insincere at best.   Regardless, Defendants make no such attempt.

Finally, although Defendants claim that "Malibu's heavy reliance on [Defendants' duty to preserve evidence] is misguided," Defendants are again incorrect.   "[C]ourts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent."  _Trask-Morton v. Motel 6 Operating L.P._, 534 F.3d 672, 681 (7th Cir. 2008) (denying spoliation sanctions because defendants had no reason to suspect litigation).  A duty to preserve evidence is essential to a spoliation sanction so Plaintiff's analysis of this point in its Motion is not in any way misguided.  Here, Defendants

clearly had a duty to preserve the evidence and that duty was clearly breached.

### B. Relevant Files Were Intentionally Deleted, Not Merely "Marked as Deleted" or "Marked for Deletion"

The heading on page four (4) of Defendant's Response claims "[it] has gone uncontroverted that no files have been destroyed, and in fact, are all accessible to anyone wishing to review them." Response, p. 4. This heading is erroneous on its face and the argument contained therein regarding spoliation is equally incorrect. The deleted files are not "accessible to anyone wishing to review them." Instead, recovering deleted files requires extensive knowledge of computers, if not an expert. *See e.g. United States v. Seiver*, 692 F.3d 774, 776 (7th Cir. 2012) *cert. denied,* 133 S. Ct. 915, 184 L. Ed. 2d 703 (U.S. 2013) (stating that a computer file that has been erased cannot been seen by a computer user although it is "normally [] recoverable by computer experts until it's overwritten because there is no longer unused space in the computer's hard drive.")

Similarly incorrect is Defendants' claim that "[c]ertain files were marked as deleted . . . However . . . every single file that was *marked* as deleted was fully accessible and not destroyed . . . [because] not a single file was made unrecoverable." Response, p. 4. Defendants further disingenuously claim that "[t]he files were there for inspection." Response, p. 6. Defendants' assertions are simply untrue. First, the assertion that every deleted file was recoverable and "there for inspection" is false, as explained in detail in Section C below. Next, recovering deleted files takes appropriate skill and ability and even then, not every single deleted file is recoverable – as is the case here. The ability to recover files that were deleted is different from simply accessing files that are "available for inspection." Defendants' repeated use the phrase "marked as deleted" or "marked for deletion" is a deceitful attempt to downplay the spoliation. Use of these phrases misleadingly imparts that no actual deletion occurred when that is simply

not the case.  BitTorrent and other relevant files were unquestionably deleted; both Plaintiff's computer forensics expert and Defendants' purported expert are in agreement on this fact.

A case from the Eastern District of Virginia is instructive.  In *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 509 (E.D. Va. 2011), the defendants were sanctioned for intentionally and in bad faith, deleting files and e-mails from their computers.  Although some of the information was recoverable and had not yet been overwritten, the Court held that "where spoliation occurs and material is not made unavailable (such as with the recoverable information) there has still been a violation of duty: one owed to the Court and the judicial process." *Id.* (Emphasis added).  The *Kolon* court imposed sanctions in the form of attorneys' fees, expenses, costs, and an adverse inference instruction for the defendants' intentional bad faith spoliation.

### 1.  Defendants' Library Analogy Misses the Mark

Defendants attempt to analogize the hard drive erasures to a library with a card catalog system.  Defendants argue that "the card catalog . . . would simply have the card for *Moby Dick* removed, and placed in a box on top of the card catalog while the book on the shelf gets a sticker showing that if space is needed, the book can be thrown out.  Until the librarian . . . needs the space . . . the book is not thrown out."  Response, p. 5.  A more appropriate analogy would be if a library patron went to the library and threw *Moby Dick* into the trashcan the night before he knew another patron would go to the library and look for that exact book and others of that type. The next patron would come across the space on the shelf where *Moby Dick* previously resided and find no evidence of it.  Defendant's position is that the first patron, who threw the book into the trashcan, has committed no wrong if the trashcan had not been emptied into the dumpster and the trash hauled away, never to be seen again.  Defendant argues that because the trashcan

containing the copy of *Moby Dick* was still in the library when the next patron came looking for it, there was no wrongdoing since technically, with enough digging, the book may be located within the library – albeit at the bottom of a garbage bin.

Allowing Defendant's argument to succeed would clearly set an intolerable precedent for copyright and other cases across the country.  If accepted, the Court would be condoning the proposition that a party may delete files from their hard drive so long as there is some chance that they may still be able to be found upon forensic examination.  In other words, purposefully hiding evidence by deleting it is okay because only erasures which make files 100% unrecoverable to the party searching for the erased files warrant the imposition of sanctions. This simply cannot be the case.

### 2. Defendants' Purported Expert's Conclusion Underscores That Defendants' Argument Fails

Further to the argument directly above, even Defendants' purported expert's own conclusion supports Plaintiff's argument.  Defendants' purported expert concludes his report saying that although numerous files and folders had been deleted from the hard drive, "the serendipity that no users created or modified files following that deletion demonstrates that had . . . relevant videos or .torrent files been present before the 22nd, they would have remained present . . the following day."  CM/ECF 137-1, at ¶ 24.  Defendants' purported expert's conclusion is an acknowledgment that if further deletions or modifications had occurred, the relevant deletions would have been unrecoverable.  In other words, but for the "serendipity that no users created or modified files" following Defendants' erasures, Defendants' erasures would have been unrecoverable.  Thus, Defendants would have relinquished to Plaintiff an altered drive and Plaintiff would have been unable to recover the relevant BitTorrent evidence that had been erased from it.  This Court cannot create a rule that allows defendants to evade liability for

deleting files from a hard drive so long as "serendipity" saves the files from unrecoverable final erasure.

### C. Defendants' Purported Expert's Ultimate Conclusion is False

Plaintiff's expert found that numerous files and folders were deleted from one of Defendants' hard drives the night before it was turned over for forensic imaging and inspection. Defendants' purported expert agrees with that finding.  *See* CM/ECF 137-1, at ¶ 5 ("I concur with Mr. Paige's finding that there were many files and folders deleted on 22 December 2013.") There is no dispute that files were deleted.

Plaintiff's expert also asserts that "Malibu Media, LLC's copyrighted content could have been deleted from the drive during the Defendant's mass erasure the night before the computer devices were turned over to Quantum Discovery."  *See* CM/ECF 76-1, at ¶ 28.[1]  Defendants' purported expert "dissent[s] from Mr. Paige's findings as to whether any of the deleted files could be Malibu Media, LLC's copyrighted content."  CM/ECF 137-1, at ¶ 6.  Defendants' purported expert's dissent is based upon "the serendipity that no users created or modified files following th[e] deletion[.]"  *Id.* at ¶ 24.  The dissent rests on the assumption that *all* of the deleted files were able to be recovered.  Thus, the purported expert erroneously concludes that because all of the deleted files could be recovered, and none of the recovered deleted files were Plaintiff's movies or .torrent files related thereto, there is no chance that Plaintiff's movies were ever on the drive.

Defendants' purported expert's conclusion is false.  It is not true that every single deleted file was recoverable.  *See* Declaration of Patrick Paige, Exhibit A, at ¶ 4.  Indeed, there were over 1,500 files deleted that night that were overwritten by other files.  *Id.* at ¶ 5.  Those 1,500

---

[1] Plaintiff realized in composing the instant Reply that it unintentionally filed an unsigned copy of the Declaration of Patrick Paige filed at CM/ECF 76-1.  The signed copy that should have been filed previously is being filed attached to the instant Reply as Exhibit B.

files are unrecoverable. *Id.* at ¶ 6. Although the file names can be seen, there is no way to tell what the files actually contained. *Id.* at ¶ 7. Plaintiff's expert does not dispute that *of the recoverable files*, none were Plaintiff's movies or .torrent files related thereto. However, it cannot be said with any degree of certainty that Malibu Media's movies were <u>*never*</u> on the spoiled drive. *Id.* at ¶ 3.

### D.  The Purposefully Deleted Files Are Unquestionably Relevant

The deleted files are unquestionably relevant, regardless of whether or not Plaintiff's movies were among them. As stated in Plaintiff's Motion, "[t]he erased files from the spoiled hard drive correlate directly with the files listed on Plaintiff's Additional Evidence report of third party infringements." CM/ECF 130, at p. 4. The Exhibit at CM/ECF 130-1 illustrates this point. To explain, Plaintiff's investigator has evidence that BitTorrent was used from Defendants' IP address to download movies from particular niche adult websites between August 2, 2012 and January 26, 2013. When Patrick Paige investigated the spoiled hard drive, he found that movies from those same particular niche adult websites had been erased from the drive. Further, through requests for admission, Defendant N. Charles Tashiro admitted that he "used BitTorrent to download adult films posted to or produced by" those same exact websites. *See* CM/ECF 137-2 at ¶¶ 14-19. Although Federal Rule of Evidence 404 bars admission of evidence of a "wrong, or other act" when used to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" Defendant N. Charles Tashiro's use of BitTorrent to download third party works is relevant and admissible for other purposes. Fed. R. Evid. 404(b)(1). For example, Defendant's use of BitTorrent to download third party works is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at (b)(2).

Fitting all of the pieces together, Defendant N. Charles Tashiro is directly implicated in the spoliation. Defendant attempted to destroy files that link to him BitTorrent use during the relevant time frame. The erasures bear on "the defendant's consciousness of guilt." *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (*citing* 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 278 (1979), *revised by* James H. Chadbourn.)

### E. The *Davis* Case is Entirely Dissimilar From the Instant Case

Defendant repeatedly relies on *Davis v. Carmel Clay Schools*, 2013 WL 5487340 (S.D. Ind. Sept. 30, 2013). However, the facts of that case are entirely different from those at issue here. In *Davis* the spoliation issue dealt with video cameras on school buses that recorded video footage whenever the bus was in use. *Id.*, at *4. The hard drives were removable and interchangeable. And, an administrator who made a request to view particular footage could remove the drive and view the footage although records regarding the identity of the administrator requesting to review the drive were not kept. When an alleged sexual assault occurred on one of the school buses the video footage was sought although one of the hard drives had been previously removed and inserted into a different bus. "As a result of the manner in which the computer system functioned, once the hard drive from Bus # 50 was inserted in Bus # 29, all of the video files then stored on the hard drive would be automatically deleted, and, as new video was recorded, the individual deleted files began to be overwritten." *Id.* at *5. The court, relying on the Indiana Supreme Court's definition of spoliation as announced in *Cahoon*, held that spoliation sanctions were improper because there was no evidence of intentional deletion by a party with the intent to destroy evidence.

> [T]here is no evidence in the current record to support the conclusion that any employee of the School manually deleted the video files . . . in an effort to destroy evidence . . . the video files were apparently in an undeleted state when the hard drive was reinserted onto Bus # 29, at which point the files were all <u>immediately</u>

<u>and automatically deleted as a function of the computer system itself</u>. It was only once the files began to be overwritten by new video files that the material became unrecoverable.

*Id.* at *7

The *Davis* court correctly refused to hold the school liable for intentional spoliation of evidence in bad faith when it was the automatic processes of the video system that deleted the files and not an individual.  Here there was no automatic process in place to delete files.  The files resided on Defendants' hard drive and would have remained there had Defendants not deleted them.

**III.     DEFENDANTS COMMITTED PERJURY**

> **A. The Western Digital Hard Drive Was Last Used on December 22, 2013, the Night Before the Other Four (4) Hard Drives Were Turned Over to Q-Discovery For Forensic Imaging**

On May 31, 2014, the Western Digital Hard Drive which Plaintiff had previously proved existed and was withheld from discovery was finally disclosed to Plaintiff.  After months of claiming that the drive did not exist, Q-Discovery was able to make a forensic image of the drive and send it to Plaintiff's computer forensics expert, Patrick Paige.  Paige's investigation of the Western Digital Hard Drive revealed extensive evidence of BitTorrent use as well as numerous pirated software, movies, and music. *See* Exhibit A, at ¶ 10.  Significantly, the Western Digital Hard Drive was last used on December 22, 2013 although two (2) files show a last access date of 6/6/2014 – which seems to indicate that the drive was plugged into a computer on that date but no files were accessed.  *Id.* at ¶ 11.  Further, although it was used the night before, the Western Digital Hard Drive was not turned over for forensic imaging on December 23, 2013 with the other four (4) hard drives.  *Id.* at ¶ 12.

Thus, although one of the Defendants used the hard drive on the night before the other four (4) drives were delivered to Q-Discovery, Defendants chose to *<u>purposefully</u>* *<u>withhold</u>* the

Western Digital Hard Drive and tell Plaintiff and the Court that the drive did not exist.  Four hard drives were disclosed and they were imaged on December 23, 2013; the fifth was held in secret in the Tashiro's home until May 31, 2014 when, for reasons unknown to Plaintiff, Defendants finally caved and supplemented their disclosures.  In so doing, Defendants vindicated Plaintiff's expert and also proved their discovery and representations to the Court to be knowingly false.

### B.  Defendants Repeatedly Misrepresented the Number of Hard Drives in Their Home

Defendants argue that no perjury was committed because "Kelley Tashiro did not know of the drive – so she did accurately answer the discovery."  Response, p. 12.  As with the spoliation, the pieces of the puzzle simply do not align.  There is _no_ explanation for why Defendant Kelley Tashiro did not know about the missing and undisclosed Western Digital Hard Drive prior to May 31, 2014 when it was first disclosed to Plaintiff.  This is especially questionably in light of the fact that the drive was last used on the night of December 22, 2013.  Defendant Kelley Tashiro does not argue that the drive was hidden, used only in secret by her husband, or otherwise attempt to explain why its existence was previously unknown to her.  Instead, she claims merely that her husband was the "primary user" of the drive.  That Defendant N. Charles Tashiro was the one to primarily use the drive does not mean that Defendant Kelley Tashiro was completely unaware of its existence.  It certainly does not explain why the drive was hidden from Plaintiff between October 2013 and May 30, 2014.  Further, even if Defendant Kelley Tashiro was entirely unaware of the hard drive prior to April 8, 2014, when undersigned counsel first alerted defense counsel of the missing drive, there is no explanation for why a purported "dutiful investigation" by Defendant Kelley Tashiro failed to turn up the drive until nearly June.

The nondisclosure of the hard drive is made even more egregious by the numerous

representations made by defense counsel to Plaintiff and this Court.  From April 8, 2014 until May 31, 2014 Plaintiff was repeatedly fed lies and disparaging and threatening e-mails containing language such as: "I understand your client is grasping at straws"; "patently absurd nature of the accusations"; "I will be holding you to your Rule 11 obligations"; "I *strongly* suggest you inquire . . . to ensure that you meet your Rule 11 obligations"; "[i]t is not my job to provide you advice to prevent a Rule 11 violation"; "you're going down a wrong path here on bad information."  Plaintiff's Motion, pp. 5-6.  The Court was similarly misinformed that the hard drive did not exist when in truth, it was simply sitting in the Defendants' home.

Defendants' Response argues that "Kelley Tashiro didn't have to provide any explanation for her supplement . . . If Malibu wants an explanation, it should issue additional, *proper*, discovery . . . Malibu's 'gotcha' games have made any attempt by the Tashiros to work out, explain, or otherwise satiate Malibu . . . incredibly dangerous."  Response, p. 13.  Even if Defendant Kelley Tashiro was not required to explain the existence of the missing hard drive in her Fourth Supplement to Defendant's Answers to Plaintiff's Interrogatories, she is certainly required to do so now in the face of Plaintiff's Motion for Sanctions.  Yet, she has still failed to do so.  The only information provided in Defendants' Response is "[t]he explanation is simple, Kelley Tashiro did not know of, or remember, that the drive existed."  Response, p. 14.  This answer does nothing to clarify the issue.  To the contrary, it confuses it further.  Not knowing and not remembering are two different things.  Defendant Kelley Tashiro is now apparently backtracking from her previous position that she was "unaware" of the hard drive.  Now claiming that she did not remember that the hard drive existed is a completely different response.  As stated throughout, because of Defendants' numerous lies the truth is becoming harder and harder to ascertain.

### 1. Attempting to Blame Plaintiff for the Wording of the Discovery Does Not Negate Defendants' Perjury

Defendants argue that Plaintiff's interrogatory was "inartfully drafted and was objected to" and therefore because the objection stands, "Kelley Tashiro was not required to answer[,]" and "[i]t is absurd to punish her for providing some information despite the objection." Response, p. 12. Thus, Defendants claim that because the interrogatory regarding identification of Defendants' hard drives was answered subject to an objection regarding the wording, Defendant Kelley Tashiro was entitled to provide an answer that is only half true. Similar to Defendants' argument regarding spoliation, Defendants' argument, if accepted, creates bad law. Namely, so long as a party objects to the wording of an interrogatory he or she may pick and choose what information to disclose and what information to withhold and thereby provide half-truths.

Under Fed. R. Civ. P. 33(b)(1) "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which even the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." *Id.* "In responding to an interrogatory, a party must include all information within his knowledge or control . . . the duty to fully answer implies a duty to make reasonable efforts to obtain information within the knowledge and possession of others." *Hanley v. Como Inn, Inc.*, 2003 WL 1989607, at *4 (N.D. Ill. 2003). The practice of objecting and furnishing an answer "results in an ambiguous response, since it cannot be determined whether the responding party has supplied a full and complete answer in spite of the objection, or a partial or incomplete answer in reliance upon the objection." *Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind. 1992).

Notwithstanding the objection to Plaintiff's interrogatory, Defendant chose to answer.

As such, she had a duty to answer truthfully and fully based upon all information within her knowledge.  She was also obligated to make "reasonable efforts to obtain information within the knowledge and possession of others," here, her husband.  Defendant clearly breached her duty under the Federal Rules by failing to provide a complete answer despite having plenty of time to obtain the necessary information to do so.

### C. New Evidence Has Come to Light Proving Defendant N. Charles Tashiro Committed Perjury

Defendant N. Charles Tashiro is directly implicated in BitTorrnet use during the time frame in which Plaintiff's movies were infringed, 2012 - 2013.  Plaintiff's Additional Evidence contains downloads from specific niche adult websites and Defendant admitted he used BitTorrent to download adult films posted to or produced by those exact sites.  Thus, Defendant lied during his deposition since Defendant specifically testified that he had never used BitTorrent to download anything besides music.

**Q:** Besides music, did you ever use BitTorrent for any other media?

**A:** It took a long time so I would say no.  I don't recall.

**Q:** Did you ever download any movies using - -

**A:** No, no.

**Q:** BitTorrent was used just for music?

**A:** Yes.

*See* Deposition of N. Charles Tashiro ("Charles"), p. 27:6-13.  Defendant's responses to Plaintiff's requests for admission, prove the deposition testimony to be false since Defendant now admits that he used BitTorrent to download adult content movies.  *See* CM/ECF 137-2 at ¶¶ 14-19.

Additionally, Defendant testified that he stopped using BitTorrent in 2010 or 2011.  *See*

Charles, p. 27:14-17.  Defendant's deposition testimony is significantly undermined, however, by the fact that Plaintiff's Additional Evidence contains the exact niche adult content which Defendant admits he downloaded through BitTorrent.  And, the Additional Evidence spans from 2012 to 2013.  Thus, all of the evidence compels the conclusion that Defendant also lied about when the last time he used BitTorrent was.

IV.    **A DEFAULT JUDGMENT IS WARRANTED BECAUSE OF THE GRAVITY OF THE SPOLIATION AND PERJURY**

Plaintiff provided the court with numerous cases that found default judgment to be the appropriate remedy for spoliation of evidence by a defendant in online copyright infringement cases.  *See* Plaintiff's Motion, p. 11.  Attempts to delete files from hard drives in cases where the hard drives are at the heart of the litigation simply cannot be tolerated.  The sanction, although serious, is especially warranted where spoliation is coupled with further bad acts such as perjury, as in this case.  Plaintiff has demonstrated clear unequivocal perjury by the Defendants and is confident that as the litigation progresses more lies are likely to be uncovered.  As such, fact and fiction will become harder and harder to separate.  There is no reason to afford Defendants any further opportunities to disrespect the Court, Plaintiff, and the judicial system by continuing to attempting to defraud all of the foregoing through willful deceit.  As such, default judgment in Plaintiff's favor should be granted.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant the subject Motion.

DATED: July 23, 2014.

Respectfully submitted,

NICOLETTI LAW, PLC

By:    /s/ *Paul J. Nicoletti*
           Paul J. Nicoletti, Esq. (P-44419)
           33717 Woodward Ave, #433
           Birmingham, MI 48009
           Tel:  (248) 203-7800
           E-Fax: (248) 928-7051
           Email:  pauljnicoletti@gmail.com
           *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:    /s/ *Paul J. Nicoletti*

16