IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>KELLEY TASHIRO and N. CHARLES TASHIRO<br><br>Defendants | Case No. 1:13-cv-00205-WTL-MJD<br><br>Hon. Mark J. Dinsmore |
|---|---|

**RESPONSE IN OPPOSITION TO:
PLAIINTIFF'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE PROFFERED BY DELVAN NEVILLE (ECF DOC 142)**

KELLEY TASHIRO and N. CHARLES TASHIRO ("Defendants"), through undersigned counsel, respond in opposition to the Plaintiff's Motion *In Limine* to Exclude Testimony and Evidence Proffered by Delvan Neville (ECF Doc. 142) (the "Motion"), stating as follows:

**I.  Introduction**

Malibu Media, LLC brings this Motion, after months of sitting on the Expert Witness List & Report, Mr. Neville's Declaration, and Mr. Neville's Curriculum Vitae, as part of its iterative, serial, litigation technique, which wastes the time of this Court,[1] and all case participants. At the same time, Malibu has never attempted to depose Mr. Neville, it has refused to provide an address to ship the waiting forensic copies that Mr. Neville utilized, and never, in any manner, attempted to prepare for a cross examination of Mr. Neville. Because of that, Malibu speculates, selectively reads documents, and ignores Mr. Neville's qualifications. The fact of the matter is that Mr. Neville is qualified as an expert under Rule 702, and the jury should hear from him. If Malibu wants to

---

[1] For one of many examples of this technique, just hours ago, Malibu filed a Motion for Leave to Supplement a Motion for Sanctions which concerns matters wholly unrelated to the original motion, will further complicate the Motion for Sanctions, confound issues, and involves individuals that were not even parties at the time the original Motion for Sanctions was filed.
[2] Although, it is curious that Malibu has sat on the declaration and CV of Mr. Neville for months, and only upon

1


challenge his findings, it can do so through vigorous cross-examination and proffering rebuttal evidence from its putative expert.

## II. Governing Law

This Court's role as gatekeeper should not usurp the role of the adversary system. Fed. R. Evid. 702 (noting that the exclusion of testimony is the exception, not the rule), *citing, United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi,* 80 F.3d 1074, 1078 (5th Cir. 1996). Indeed, vigorous cross-examination, evidence rebutting findings, and instruction on burden of proof are the proper methods to attack evidence. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 595 (1993). Rule 702 governs the introduction of opinion testimony from certain witnesses. It provides that once a witness is "qualified as an expert by knowledge, skill, experience, training, or education," that person may testify in the form of an opinion. Fed. R. Evid. 702. "The rule is broadly phrased" and the types of knowledge which may be drawn upon are not limited to the "'scientific' and 'technical' but extend to all 'specialized' knowledge." Fed. R. Evid. 702, Notes of Adv. Comm. In fact, nothing suggests that experience alone is insufficient. *Id.*, Notes of Adv. Comm. on 2000 Amendments, *see also, Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690, 699 (5th Cir. 1975). Indeed, personal experience and opinion may be sufficient to qualify an expert, so long as there is specialized knowledge backing up the same. *Littleton Gas Co. v. United States Dept. of Energy*, 300 F.Supp. 21, 31 (D.D.C. 2003). Determining whether or not an expert is qualified can only be determined by comparing the area of his or her superior knowledge, skill, and experience to the subject matter of testimony. *Shirley Carroll v. Otis Elevator Company,* 896 F.2d 210, 212 (7th Cir. 1990).

Rule 702 expressly assumes the admission of testimony whose knowledge is gained from experience. *Trustees of the Chi. Painters & Decorators Pension, Health & Welfare, and Deferred Savings Plan Trust v. Royal Int'l Drywall & Decorating, Inc.,* 493 F.3d, 782, 787 (7th Cir. 2007). A

proposed expert should not be required to satisfy an overly narrow test of his own qualifications. *United States v. Barker,* 553 F.2d 1013, 1024 (6th Cir. 1977). He or she does not even need a certificate. *Id.* Nor does he or she need to be the member of any relevant professional organization. *Id.* Finally, he or she doesn't even need to be exceptional in the field. *Id.* Further, qualifications are relative. *Estate of Gilliam v. City of Prattville*, 667 F. Supp. 2d 1276, 1297-98 (M.D. Ala. 2009). They are more, or less, useful depending on familiarity with the matters at issue. *Id.* Practical experience, not just formal methods of gaining knowledge, qualifies a witness. *Atkinson v. General Research of Elecs.,* 24 F.Supp. 894, 898 (N.D. Ill. 1998). Just because two experts disagree on certain items does not mean that this Court should exclude testimony because it believes one version over the other. Fed. R. Evid. 702, Notes of Adv. Comm. on 2000 Amendments.

Many of the foregoing authorities indicate that exclusion should not take place, but, instead, any issues that a party takes with an expert should go to the weight of the testimony, and should be discounted – if possible – through cross-examination and appropriate argument. *See, e.g., Atkinson v. General Research of Elecs.,* 24 F.Supp. 894, 898-99 (N.D. Ill. 1998) (finding that previous practical experience in the Navy, coupled with "continued work in computers . . . readily suffice[d] for the kinds of opinions in his report," wherein those opinions concerned software, not technical background in radios.)

**III. Argument**

    1.    <u>The only opinions concern whether or not files were on a hard drive</u>

First, and foremost, it is important to consider what opinions that Mr. Neville will testify to. As outlined in the Defendants Expert Witness List and Report, Mr. Neville was identified for the purpose of reviewing of the hard drives in the Tashiro household, all opinions derived therefrom, including, but not limited to, the fact that no Malibu Media, LLC works are on the drives in the

3

Tashiro household and all other opinions in his declaration/report. Exh. A, *Deft's Expert Witness List & Report,* p. 1 (served Mar. 28, 2014). Mr. Neville's declaration consisted of five pages of information, including his methodology and his analysis of the same using recognized software for that purpose. Exh. A, pp. 3-7, *Decl. of Delvan Neville*. No one has asserted that Mr. Neville's methodology is unsound. Mr. Neville goes on to explain, in detail, the background of the NTFS file system and how it handles file deletions. *Id.*, ¶¶ 7 – 13. Demonstrating a great deal of proficiency in this field, he has laid out the file deletion process in an NTFS drive with greater specificity than even Malibu's putative expert witness does. Mr. Neville the explains what various searches were done, including for Malibu files, all torrent files, any new writes that occurred, and any modifications that had taken place since the deletion event. Exh. B, *Decl. of Delvan Neville,* ¶ 14-17. Further, Mr. Neville explains how he made any deleted files searchable, and his methodology for confirming that none of the files were Malibu files. *Id.* ¶¶ 18-24. All of the foregoing are simply facts and methodology employed to support opinions, not opinions themselves. Thus it is important to narrow down what the opinions actually are.

In the end, Mr. Neville can only be asserted to make a single type of – whether or not Malibu Media LLC works, or related .torrent files, existed on the hard drive. The Motion seems to admit this by only discussing this fact. Motion, pp. 7-8. Even when grasping at straws for anything that might be construed as an opinion, only a few items could be considered: (i) he concurs, in part, with Mr. Paige that a deletion occurred (*Id.,* ¶ 5); (ii) he dissents from Mr. Paige's assertion that Malibu files *could have* been on the drive (*Id.,* ¶ 6); (iii) that, even with a deletion event, through "a thorough examination of the MFT and the serendipity that no users created or modified files following that deletion" all files were still accessible; and (iv) no Malibu works or .torrent files associated with them were *ever present* on the hard drive (*Id.,* ¶ 24). Thus, the sole question

before this Court is whether or not Mr. Neville is qualified to opine whether certain files existed or were recoverable.  He most certainly is.

    2.    <u>Mr. Neville is a qualified expert in the field of finding and recovering files</u>

The Seventh Circuit has dictated that the only way to determine whether or not Mr. Neville is qualified as an expert is by comparing the area of his superior knowledge, skill, and experience to the subject matter of his testimony.  *Shirley Carroll,* 896 F.2d at 212 (finding an experimental psychologist to be qualified to opine as to reasons a child might push a button while recognizing the "liberal federal standard).  Thus, Malibu's comparison to their own putative expert[2] are not well taken, and irrelevant.  This Court should only consider whether or not Mr. Neville's superior knowledge, skill, and experience relates to opining on whether certain files existed or were recoverable.  The question of whether or not Mr. Neville's:

- ten to fifteen years of practical experience in finding and recovering files;
- skills in using at least two forensic toolkit software suites;
- certification by one leading forensic software maker that he is competent in its use;
- extensive and uncontroverted discussion of the NTFS file system;
- extensive and uncontroverted methodology employed; and
- and running a company dedicated to finding copyrighted materials on hard drives

relates to the opinion that Malibu Media works, or related torrent files, were not on the hard drives must be answered in the affirmative.  Accordingly, he is qualified to provide such an opinion under Rule 702.

Mr. Neville's declaration shows that he is AccessData Certified and that he used AccessData FTK Imager to make forensically sound copies of the drives reviewed.  Exh. B, ¶¶ 2, 3.

---

[2] Although, it is curious that Malibu has sat on the declaration and CV of Mr. Neville for months, and only upon insistence of discovery concerning Mr. Paige's arrest for drug possession and subsequent (related or not) termination of employment with his Sheriff's Department in Palm Beach County does Malibu bring this Motion.

No one has disputed that AccessData is a provider of industry recognized forensic toolkits[3] for computer forensics. Indeed, it is a competitor to that toolkit utilized by Mr. Paige. Accordingly, it should go uncontroverted that the very makers of industry recognized forensic toolkits Mr. Neville believe that he is fit to use it. While certificates are not required to be qualified as an expert, Mr. Neville obtained one an eminently important one showing he is competent to use an industry recognized forensic investigations toolkit. *Barker,* 553 F.2d at 1024. Further, AccessData provides course materials and instructive videos regarding the same.[4] Indeed, Mr. Neville will have to maintain his competency in using this toolkit, as he has to be re-certified every two years. Indeed, neither Malibu, nor its expert, has pointed to a single issue with Mr. Neville's methodology, which he explained in detail. *See, United States v. Stanley,* 533 Fed. Appx. 325, 327 (4th Cir. 2013) (discussing *only* the methodology utilized when determining that a witness was qualified to opine as to the existence of child pornography files downloaded with a peer-to-peer file sharing system). It is respectfully submitted that Malibu has failed to do so, because it knows that the report is valid, and a deposition of Mr. Neville, or evidentiary hearing (which it has not sought), will simply bolster Mr. Neville's credibility.

AccessData's endorsement of Mr. Neville, by way of certifying him as competent to utilize its software to engage in forensic investigations, is bolstered by Mr. Neville's declaration that he has spent a decade to decade-and-a-half, gaining practical knowledge and experience in computer work requiring the recovery of lost data from storage devices. *Id.* ¶ 2. That is, finding files and recovering files. This is the exact practical experience that the Rules call for as qualifying an individual as an expert. *Atkinson v. General Research of Elecs.,* 24 F.Supp. 894, 898-99 (N.D. Ill.

---

[3] See, e.g., *2014 SC Awards Finalists, Best Computer Forensic Solution,* SC Magazine (Nov. 7, 2013), *available at*, http://www.scmagazine.com/2014-sc-awards-us-finalists/article/319868/ (indicating that Access Data is a leading provider, and finalist, regarding providing forensic computer software).

[4] Malibu does not allege that Mr. Neville did not avail himself of any of these more "formal" methods of gaining knowledge for himself. Nor has Malibu taken the time to depose Mr. Neville to determine the actual extent of more "formal" methods of gaining knowledge.

1998) (finding that previous practical experience in the Navy, coupled with "continued work in computers . . . readily suffice[d] for the kinds of opinions in his report," even though those opinions concerned software, not technical background in radios). Further, Mr. Neville's *curriculum vitae*[5] provides even more background on his practical experience.

Mr. Neville runs a company that on one hand monitors BitTorrent swarms and, on the other, engages in hard drive analysis "centered on finding materials related to copyright infringement of specific works" – the very opinions that he is expected to provide. *Curriculum Vitae of Delvan Neville,* Exh. A, p. 8. Even his education involves electronics and software development, even if tangentially, along with familiarity with numerous programming languages. *Id.* Further, he provides that he is skilled with both FTK5 (Forensic Toolkit 5) and OSForensics (another forensic evidence extracting software package). *Id.* With Mr. Neville incontrovertibly qualified to opine as to whether or not certain files exist, or existed, on computer hard drives (the only opinions he will make), it is important to note that his demonstrated knowledge of the BitTorrent protocol makes him eminently appropriate for qualification as an expert on the finding of computer files, deleted or not, when some of the files sought are *.torrent files.

It is evident, then, that years of practical experience in professionally finding and recovering files; skills with two forensic toolkits; certification by the maker of a leading computer forensics toolkit; demonstrated, uncontroverted, knowledge through declaration; and uncontroverted methodology all relate to opining that no Malibu Media files, or related .torrent files, were ever on a hard drive. Accordingly, he is qualified to provide such an opinion under Rule 702.

---

[5] Strangely, Malibu points to a lack of explanation of *all* course work and training in the field of computer forensics in Mr. Neville's CV. This kind of information is not typically included in a curriculum vitae, which is a "short account" of qualifications. *Curriculum vitae*, Merriam-Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/curriculum%20vitae. It appears that Malibu is trying to make a mountain of a molehill rather than depose Mr. Neville to determine his qualifications.

### 3. There is no actual attack on the reliability of Neville's conclusion

Simply asserting that a conclusion is not reliable in a heading is not sufficient to bar evidence. Motion, p. 7. Of course, the seminal *Daubert* case stated as much. *Daubert,* 509 U.S. at 595 ("focus, of course, must be solely on principles and methodology, not on the conclusions they generate."). Malibu's expert and Mr. Neville disagree.[6] That's fine, experts in cases routinely disagree, or else there would not be nearly as many trials with their testimony. Just because two experts disagree on certain items does not allow this Court should exclude testimony because it believes one version over the other. Fed. R. Evid. 702, Notes of Adv. Comm. on 2000 Amendments. However, nowhere in the two paragraphs that are under the heading of "not reliable" does Malibu actually attack Mr. Neville's methodology. Motion, p. 7-8. Instead, it just reiterates that Mr. Neville is not an expert, and apparently requires this Court to make the logical leap that the methodology, then, must be unreliable. Rather than provide another point for its argument, Malibu's inability to point out anything Mr. Neville did wrong goes to show that he is certainly qualified as an expert by knowledge, skill, experience, training, or education." Motion, p. 7.

### 4. Malibu can attack the weight of Mr. Neville's testimony in legitimate manners

The motion *in limine* isn't the proper place for Malibu to try to attack Mr. Neville's testimony, even if it had filed the motion in a timely manner, rather than in the middle of briefing a Motion for Sanctions in a serial, iterative, fashion. Courts have repeatedly held that even if such testimony is "shaky" it should be admitted. *Daubert v.,* 509 U.S. at 595. If Malibu takes issue with Mr. Neville's qualifications, it can vigorously cross-examine him, carefully instruct the jury, and

---

[6] Defendant's counsel certainly intends to depose Mr. Paige, and vigorously cross examine him on his apparent half-hearted efforts and failure to even investigate the free space on the Tashiro harddrives, as well as his credibility as an expert considering his arrest, internal affairs reporting, personnel file, and immediate termination of employment with the Sheriff's Department and EnCase. There is no reason that Malibu cannot do the same.

8

argue its points to the jury. *Id.* It may have a difficult time doing so, considering it has, to date, failed to depose him or review the offered forensically sound copies of drives (at no cost to Malibu) utilized by Mr. Neville. Further, this Court should not upend the adversarial process and deny the jury the right to assess credibility. Fed. R. Evid. 702, *citing, United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi,* 80 F.3d 1074, 1078 (5th Cir. 1996).

This Court should, at a minimum, conduct an evidentiary hearing on Mr. Neville's qualifications, so that it and Malibu, can be fully satisfied that he is a qualified expert on seeking out files that may have been stored on harddrives. *See, e.g. United States v Flocker,* 2012 US App LEXIS 22720 (9th Cir. 2012) (holding an evidentiary hearing regarding qualifications of a computer expert prior to determining Rule 702 requirements were satisfied).

### IV. Conclusion

Mr. Neville has more than sufficient practical experience, skill, and knowledge to opine whether or not certain files existed on some hard drives. For that, and the foregoing reasons, Malibu's Motion should be denied.

Respectfully submitted,

/s/ Jonathan LA Phillips
One of the Defendants attorneys
Shay Phillips, Ltd.
456 Fulton St. | Ste. 255
Peoria, IL 61602
309.494.6155 | jphillips@skplaywers.com
IL ARDC No. 6302752

### CERTIFICATE OF SERVICE

I certify that on September 2, 2014, a copy of the foregoing has been filed with the Clerk of the Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Jonathan LA Phillips

9