UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:13-cv-00205-WTL-MJD |
| ) | |
| KELLEY TASHIRO, ) | |
| N. CHARLES TASHIRO, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY AND EVIDENCE PROFFERED BY DELVAN NEVILLE**

This matter comes before the Court on Plaintiff's Motion *in Limine* to Exclude Testimony and Evidence Proffered by Delvan Neville. [Dkt. 142.] For the reasons set forth below, the Court **DENIES** Plaintiff's motion.

### I.  Background

Malibu Media, LLC ("Plaintiff") filed suit against Kelley and N. Charles Tashiro, ("Defendants"), alleging infringement of Plaintiff's copyrighted movies. [Dkt. 124 at 1.] Plaintiff claims that Defendants used a BitTorrent client to copy and distribute Plaintiff's works, including those related to Plaintiff's X-Art website. [*Id.* at 6-7.]

On June 20, 2014, Plaintiff filed a motion for sanctions against Defendants for alleged destruction of evidence and perjury. [Dkt. 130 at 1.] Plaintiff claims that Defendants erased numerous files from one of their computer hard drives, including files related to BitTorrent usage and files similar to Plaintiff's copyrighted movies. [*Id.* at 3-4.]

In responding to this motion, Defendants included a declaration from Delvan Neville. [Dkt. 137-1.] Neville stated that he is the owner of "Amaragh Associates, LLC, a digital

1

forensics company specialized in BitTorrent investigation," and that he was "engaged in freelance computer repair and troubleshooting since the late 1990s, including recovering lost data from storage devices." [*Id.* ¶ 2.] Neville provided background on the process of electronic file deletion and explained that he had examined the hard drive at issue. [*Id.* ¶¶ 2-23.] He agreed that files had been deleted from the hard drive, but stated that he recovered the deleted files, searched them, and found no evidence that the deleted files contained Plaintiff's copyrighted works. [*Id.* ¶¶ 22-24.]

On March 28, 2014, Defendants served on Plaintiff their Expert Witness List and Report, identifying "Delvan Neville for the purpose of: his review of the hard drives in the Tashiro household, and all opinions derived therefrom, including, but not limited to, the fact that no Malibu Media, LLC works are on the hard drives in the Tashiro household." [Dkt. 153-1.] Neville's attached report included a copy of the declaration previously executed in response to the motion for sanctions, [*id.* at 3-7], and a copy of Neville's curriculum vitae, including his employment, degrees, publications, previous testimony, and presentations. [*Id.* at 8-12.]

On August 8, 2014, Plaintiff filed the current motion to exclude any testimony or evidence offered by Mr. Neville. [Dkt. 142.] Plaintiff claims Neville should not be allowed to testify as proposed in his expert report because 1) he "has no knowledge, skill, experience, training or education in computer forensics," [*id.* at 1], and 2) Neville's conclusions are not reliable. [*Id.* at 7.]

## II. Discussion

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. They establish "a three-step analysis: the witness must be qualified as an expert by knowledge, skill, experience, training, or education; the

2

expert's reasoning or methodology underlying the testimony must be scientifically reliable; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (citations omitted). "[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments); *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

### 1. Qualification As an Expert

A witness may be qualified to testify as an expert based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The witness's qualifications must relate to his testimony: "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator*, 896 F.2d 210, 212 (7th Cir. 1990).

Neville plans to testify about his examination of the Defendants' hard drive and whether any files related to Malibu Media's copyrighted works were found after his recovery of the deleted files. [*See* Dkt. 153-1, 5.] The question is thus whether his knowledge, skill, experience, training, or education qualify him to opine on recovery and analysis of deleted files. *Carroll*, 896, F.2d at 212; *see also Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir.1994)) ("The question we must ask is not whether an

expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'")

The Court agrees with Plaintiff that Neville's "education" does not qualify him to testify as an expert about recovery of deleted files. Neville received a B.S. in Radiation Health Physics from Oregon State University and is pursuing a Ph.D. in the same field. [Dkt. 153-1 at 8.] He states that this frequently involves "projects revolving around electronics & software development," [*id.*], but this vague assertion that he uses computers does not establish any familiarity or expertise in the field of data recovery in particular.

From there, however, Plaintiff's argument breaks down. Plaintiff asserts that Neville has no "training" that would qualify him as an expert in computer forensics. [Dkt. 142 at 5.] Neville's curriculum vitae, however, shows that he is an "AccessData Certified Examiner (ACE)." [*Id.*] As Defendants explain, AccessData is a "provider of industry recognized forensic toolkits for computer forensics," [Dkt. 153 at 6], such that Neville's familiarity with the program helps establish his qualifications in the field of data recovery.

Plaintiff disputes the value of the ACE certification because becoming ACE certified requires only passing "a single ninety (90) minute open-book exam consisting of forty (40) questions total." [Dkt. 142 at 6.] However, Plaintiff itself notes that an expert's qualification need not be "formal," [*see id.* at 5], and the Court is mindful that it should consider the "full range" of the expert's qualifications. *See Smith*, 215 F.3d at 718. Thus, even if ACE certification is not itself sufficient to qualify Neville as an expert, it is a factor that weighs in his favor.

Plaintiff also faults Neville's ACE certification because it applies only to the specific AccessData program; it does not make an individual an expert in the general field of computer forensics. [Dkt. 142 at 6.] AccessData, however, is the same program that Neville used "to make

4

forensically sound copies of the drives" he reviewed. [Dkt. 153 at 5.] As Plaintiff itself argues, the Court should "compare the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." [Dkt. 142 at 3 (quoting *Traharne v. Wayne Scott Fetzer Co.*, 156 F. Supp. 2d 717, 720 (N.D. Ill. 2001).] The specificity of the ACE certification therefore works to Neville's advantage: Neville has been certified in using the *very same program* he used to conduct his review of the Tashiro hard drive, such that his area of superior qualifications properly relates to the subject matter of his proposed testimony.

Plaintiff also argues that Neville has "no knowledge, skill or experience in computer forensics." [Dkt. 142 at 3.] Neville's curriculum vitae, however, includes "FTK5" and "OSForensics" among Neville's "Technical Skills." [Dkt. 153-1 at 8.] These programs are "forensic evidence extracting software package[s]," [Dkt. 153 at 7], contravening Plaintiff's assertion that Neville has no "skill" in the field of computer forensics.

Additionally, Neville stated in his declaration that he has "engaged in freelance computer repair and troubleshooting since the late 1990s, including recovering lost data from storage devices." [Dkt. 153-1 ¶ 2.] Because a court "should consider a proposed expert's full range of practical experience," *Smith*, 215 F.3d at 718, Neville's years of experience in finding and recovering files is strong evidence that he is qualified as an expert in this area. Furthermore, Neville's proposed testimony relates directly to the lost files recovered from the Tashiro hard drive. His experience "finding and recovering files," [Dkt. 153 at 5], thus accords with the subject matter of his testimony, such that he will be offering opinions within his area of superior qualifications.

Plaintiff finally contends that Neville's qualifications are insufficient because they lack specifics: Neville, for instance, does not state "how many forensic investigations of computers" he has performed, does not explain how his company operates, and does not identify or state how many clients it serves. [Dkt. 142 at 5.] Plaintiff correctly notes that the burden is on the expert's proponent to establish the expert's qualification, [*id.* at 2 (quoting Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments)], but Defendants have carried this burden: Neville and Defendants have represented to the Court that, as described above, Neville has training, skills, and experience that establish his qualifications in the field of data recovery. Neville's qualifications admittedly lack specifics, but the Court will accept these representations in the absence of evidence to the contrary. *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person' s knowledge . . . the factual contentions have evidentiary support.").

The Court also observes that Plaintiff has not deposed Neville, [Dkt. 153 at 1], and has thus foregone the sort of discovery that might allow it to rebut Defendants' contentions. If Plaintiff had deposed Neville, it might already know exactly how many forensic investigations Neville has conducted or exactly how his company operates. With that information in hand, Plaintiff could have presented briefs that undercut Neville's qualifications. As it is, however, Plaintiff's briefs are largely speculative: Plaintiff may fault Neville for "conclusory and general statements" about his qualifications, but Plaintiff's speculation that Neville may not have conducted many past forensic investigations is hardly more persuasive. The Court thus finds that Defendants have satisfied their burden to establish that Neville is an expert.

## 2. Reliability of Neville's Conclusions

An expert's "reasoning or methodology underlying the testimony must be scientifically reliable." *Ervin*, 492 F.3d at 904. Plaintiff argues that the conclusion Neville reaches "is unreliable and should be accorded no consideration." [Dkt. 142 at 7.] Plaintiff's main contention is that Neville's conclusion is unreliable because Neville is not qualified as an expert. [*Id.*] As described above however, the Court finds that Neville is in fact qualified, undermining the force of this argument.

Next, Plaintiff's opening brief does not challenge the reliability of the method Neville employed in examining the Tashiro hard drive. [*See* Dkt. 142.] Given Neville's above-described qualifications, his detailed account of the methodology he employed [*see* Dkt. 153-1], and Plaintiff's failure to argue this point, the Court sees no basis for deeming Neville's conclusion unreliable.

In its reply brief, Plaintiff attacks Neville's methodology for the first time. Plaintiff asserts that its own expert, Patrick Paige, examined one of the Tashio hard drives and determined that Neville "altered" the drive because Neville "plugged the drive in without using a write blocker." [Dkt. 154 at 6.] In doing so, Neville allegedly "violated one of the most basic tenants of forensic examinations." [*Id.*]

This argument is problematic for multiple reasons. First, Plaintiff raises this argument for the first time in its reply brief. Such arguments are generally waived. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). Plaintiff asserts that it was not aware of Neville's alleged mistake at the time it filed its opening brief. [Dkt. 154 at 5.] Regardless, raising the issue for the first time in reply still deprives Defendants of the chance to respond and leaves the Court hesitant

7

to address Plaintiff's argument. *See id.* ("The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues.").

Second, the merits of Plaintiff's argument are unavailing. Paige's statements about the use of a write-blocker apply to a hard drive that Neville examined on June 6, 2014. [Dkt. 154 at 6.] The declaration in Neville's expert report, however, describes his examination of a hard drive in March of 2014. [Dkt. 153-1 at 7.] Thus, even if the examination in June did violate a "basic tenant" of forensic examination, this says little about the reliability of the earlier examination included in Neville's expert report. Indeed, in the declaration describing that examination, Neville specifically stated that he used a "Wiebetech Forensic UltraDock v5 write-blocker" when examining the hard drive. [*Id.* ¶ 2.] Neville's examination thus complied with the practice of using a write-blocker, undercutting Plaintiff's argument that Neville's failure to use a write-blocker renders his methodology unreliable.

Finally, even if Neville did make a mistake, this would not necessarily render his methodology unreliable. "[A]lleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate findings; however, mistakes and miscalculations are not grounds for excluding evidence." *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F. Supp. 2d 908, 935 (W.D. Wis. 2007) (citing *Daubert*, 509 U.S. at 596); *see also Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014) ("After all, even experts make mistakes, and imperfections in their presentations are supposed to be tested by opposing counsel and put before the jury."). Thus, the court in *Southwire* admitted the proposed expert's testimony when the opposing party "allege[d] that mistakes were made in implementing the experts' chosen methods," but did "not challenge the methods employed by plaintiffs' experts." *Southwire*, 528 F. Supp. 2d. at 935.

8

This case presents the same situation: Plaintiff's reply brief suggests Neville may have made a mistake in his examination of one of the Tashiro hard drives, but Plaintiff does not challenge the general procedure by which Neville recovered and reviewed the deleted files. [*See* Dkt. 154 at 5-6.] The Court thus concludes that Neville's methodology was reliable enough that his testimony is admissible. Plaintiff will have the opportunity to challenge Neville's testimony at trial and can expose any deficiencies in the testimony at that time. *See Daubert*, 509 U.S. at 596. ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### 3. Helpfulness

The final step in determining the admissibility of expert testimony is assessing whether the testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904. Plaintiff does not dispute the helpfulness of Neville's testimony. [*See* Dkts. 142 & 154.] Also, it is plain that Neville's conclusion that none of Plaintiff's copyrighted works were among the files deleted from the Tashiro hard drive, [Dkt. 153-1 ¶ 24], will help the jury determine whether Defendants infringed Plaintiff's copyrights. Neville's testimony therefore satisfies the last prerequisite for admissibility, and the Court will deny Plaintiff's motion to exclude.

### III.   Conclusion

For the reasons stated above, the Court **DENIES** Plaintiff's Motion *in Limine* to Exclude Testimony and Evidence Proffered by Delvan Neville. [Dkt. 142.]

Dated:  11/19/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

9

Distribution:

Paul J. Nicoletti
NICOLETTI LAW, PLC
paul@nicoletti-associates.com

Jonathan LA Phillips
SHAY KEPPLE PHILLIPS, LTD
jphillips@skplawyers.com