**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

-----------------------------------------------------------------X

MALIBU MEDIA, LLC,

                                                Civil No. 1:13-cv-00205-WTL-MJD

                    Plaintiff,

        vs.

KELLEY TASHIRO and N. CHARLES TASHIRO,

                  Defendants.

-----------------------------------------------------------------X

### PLAINTIFF'S MOTION FOR ENTITLEMENT TO FEES AND SANCTIONS

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 16 and 37, 28 U.S.C. § 1927, and this Court's inherent authority, moves for entry of an order against Defendant Charles Tashiro ("Charles") and Attorney Jonathan LA Phillips, Esq. ("Phillips"), holding them jointly and severally liable for costs and fees in an amount to be later ascertained. In support thereof, Plaintiff states as follows.

### I.      PRELIMINARY STATEMENTS & FACTUAL BACKGROUND

#### A.      Phillips acquiesces to and facilitates his clients' pervasive and ongoing discovery violations

Plaintiff commenced this copyright infringement action on February 11, 2013 [CM/ECF 1]. At all pertinent times, Phillips, who filed an appearance in this case on May 20, 2013, has appeared as counsel of record for both Defendants Kelley Tashiro ("Kelley") and Charles (together, "Defendants"), who were named as parties on April 8, 2013 and May 15, 2014, respectively [CM/ECF 13 & 124]. Back in September of 2013, Plaintiff served Kelley with

1

discovery requests. Phillips failed to timely respond to these requests, and represented to Plaintiff that his client's discovery responses were late because his client was trying to ensure that her responses were "100% accurate," a claim that would later prove to be 100% *in*accurate [CM/ECF 130-3 at p.1]. After receiving Kelley's belated discovery responses and production, undersigned believed that material evidence was being withheld, an allegation that Kelley and Phillips vehemently and repeatedly denied. After several months of analysis, Plaintiff came upon proof that substantiated its suspicion and indicated that Kelley was indeed improperly withholding a Western Digital hard drive. On April 8, 2014, undersigned emailed Phillips to specifically ask about the missing drive, going so far as to identify the device by serial number so as to eliminate any doubt or confusion [CM/ECF 130-3 at p. 3]. Just two hours later, Phillips responded to this email, accusing Plaintiff of "grasping at straws" and erroneously insisting and warranting that there had been "no failure to disclose" and that he had "listed all devices in the home or used" [CM/ECF 130-3 at p. 5]. The following day, Phillips sent an unsolicited follow-up email, reaffirming and verifying that no undisclosed evidence existed [CM/ECF 130-3 at p. 7]. In this email, Phillips also threatened to file Rule 11 sanctions against undersigned should Plaintiff continue to ask about undisclosed evidence, an inquiry that Phillips characterized as "patently absurd." *Id.*

Undersigned responded by setting forth the factual basis for believing evidence was being withheld. Although Phillips was thus put on notice that there was a reasonable probability that Kelley was withholding material evidence, Phillips wholly failed to take the necessary steps to ensure that justice was achieved. Instead, in contravention of his ethical obligations and duty of candor, Phillips definitively asserted that not only did his client not have physical possession of any Western Digital hard drive, but that no such drive (or any other undisclosed computer

device) ever existed [CM/ECF 130-3 at p. 13]. In this email, Phillips again threatened Rule 11 sanctions, twice. *See id.* A discovery conference was subsequently held before the Court on April 21, 2014, at which time Phillips again represented to the Court that he conferred with Kelley, who, with the assistance of Charles (her husband of over 20 years), performed an exhaustive and good faith search for the Western Digital hard drive alleged to be missing and determined that same absolutely did <u>not</u> exist and that <u>no</u> discoverable evidence was being withheld. Given its proof to the contrary, Plaintiff continued to expend its time, money, and resources investigating the whereabouts and existence of the Western Digital hard drive, unconvinced by Phillips's and Kelley's repeated denials and undaunted by Phillips's repeated threats of sanctions.

Several weeks later, Phillips casually emailed undersigned to indicate that a Western Digital hard drive <u>did</u> exist and <u>had</u> been improperly withheld for the preceding nine months. Again, this is the precise hard drive that Plaintiff had repeatedly asked about, the existence of which Phillips and his client *repeatedly* denied and for which Phillips had, on at least three occasions, threatened to seek sanctions. On this basis, and because Plaintiff had reason to believe that a number of other blatant discovery violations were afoot, Plaintiff filed a motion for sanctions against Defendants on or about June 20, 2014, citing Defendants' spoliation of evidence and perjury [CM/ECF 130].[1] Plaintiff's motion was referred to Judge Dinsmore for the issuance of proposed findings and recommendations, and an evidentiary hearing was scheduled for January 22, 2015 [CM/ECF 162].

---

[1] Plaintiff later supplemented its motion when even *further* and *additional* evidence of perjury and willful withholding of material evidence came to light [CM/ECF 159].

**B.** **Phillips assumes dual representation of both Kelley and Charles, and, *despite a crystal clear conflict of interest*, reschedules the sanctions hearing for January 29, 2015, representing that both his clients would be prepared to testify and proceed on that date**

On May 15, 2014, Plaintiff amended its complaint to formally name as an additional defendant Kelley's husband Charles (who, obviously, had been aware of these proceedings all along) [CM/ECF 124]. When Phillips advised undersigned that he would accept service on Charles's behalf, undersigned directly asked Phillips whether he might have a potential conflict of interest in simultaneously representing both Kelley and Charles. Although Phillips was independently on notice that Plaintiff would be seeking spoliation sanctions against *both* Charles and Kelley[2] (a situation that would foreseeably force Charles and Kelley to testify against one another), <u>Phillips summarily dismissed the potential for a conflict of interest, and assured undersigned that there would be no future issues or unnecessary delays occasioned by his dual representation</u>. He then promptly assumed representation of Charles, and filed, on Charles's behalf, various motions for extensions of time [CM/ECF 133, 145, 146], an answer to Plaintiff's complaint [CM/ECF 156], and responses in opposition to Plaintiff's motion for sanctions [CM/ECF 137, 160].

Phillips similarly filed, on Charles's behalf, responses to discovery requests. For example, on or about June 18, 2014, Plaintiff propounded upon Charles a series of requests for admission, designed to ascertain whether or not Charles had withheld evidence from his wife to effectively suborn her perjury. Among other requests, Plaintiff asked Charles to admit: (1) that

---

[2] This is so because on May 14, 2014, the Court denied Plaintiff's prior motion for sanctions (which had been filed solely against Kelley), permitting Plaintiff to revise and refile their motion after joining Charles as a party defendant. *See* CM/ECF 121 ("MINUTE ORDER for proceedings held before Magistrate Judge Mark J. Dinsmore: Status Conference held on 5/9/2014. The parties discussed Plaintiff's Motion for Show Cause Regarding Spoliation. *The parties were advised that the Court will be denying the motion without prejudice for refiling after a ruling on the motion to amend complaint to name Defendant's husband. The parties agreed that once it is refiled, the Court will limit the briefing schedule and set the matter for an evidentiary hearing*. A discussion was further held regarding several discovery issues.").

he owned the missing Western Digital hard drive "since at least October 17, 2013," and that the drive "should have been turned over on December 23, 2013 with the other four hard drives," (2) that his wife Kelley "was aware of or had reason to know of the existence of the Western Digital hard drive prior to May 31, 2014," and (3) that the Western Digital hard drive "was reasonably discoverable (i.e. not hidden or secret)" by Kelley [CM/ECF 137-2 at p. 1–3].

Charles, by and through Phillips, responded to these requests on or about July 15, 2014 [CM/ECF 137-2 at p. 4–8]. First, Charles admitted that he owned the Western Digital hard drive since at least October 17, 2013, but objected to answering whether or not that drive should have been turned over on December 23, 2013, explaining that "[t]he request calls for attorney-client privileged information and attorney work-product." *Id.* In other words, Charles implied that the decision to withhold the Western Digital hard drive from production was made with the assistance of counsel after consulting with Phillips.[3] *See id.* Second, Charles refused to admit that Kelley was aware of the existence of the withheld hard drive, suggesting that an affirmative answer would require speculation. *See id.* Finally, Charles denied that the withheld hard drive was "reasonably discoverable (i.e. not hidden or secret)." *See id.* Based on these discovery responses and Charles's explicit admission that he had hid from his wife (and lied about the existence of) the Western Digital hard drive, it was plainly foreseeable that one of Phillips's clients would have to testify against the other—either Kelley would have to testify against her husband and claim that Charles had suborned her perjury by concealing and lying about the Western Digital hard drive or Charles would have to testify against his wife and claim that Kelley had knowingly perjured herself and knowingly withheld evidence from discovery.

---

[3] That Phillips potentially instructed Charles not to disclose the Western Digital hard drive is supported elsewhere in the record. *See, e.g.*, CM/ECF 160 (Charles's response to Plaintiff's Supplement to its Motion for Sanctions) at p. 4 ("Malibu's speculation about intentions of Charles Tashiro ignores a variety of things, including possible attorney-client or attorney work product protected decision making as to what was or was not relevant.").

Although this situation created the very conflict of interest that undersigned had feared, Phillips still declined to address his crystal clear conflict of interest in representing both Kelley and Charles; for months he disregarded the conflict and continued to represent both clients.

On or about November 28, 2014, Phillips filed a motion requesting that the evidentiary hearing on Plaintiff's motion for sanctions be rescheduled [CM/ECF 166]. Phillips's motion expressly advised that "greater justice [would be served] by allowing *all* witnesses to *testify, which* can occur on January 27th, 2015 through January 29th, 2015." *Id.* In other words, Phillips's motion implicitly and necessarily indicated that he had conferred with his clients and determined (1) that both Kelley and Charles would waive any conflict of interest and accept Phillip's dual representation and (2) that both Kelley and Charles would be prepared and able to testify at a hearing rescheduled for January 27, 2015, January 28, 2015, or January 29, 2015. *See id.* Based on these representations, the Court entered an order rescheduling the evidentiary hearing for January 29, 2015 [CM/ECF 167]. Undersigned likewise relied on Phillips's representations, and refrained from further questioning Phillips about his open and obvious pre-existing potential conflict of interest. In the months that followed, undersigned, on behalf of Plaintiff, and Phillips, on behalf of Kelley and Charles, engaged in the requisite hearing preparations. Among other things, undersigned and Phillips engaged in numerous email exchanges and telephonic conferences, participated in depositions, prepared and filed witness and exhibit lists, and briefed and filed various evidentiary motions and motions in limine [CM/ECF 168–182, 190, 202–203]. Undersigned also spent considerable time and expense creating lengthy outlines and questions for the direct examinations of both Kelley and Charles.

### C. On the day of the rescheduled hearing, Phillips finally reveals his foreseeable conflict of interest and asks that the hearing be further postponed

January 29, 2015—one of the days on which Phillips and Charles had expressly requested the hearing be scheduled—finally arrived, and having spent weeks upon weeks in preparation, Plaintiff's attorneys and witnesses traveled half way across the country to have their day in court. Upon arrival, however, Phillips informed Plaintiff and the Court that, contrary to all representations previously made, Charles would be invoking his Fifth Amendment rights and the hearing would not be able to proceed as scheduled. The proffered reason for the eleventh hour and last second cancellation was that Charles's last minute refusal to testify created a conflict of interest between Phillips's clients that necessitated Phillips's withdrawal from representation of Charles [CM/ECF 206]. As is readily apparent, however, Charles's right against self-incrimination and Phillips's obvious potential conflict of interest were known (and affirmatively brought to Phillips's attention) <u>months</u> in advance of the sanctions hearing. Phillips should have advised Charles of his Fifth Amendment rights and requested to withdraw from representation based on his readily apparent conflict of interest by July 15, 2014 *at the absolute latest* (*i.e.*, when Charles admitted that he had concealed material evidence from his wife). Phillips's unreasonable (and unethical) failure to do so predictably caused Plaintiff to spend countless hours preparing for and traveling to a hearing that would be unilaterally cancelled, and precluded undersigned from taking any steps to mitigate Plaintiff's costs and expenses.[4]

---

[4] Although Plaintiff intends to subsequently hold Phillips and Charles jointly and severally liable for the costs they needlessly forced Plaintiff to expend in investigating the whereabouts and existence of the Western Digital hard drive, the instant motion is concerned only with Plaintiff's costs and expenses in preparing for and traveling to the January 29, 2015 evidentiary hearing.

## II.    MEMORANDUM OF LAW

### A.    Standard of review

There are numerous procedural rules that authorize a court to order one party to pay another party's fees and expenses, even prior to ultimate resolution of liability.  For example, Rule 16(f) states that the court may issue "any just orders" if a party or its attorney fails to appear at, prepare for, or in good faith participate in a hearing.  *See* Fed. R. Civ. P. 16(f).  Although the rule is often applied to scheduling conferences, it broadly applies to hearings, including sanctions hearings and even trials.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 71 (1991); *In re Martin*, 350 B.R. 812, 815–16 (N.D. Ind. 2006).  If a party's unpreparedness, actions, or omissions in connection with a hearing unfairly delays the proceedings or causes the other party to incur unnecessary expenses, then 16(f) sanctions are warranted, even absent any finding of bad faith or willfulness.  *Accord In re Martin*, 350 B.R. at 816 ("[T]he imposition of sanctions under Rule 16(f) does not depend upon a finding of bad faith, willfulness, or contumaciousness.  Negligence will suffice.").

Rule 37 similarly authorizes fee-shifting.  *See* Fed. R. Civ. P. 37(d)(3) ("[T]he court *must* require a *party* failing to act, the *attorney* advising that party, *or both* to pay the reasonable expenses, including attorney's fees, caused by the failure").  Additionally, of course, "federal courts have inherent power to sanction litigants for conduct that abuses [or delays] the judicial process.  These powers are governed not by rule or by statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the *orderly* and *expeditious* disposition of cases."  *JFB Hart Coatings, Inc. v. AM Gen. LLC*, 764 F. Supp.2d 974, 981–82 (N.D. Ill. 2011); *see also In re VII South Michigan Assocs.*, 175 B.R. 976, 985 (N.D. Ill. 1994) ("[A] court may impose attorney's fees as an exercise of the court's inherent power to impose

sanctions to curve abusive litigation practices"). Once again, bad faith is <u>not</u> required in order to impose remedial sanctions pursuant to Rule 37 or the Court's inherent authority; the court must merely conclude that a party's actions or omissions negligently and unnecessarily delayed the proceedings or unfairly caused his adversary expenses. *See U.S. v. Johnson*, 327 F.3d 554, 562–63 (7th Cir. 2003); *U.S. v. Claros*, 17 F.3d 1041, 1046–47 (7th Cir. 1994); *Croomes v. Stream Global Servs. AZ, Inc.*, No. CV11-0141, 2012 WL 748307, *3 (D. Ariz. Mar. 8, 2012); *Novelty, Inc. v. Mountain View Marketing, Inc.*, 265 F.R.D. 370, 374 (S.D. Ind. 2009).

Separate and apart from the foregoing authority is 28 U.S.C. § 1927, which provides that any *attorney* "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy *personally* the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.[5] An attorney is said to have acted unreasonably and vexatiously if he engages in objectively unreasonable conduct that unnecessarily obstructs or prolongs litigation, or otherwise "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Malibu Media, LLC v. Helferich*, No. 1:12-cv-00842, 2014 WL 690921, *1 (S.D. Ind. Feb. 21, 2014) (citing *Dal Pozzo v. Basic Machinery Co, Inc.*, 463 F.3d 609, 614 (7th Cir. 2006)); *Nayak v. St. Vincent Hosp. & Health Care Center, Inc.*, No. 1:12-cv-00817, 2014 WL 3942362, *2 (S.D. Ind. Aug. 12, 2014); *see also, e.g.*, *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (observing that § 1927 sanctions are appropriately lodged against an attorney who acts in an objectively unreasonable manner by intentionally or negligently disregarding the orderly process of justice). The statute is "intended to require an attorney to satisfy personally the excess

---

[5] "Fees awarded under § 1927 need not be incurred in connection with a 'procedure' before the court, but only in connection with the 'proceedings' in a case—*i.e.*, all litigation-related activity, including responding to opposing counsel's allegations in emails relating to the case." *Loparex, LLC v. MPI Release Technologies, LLC*, No. 1:09-cv-01411, 2012 WL 6094141, *14 n.7 (S.D. Ind. Dec. 7, 2012).

costs attributable to his misconduct" and serves a dual purpose of both deterring unreasonable litigation practices by attorneys and ensuring that attorneys who needlessly create unnecessary costs for their adversaries bear those expenses. *See Riddle & Assocs. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005); *In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir. 1985); *see also Taflinger v. Hindson*, 870 F. Supp.2d 598, 605 (S.D. Ind. 2012) ("Section 1927's principal purpose is the deterrence of unnecessary delay in the proceedings.").

In order to adequately carry out its intended dual function and because § 1927 is grounded on notions of fairness, the statute looks at an attorneys' actions <u>objectively</u>, not subjectively. In this way the statute authorizes an assessment of fees against an attorney who, *<u>even in the absence of any conscious impropriety</u>*, unnecessarily multiples the proceedings or shows reckless indifference to the just, speedy, and inexpensive administration of justice. *See Tate v. Ancell*, 551 Fed. Appx. 877, 891 (7th Cir. 2014); *Helferich*, 2014 WL 690921 at *1 ("Sanctions are appropriate when counsel acted recklessly … or showed indifference [to court proceedings and the preparation required in connection with same]"); *see also In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987) ("An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by … the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise unreasonable…. Accordingly, at least *<u>when an attorney knows or reasonably should know</u>* that … his or her litigation tactics will needlessly obstruct [or prolong] the litigation, a trial court does not err by assessing fees attributable to such actions against the attorney").

**B.** **It would be wholly inequitable to force Plaintiff, who has fully complied with its discovery obligations and done no wrong, to bear the otherwise avoidable expenses that Phillips and Charles have caused it to incur**

Charles's discovery responses, filed by and through Phillips, reveal that Charles owned the Western Digital hard drive since at least October 17, 2013, but that same was not produced in December 2013 for reasons that have been withheld as privileged subject to the work product doctrine and the attorney-client privilege [CM/ECF 137-2]. Accordingly, Phillips and Charles (even if not Kelley) were aware (or should have been aware) that a Western Digital hard drive was likely in existence and was possibly being withheld from production. Phillips's threats of sanctions and repeated assertions that there had been "<u>no</u> failure to disclose," that Phillips had "listed <u>all</u> devices in the home or used," and that Plaintiff was "grasping at straws" and making "patently absurd" accusations, were either made in bad faith or with a reckless disregard for the truth. And because Charles's right against self-incrimination and Phillips's potential conflict of interest were appreciable from the moment Charles was added to this litigation (and on July 15, 2015 at the absolute latest), it was foreseeable (*i.e.*, either known or reasonably should have been known) that Phillips might later have to withdraw from his joint representation. Indeed, undersigned, concerned with avoiding unnecessary future procedural delays, expressly brought this issue to Phillips's attention during a phone call in early June of 2014.

Phillips's unreasonable disregard of his potential conflict of interest, even if not done in bad faith, was reckless, and forced Plaintiff to incur significant expenses—expenditures that will in large part be necessarily duplicated. For example, in reliance upon Phillips's and Charles's representations that Charles would be testifying at the January 29, 2015 hearing, Plaintiff's attorneys spent considerable time and expense reviewing Charles's discovery responses and litigation positions, and in preparing detailed outlines for Charles's anticipated direct

examination. All of these expenses were needlessly incurred and wasted in light of the last minute revelation that Charles would be invoking his right against self-incrimination. In light of Charles's belated refusal to testify, Plaintiff's attorneys will have to research new law and issues, and come up with new litigation strategies. And, to the extent that Charles and Kelley will no longer be sharing Phillips's representation, it remains uncertain whether or not Kelley will attempt to rely upon a spousal immunity privilege or offer some other basis to limit her testimony. This being the case, it is quite likely that Plaintiff's hearing outlines created for Kelley (which took numerous hours to craft) will likewise be unusable, in whole or in part. Regardless, and even if there were no significant litigation changes, the fact that Phillips and Charles have unilaterally delayed the evidentiary hearing by another few months means that Plaintiff's attorneys will necessarily have to duplicate their efforts by re-reviewing the evidence, and re-preparing for and re-traveling to the rescheduled hearing. It would be wholly inequitable and manifestly unjust to force Plaintiff to bear the costs it was needlessly forced to expend in preparing for and travelling to the January 29, 2015 hearing, a hearing which was caused in the first place by Kelley and Charles Tashiro's repeated and egregious discovery violations and a hearing that was rescheduled based upon Phillips's representations that both of his clients would be available and willing to testify. Equity and basic principles of fairness mandate that these needlessly incurred costs, together with the costs associated with researching and drafting the instant motion, be borne by Charles and Phillips, jointly and severally.

### i. Defendant Charles Tashiro's Equitable and Statutory Liability

Charles must be held liable for the expenses improperly and unnecessarily inflicted upon Plaintiff as a result of his spontaneous eleventh hour refusal to testify at a sanctions hearing in Indianapolis that had been fully briefed and scheduled for months. Indeed, Charles was made

aware of this action over two years ago and was formally added as a party defendant back on May 15, 2014, just a couple weeks before Plaintiff filed its motion for sanctions. By June 20, 2014 at the absolute latest, Charles was aware that Plaintiff was accusing him of having withheld and destroyed evidence and of having committed (and suborned) perjury [CM/ECF 130]. Charles discussed and strategized the handling of these accusations with his attorney, decided that he would testify rather than invoke his Fifth Amendment rights, and asked the Court to reschedule the hearing, advising that he would be prepared to testify and proceed with the hearing under Phillips's representation on dates between January 27, 2015 through January 29, 2015 [CM/ECF 166]. The Court accommodated this request and for the six months leading up to the evidentiary hearing, Charles, under Phillips's representation, actively participated in preparing for same.[6]

It was patently and objectively unreasonable for Charles to not correct his prior inconsistent representations regarding his willingness to testify. Even if for some inexplicable reason Charles completely changed course on the day of the hearing without ever having given any indication that same could occur, Charles, with Phillips's guidance, should and could have reasonably foreseen that he might have a change of heart regarding his decision to testify, and should have made this possibility known. In other words, even if it was not Charles's bad faith intention all along to delay these proceedings by surreptitiously refusing to testify,[7] Charles, with Phillips's guidance, should have foreseen that Phillips would be unable to simultaneously represent both Charles (who concealed and lied about material evidence, thereby suborning his

---

[6] Charles's (and Phillips's) awareness of the allegations against Charles and his wife and Charles's (and Phillips's) participation in preparing for the evidentiary hearing are readily apparent from the case docket. *See, e.g.*, CM/ECF 133, 134, 137, 145, 146, 153, 156, 160, 166, 168, 170–180, 182, 190, 202–203.

[7] The Court might note, though, that it could easily infer bad faith. *Cf. Eagle Hosp. Physicians LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order.").

wife's perjury and discovery violations) and Kelley (who withheld evidence and repeatedly committed perjury, either intentionally or by recklessly relying upon her husband's misrepresentations). Simply stated, because it was certainly at least foreseeable that Charles might choose to plead the Fifth and retain new and independent counsel, Charles, with Phillips's guidance, should have taken precautionary measures to avoid a needless waste of time and expense. Charles's decision to instead retain Phillips as counsel, advise the Court that he would be willing and available to testify at an evidentiary hearing if same were rescheduled for January 29th, and then blindside undersigned and the Court on the very day of the rescheduled hearing, predictably necessitated a last minute continuance of the hearing and resulted in Plaintiff's otherwise avoidable significant expenditure of money and resources.

It should go without saying that it would be a gross and manifest injustice to force Plaintiff to bear these needlessly incurred expenses; Charles must be liable for them. *Cf., e.g.*, *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d 1485, 1492 (7th Cir. 1989) (sanctioning a litigant whose conduct "multiplied the proceedings unnecessarily"); *Magnus Elecs., Inc. v. Masco Corp. of In.*, 871 F.2d 626, 633 (7th Cir. 1989) ("[A] district judge may impose sanctions equivalent to the attorneys' fees reasonably incurred by opposing counsel"); *Felice v. Republic Airlines, Inc.*, No. 4:09-cv-0071, 2012 WL 162559 (N.D. Ind. Jan. 17, 2012) (granting a litigant the expenses it incurred in preparing for, traveling to, and attending a hearing that its adversary failed to attend, together with costs associated with researching and drafting a motion for fees); *In re Rimsat, Ltd.*, 229 B.R. 914, 921 (N.D. Ind. 1998) ("In determining an appropriate sanction, the court is to … compensate parties for the attorneys' fees and expenses unnecessarily incurred as a result of the sanctioned party's conduct."); *Nat'l Union Fire Ins. Co. v. Continental Ill. Corp.*, 113 F.R.D. 637, 643–44 (N.D. Ill. 1987) (noting that litigants must pay the price for

needless legal expenses they force their adversaries to incur); *E.E.O.C. v. Sears, Roebuck & Co.*, 114 F.R.D. 615, 627 (N.D. Ill. 1987) ("Here, Sears requests an award of the attorneys' fees and expenses it incurred as a result of EEOC's negligence. The court, in its discretion, finds such an award appropriate and reasonable and so orders.").

The fact that Charles was not yet formally named as a party when he concealed and withheld the Western Digital hard drive from production (and suborned his wife's perjury and allowed Phillips to repeatedly make false representations on the record) does not, and must not, change the analysis. *Cf., e.g.*, *Large v. Mobile Tool Int'l, Inc.*, No. 1:02-cv-177, 2008 WL 89897, *7 (N.D. Ind. Jan. 7, 2008) ("When it comes to sanctions motions, the *important consideration is justice*. The court has the inherent authority to sanction a party for misconduct, *including* _prelitigation_ *spoliation*, in order to protect the integrity of the judicial system and prevent abuses of the discovery process"); *Smith v. Borg Warner Auto. Diversified Transmission Prod. Corp.*, No. IP 98-1609, 2000 WL 1006619, *20 (S.D. Ind. 2000) (same). Nor may the analysis be altered by the fact that Charles's last-minute refusal to testify resulted from the invocation of his Fifth Amendment right against self-incrimination. Quite obviously, the Court is not being asked to sanction Charles for invoking his constitutional rights; it is being asked to sanction Charles for the foreseeable and collateral consequences that emanated from his *untimely* refusal to testify, particularly since Charles had previously advised the Court that he in fact would be testifying (and since the Court and undersigned relied to their detriment upon that misrepresentation). *E.g.*, CM/ECF 166. This distinction is significant and instructs that sanctioning Charles is <u>not</u> offensive to his rights and is actually <u>necessary</u> to achieve justice, lest Plaintiff be unfairly burdened with fronting the costs Charles necessarily caused it to needlessly incur. *Cf. Eagle Hosp. Physicians LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1304 (11th Cir.

2009) ("The decision to invoke the Fifth Amendment does not have to be consequence-free [and a sanction] following the assertion of the Fifth Amendment only violates the Constitution where the inferences drawn from Fifth-Amendment-protected silence are treated as a substitute for the need for evidence on an ultimate issue of fact. … [Here, the sanction was proper because it was] issued as a result of the disruption [and delay], not as a direct result of Gerst's invocation of the Fifth Amendment [in and of itself]."); *In re TCI Ltd.*, 769 F.2d at 446 ("[I]n a system requiring each party to bear its own costs and fees, *courts must ensure that each party really does bear the costs and does not foist expenses off on its adversaries. … The best way to control unjustified tactics in litigation is to ensure that those who create [unnecessary] costs also bear them*."); *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1087 n.6 (5th Cir. 1979) (noting that, in a civil case, a sanction for hiding behind the Fifth Amendment may permissibly be employed as a remedy to prevent unfairness to the other party); *Croomes*, 2012 WL 748307 at *3 (a party's failure to appear or testify at a hearing may warrant an award of compensatory expenses even if the party's failure to participate is not willful or malicious).

### ii.  Attorney Jonathan LA Phillips's Equitable and Statutory Liability

In addition to Charles, Phillips must be held jointly and severally liable for the expenses improperly and unnecessarily inflicted upon Plaintiff pursuant to Rule 37, and this Court's inherent authority, as well as § 1927 (the above-discussed equitable statute that requires attorneys to satisfy personally the costs that they unnecessarily inflict upon their adversaries).  At issue here is the paradigmatic situation for a section 1927 award.  Plaintiff commenced this copyright infringement action over two years ago, and Phillips has actively represented both Kelley and Charles at all pertinent times.  For nearly nine months (*i.e.*, from September 2013 through May of 2014), Phillips vehemently and repeatedly (1) warranted that his clients had

diligently and thoroughly searched their home for undisclosed evidence; (2) insisted that all discoverable evidence had been produced and that no Western Digital hard drive (or any other undisclosed computer device) was in existence; (3) accused undersigned of "grasping at straws"; and (4) threatened to pursue sanctions in order to keep undersigned from continuing to question the existence of withheld evidence, an inquiry that Phillips assured undersigned was futile and "patently absurd" [CM/ECF 130-3].  These warranties and threats were not only unbecoming and unprofessional, but were objectively unreasonable since they were recklessly made with utter disregard for their accuracy.  Even assuming that Phillips was not intentionally facilitating his clients' perjury and discovery violations,[8] undersigned submits that Phillips should still not have definitively represented that no evidence was being withheld, a course of conduct that for months forced Plaintiff to expend its own time, money, and resources in issuing prolonged discovery requests to reconcile Phillips's repeated denials with Plaintiff's own proof that evidence was being blatantly withheld.  Instead, Phillips should have investigated the issue and advised the basis for his belief that no withheld evidence existed, a course of conduct that could have saved Plaintiff from having to relook at all the evidence and would have enabled Plaintiff to more efficiently ascertain the reason that evidence was not being accounted for.

Phillips's unreasonable course of conduct was particularly egregious as of April 8, 2014, since it was then that undersigned specifically informed Phillips of the basis for its belief that a Western Digital hard drive was being withheld and actually advised Phillips of the precise serial

---

[8] Undersigned is not assuming that Phillips intentionally and in bad faith enabled his clients to withhold material evidence, but notes that same may actually be the case given (1) Phillips's persistent adoption of his clients' false representations without bothering to perform even a basic reasonable investigation and (2) Charles's indications that the Western Digital hard drive was withheld from production on advice of counsel.  *See, e.g.*, CM/ECF 137-2 (indicating that the reason the Western Digital hard drive was withheld from production is a confidential matter protected by the work product doctrine and the attorney-client privilege) & CM/ECF 160 ("Malibu's speculation about intentions of Charles Tashiro ignores a variety of things, including possible attorney-client or attorney work product protected decision making as to what was or was not relevant.").

number pertaining to the missing drive [CM/ECF 130-3 at p. 3]. Once armed with such specific and detailed information, it was manifestly unreasonable for Phillips to bury his head in the sand and continue protracting the discovery dispute by dismissing undersigned's claims as "absurd" and frivously threatening to pursue sanctions. Having been put on notice of detailed information corroborating Plaintiff's suspicions that a Western Digital hard drive was being withheld, a reasonable attorney would have considered the possibility that his clients were being less than forthright, and would have refrained from any further facilitation of his clients' discovery violations. Indeed, in this situation Phillips was actually ethically required to step back and take the necessary steps to insure that he was not inadvertently enabling his clients to impede the administration of justice. *Cf.* Fed. R. Civ. P. 1 & 11 ("The [federal rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding," and attorneys are required to make reasonable inquiries and investigations to ensure their factual denials and representations are correct); Ind. R. Prof. Conduct 3.3 & Comments 2 & 12;[9] Ind. R. Prof. Conduct 3.4;[10] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 559 U.S. 573, 600 (2010) ("An attorney's ethical duty to advance the interests of his client is limited by an

---

[9] "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made …. A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceedings shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal …. This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal. Consequently, … the lawyer must not allow the tribunal to be misled by false statements of law or fact …. Lawyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process …. Thus, a lawyer [is required] to take reasonable remedial measures, including disclosure if necessary, whenever the lawyer knows that a person, including the lawyer's client, intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding."

[10] "A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act; … (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent efforts to comply with a legally proper discovery request made by an opposing party."

equally solemn duty to comply with the law and the standards of professional conduct"); *Alvord v. Wainwright*, 469 U.S. 956, 962 (1984) (attorneys have ethical obligations to not blindly rely on their clients' self-serving statements and when there is a basis to suspect foul play, attorneys have a duty to perform reasonable investigations to avoid inadvertently perpetuating a fraud on the court); *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000) (noting that a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy); *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002) (attorneys have a duty to take reasonable steps to ensure that their clients' self-serving contentions truly are well-grounded in fact); *In re Varan*, No. 11 B 44072, 2014 WL 2881162, *10 n.6 (N.D. Ill. June 24, 2014) (noting that if a client's demands or representations threaten to interfere with an attorney's duty of candor, the Rules of Professional Conduct forbid him from aggravating the injustice and allow the attorney to instead withdraw from the case); *In re Moffett*, No. 10-71920, 2012 WL 693362, *3 (C.D. Ill. Mar. 2, 2012) ("[An attorney] cannot absolve himself of the duty to conduct a reasonable investigation by affirmatively allowing clients to bring in only the bare minimum of information and then claiming that it is not his fault that he did not have [all the information]"); *U.S. Commodity Futures Trading Com'n v. Lake Shore Asset Mgmt. Ltd.*, 540 F. Supp.2d 994, 1012 (N.D. Ill. 2008) ("Modern discovery practices seek to facilitate open, even-handed, and efficient development of the relevant facts so that justice may be achieved and cases decided fairly on the merits. To that end, lawyers have a duty to act in good faith in complying with their discovery obligations and to cooperate with and facilitate forthright discovery").

Consequently, Phillips's conduct in facilitating his clients' concealment of relevant evidence, even if reckless and not intentional, nevertheless amounted to a violation of Phillips's ethical obligations and duty of candor and resulted in an <u>objectively unreasonable</u> multiplication

of the proceedings.    Even setting aside Phillips's objectively unreasonable and unethical facilitation of his clients' discovery violations—an issue that will be reserved for another day— Phillips unreasonably multiplied this litigation by <u>persisting in representing both Kelley and Charles in the face of a crystal clear likely conflict of interest</u>.  As already noted, <u>months</u> before the evidentiary hearing was even scheduled, it was abundantly obvious and foreseeable that one of Phillips's clients would have to testify against the other, a situation that would create a conflict of interest.  *See, e.g.*, Ind. R. Prof. Conduct 1.7 & Comments 8 & 23;[11] Ind. R. Prof. Conduct 1.9 & Comment 1;[12] *see generally In re Liou*, 503 B.R. 56 (N.D. Ill. 2013).

A reasonably diligent and careful attorney would have appreciated this state of affairs upon each one of the following occurrences: (1) on May 14, 2014 (260 days prior to the evidentiary hearing), when the Court denied Plaintiff's prior sanctions motion without prejudice, directing Plaintiff to refile same after joining Charles; (2) on May 15, 2014 (259 days prior to the evidentiary hearing), when Charles was added as a party defendant, independently of and in addition to his wife Kelley; (3) on May 31, 2014 (243 days prior to the evidentiary hearing), when Charles came forward with the Western Digital hard drive that had been improperly withheld from discovery for the preceding nine months; (4) on June 9, 2014 (234 days prior to the evidentiary hearing), when undersigned expressly asked Phillips during a telephone call

---

[11] "[A] lawyer shall not represent a client if … the representation of one client will be directly adverse to another client <u>or [if there is even a] *risk* that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client</u>….  <u>[A] conflict of interest exists if there is a *significant risk* that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities</u> or interests. … <u>The critical questions are the likelihood that a difference in interests will eventuate.…</u>  A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question."

[12] "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client ….  [A] lawyer has certain continuing duties with respect to confidentiality and conflicts of interest…. [A] lawyer who has represented multiple clients in a matter [cannot] represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients in that matter…."

whether it might be more prudent for him to refrain from representing both Kelley and Charles so as to avoid a conflict of interest and any concomitant procedural delays; (5) on June 18, 2014 (225 days prior to the evidentiary hearing), when Plaintiff propounded upon Charles requests for admission, asking Charles to admit that he had withheld evidence from his wife and thereby suborned her repeated perjury; and (6) on June 20, 2014 (223 days prior to the evidentiary hearing), when Plaintiff filed its motion for sanctions, clearly accusing *both* Charles and Kelley of independently abusing the discovery process. It should go without saying that at all or any one of these points, a reasonably diligent and careful attorney would have made the necessary inquiries to learn that Charles had hid material evidence from Kelley, thereby suborning her perjury and creating a crystal clear conflict of interest. <u>Even if theretofore intentionally overlooked,</u>[13] <u>Phillips's conflict of interest became *inescapably obvious* on July 15, 2014 (198 days prior to the evidentiary hearing), when Charles expressly admitted that he had withheld or hid evidence from his wife</u>. At that point in time, it was unavoidably apparent and foreseeable that either Kelley would have to testify against Charles (and claim that he had suborned her perjury by concealing and lying about the Western Digital hard drive) or Charles would have to testify against Kelley (and claim that she had knowingly perjured herself and knowingly withheld evidence from discovery).

Needless to stay, a reasonably diligent and careful attorney would <u>not</u> have continually disregarded the very obvious potential conflict of interest (which undersigned explicitly identified back in early June of 2014 and which otherwise became obvious on July 15, 2014, at the latest). A reasonably diligent and careful attorney would also <u>not</u> have erroneously advised

---

[13] To the extent Phillips claims he failed to appreciate or recognize his potential conflict of interest during these time periods, the Court must note that Phillips's oversight was intentional (*i.e.*, willful blindness). As noted, undersigned explicitly brought the likely conflict to Phillips's attention during a phone call on or about June 9, 2014, when undersigned asked Phillips whether it would be more prudent and efficient for him to refrain from representing both Kelley and Charles so as to avoid any unnecessary delays caused by a conflict of interest in his dual representation.

the Court that both his clients were prepared to share joint representation and each testify at an evidentiary hearing so long as same were rescheduled on one of three specific dates. And a reasonably diligent and careful attorney would certainly <u>not</u> have waited until the very day of the rescheduled hearing to first address his pre-existing conflict and untimely request to withdraw from representation on that basis. Rather, a reasonably diligent attorney, cognizant of the Federal Rules and of the judiciary's valuable time and limited resources, would have taken precautionary steps to avoid unnecessarily multiplying the proceedings and would have promptly dealt with his potential conflict of interest months in advance. Indeed, attorneys, as officers of the court, have an obligation to detect and avoid potential conflicts of interest and to timely notify the court of same so that early inquiries can be made and later-realized conflicts and concomitant delays prevented. *See* Fed. R. Civ. P. 1; Ind. R. Prof Conduct 1.7 & 1.9; *Beets v. Scott*, 65 F.3d 1258, 1295 (5th Cir. 1995); *Cates v. Superintendent, Ind. Youth Center*, 981 F.2d 949, 953 (7th Cir. 1992); *Cerro v. U.S.*, 872 F.2d 780, 788 (7th Cir. 1989); *U.S. v. Walker*, No. 1:05-CR-70, 2007 WL 2743496, *1 (N.D. Ind. Sept. 17, 2007); *see also Coburn v. DaimlerChrysler Servs.*, 289 F. Supp.2d 960, 967 (N.D. Ill. 2003) ("Counsel must take a conservative rather than aggressive approach [when it comes to conflicts of interest and ethical rules]. Litigants faced with an ethical dilemma should act conservatively; they should immediately seek guidance from the Court"); *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1020 (N.D. Ill. 1993) (attorneys have an undisputable ethical obligation to promptly inform the court of the existence of possible ethical violations and conflicts of interest).

Here, because the potential for Phillips's conflict of interest was known <u>over six months in advance of the hearing</u>, Phillips should have advised the court of his potential conflict of interest and requested to withdraw from representation as soon as he became aware of same (or

by July 15, 2014 at the absolute latest). It was <u>objectively unreasonable</u> for Phillips to put his interests before the Court's and undersigned's and to silently wait to see whether or not his obvious potential conflict of interest would materialize. That litigation tactic amounts to a violation of Phillips's obligations and duty of candor, and reflects a reckless disregard for the federal court system and the need for controversies to be judicially resolved without unnecessary delay or expenditure. And Phillips's calculated decision to dismiss undersigned's previously asserted conflict-of-interest concerns and to only advise the Court of his conflict of interest when same finally fully materialized predictably resulted in foreseeable and otherwise avoidable expenditures by Plaintiff of money and resources which will in large part be necessarily duplicated in preparation for the rescheduled evidentiary hearing. Under the circumstances, equity mandates that Phillips be held personally liable for the fees, costs, and expenses Plaintiff incurred in preparing for and traveling to the sanctions hearing that Phillips rescheduled for January 29, 2015.

A similar situation was before the court in *U.S. v. Associated Convalescent Enters., Inc.* There, as here, an attorney withdrew from representation moments before a scheduled hearing on the basis that a conflict of interest materialized. Because the potential for the conflict had been known or was knowable to the attorney for a considerable amount of time prior to the hearing, the court imposed a sanction in the form of attorney's fees and costs, explaining:

> Mr. Branton had a duty … to inform the Court of the existence and nature of his potential conflict so that his requested substitution [of counsel] could be properly [and timely] evaluated. The failure to so advise the Court necessitated a last minute continuance of the trial. This continuance resulted in needless expenditure[s] in connection with the bringing of witnesses and counsel to court and the waste of counsels' time in preparation for trial. Had Mr. Branton been candid and forthcoming with the Court, this entire matter could and would have been resolved well in advance of the time that [the other attorney] had to complete preparations for trial and the summoning of its witnesses. The direct result of what this Court considers to have been a calculated failure on the part of Mr.

Branton to inform the Court has been an otherwise avoidable expenditure by the [other attorney] of money and resources which will in large part be necessarily duplicated when this matter again comes on for trial.

600 F. Supp. 18, 20 (C.D. Cal. 1984).

Additional authority likewise instructs that equity necessitates an order holding Phillips liable for the costs he foreseeably and unnecessarily inflicted upon Plaintiff. *Accord, e.g.*, *Matter of Maurice*, 69 F.3d 830, 833 (7th Cir. 1995) (where attorney had reason to know that hearing would not go forward but allowed opposing counsel to needlessly prepare for and travel 100 miles to the hearing only to find out that hearing would be cancelled, cancelling attorney ordered to pay other attorney's costs and travel expenses, as well as "the value of the attorney's time diverted by this bootless exercise"); *Voss v. USS Great Lakes Fleet, Inc.*, 35 F.3d 567 (6th Cir. 1994) (imposition of sanction in the form of attorney's fees and costs against attorney for cancelling two depositions at the last minute); *Nelson v. Green Builders, Inc.*, 823 F. Supp. 1439, 1451 (E.D. Wisc. 1993) (granting a motion to disqualify, and reprimanding conflicted attorney for failing to timely raise the issue when the potential for his conflict of interest was first appreciable); *U.S. v. Robinson*, No. 88-30021, 1990 WL 34678, *8 (S.D. Ill. Mar. 24, 1990) (noting that if delays in litigation are fairly and directly attributable to an attorney's failure to timely notify the court of a potential conflict of interest, equitable relief is warranted in favor of the prejudiced party).

## C.    Conclusion

As a matter of law and equity, Charles and Phillips must be held jointly and severally liable for the costs and expenses they have improperly and unnecessarily inflicted upon Plaintiff. Because the instant motion is concerned only with entitlement, the reasonable amount of the costs and fees will be separately addressed at a later date.  For the reasons set forth above and

pursuant to Federal Rules of Civil Procedure 16 and 37, 28 U.S.C. § 1927, and the Court's inherent authority,[14] Plaintiff now respectfully requests entry of an order holding Charles Tashiro and Jonathan LA Phillips jointly and severally liable for the costs and expenses they forced Plaintiff to incur in connection with (1) preparing for and traveling to the rescheduled January 29, 2015 evidentiary hearing and (2) researching and drafting the instant motion. A proposed order granting the requested relief is attached for the Court's convenience.

Respectfully submitted,

By:      /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P-44419)
pauljnicoletti@gmail.com
NICOLETTI LAW, PLC
33717 Woodward Ave, #433
Birmingham, MI 48009
Business:  (248) 203-7800
Facsimile: (248) 928-7051

By:      /s/ *M. Keith Lipscomb*
M. Keith Lipscomb, Esq. (429554)
jcooper@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Business: (786) 431-2228
Facsimile: (786) 431-2229

By:      /s/ *Jason H. Cooper*
Jason H. Cooper, Esq. (98476)
jcooper@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.

---

[14] The Court, *sua sponte*, may also impose sanctions pursuant to Rule 11, which authorizes the imposition of sanctions against a party and its attorney if the attorney fails to conduct a reasonable inquiry to ensure that positions asserted on his client's behalf are well-grounded in fact, legally tenable, and not interposed for any improper purpose. *See* Fed. R. Civ. P. 11 ("[In making a factual representation in the course of litigation, an attorney necessarily] certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; … and (4) the denials of factual contentions are warranted on the evidence or … are reasonably based on belief or a lack of information."); *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002).

Penthouse 3800
Miami, FL 33131
Business: (786) 431-2228
Facsimile: (786) 431-2229

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 13, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:     <u>/s/ *Paul J. Nicoletti*            </u>