**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>KELLEY TASHIRO and N. CHARLES TASHIRO<br><br>Defendants | Case No. 1:13-cv-00205-WTL-MJD<br><br>Hon. Mark J. Dinsmore |

**JONATHAN LA PHILLIPS' RESPONSE MEMORANDUM IN OPPOSITION TO:**
**PLAINTIFF'S MOTION FOR ENTITLEMENT TO FEES AND SANCTIONS (ECF Doc. 211)**

The undersigned attorney, JONATHAN LA PHILLIPS, provides this Honorable Court with his Response Memorandum in Opposition to: Plaintiff's Motion for Entitlement to Fees and Sanctions (the "Motion). (ECF Doc. 211). It is respectfully submitted that the Motion be denied.

**I.   Introduction**

Malibu seeks to hold undersigned responsible for amounts well in excess of $15,000.00 due to the continuance of hearings when N. Charles Tashiro indicated he would assert his Fifth Amendment right to expected questioning from Malibu's counsel.[1] Malibu seeks, essentially, sanctions on top of sanctions.

For over a year now, Malibu has singularly focused on a few discovery issues that have long since been cleared up through production of a hard drive and the reality that all files were recoverable. In that year, rather than advance its $21,000.00 (the stipulated $750 per work

---

[1] At least this is what undersigned was able to divine from the Motion. There is a great deal of discussion already the subject of the pending motion for sanctions, for which the hearing that was continued. As such, it is assumed that Malibu has not filed another motion for sanctions for purported discovery issues while the other is still pending. Further supporting such a reading, after discussing what it believes to be undersigned's discovery shortcomings for another day, Malibu states that the "issue will be reserved for another day" and utilizes §1927 language of "multiplied this litigation." Motion, p. 19. If Malibu asserts otherwise, undersigned respectfully reserves the right to respond.

multiplied by the 28 works) case towards resolution, Malibu has chosen to run up attorney's fees, well in excess of that amount, on a discovery issue, that even if it had merit, is wholly peripheral.

Malibu claims to bring its Motion under Rules of Civil Procedure 16 and 37, as well as 28 U.S.C. § 1927 and the Court's inherent authority. Motion, p. 1. However, Malibu only seeks to apply Rule 37, this Court's inherent authority, and 28 U.S.C. § 1927 to undersigned. Motion, p. 16. As demonstrated below, in greater detail, Malibu's Motion is lacking.

## II. Malibu's failure to consult with undersigned bars it from the relief it seeks

As a threshold matter, this Court must determine whether or not Malibu filed a statement showing that Malibu's counsel "made reasonable efforts to confer with [undersigned] and resolve the matters raised in the [M]otion." L.R. 7-1(g)(1). This Local Rule applies to motions seeking attorney's fees. L.R. 7-1(g)(1)(A). If Malibu failed to provide an adequate this Court should deny the Motion. *Slabaugh v. State Farm Fire & Cas. Co.,* 2014 U.S. Dist. LEXIS 61108, 12 (S.D. Ind. May 1, 2014) (denying a motion for sanctions solely due to a failure to provide an adequate statement under Local Rule 7-1)*; see also, Remy Inc. v. Tecnomatic, S.P.A.,* 2013 U.S. Dist. LEXIS 21972, 4 (S.D. Ind. Feb. 19, 2013) (holding that a Motion for Sanctions under Rule 37 failed, in part, due to a failure to comply with local rule)*.

The Motion seeks attorney's fees. It is indisputable that Malibu has failed to file such a statement. Indeed, Malibu's counsel never conferred with undersigned. There is nothing to suggest that a discussion may not have done away with the need the filing of this Motion. Accordingly, this Court should not proceed further. It should simply deny the Motion.

## III. Law

Rule of Civil Procedure 37 only applies to motions concerning discovery. Fed. R. Civ. P. 37. As the Motion is about purported delay in hearings, not discovery issues, further discussion of Rule 37 is not necessary. *See,* fn 1, *supra.* However, it bears noting that Seventh Circuit law is

clear; Rule 37 sanctions are inappropriate for counsel.  *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003) (discussing several cases, including merely persuasive cases, and holding with an earlier Seventh Circuit case where Rule 37 sanctions are impermissible against attorneys).  As such, it is wholly inappropriate to discuss further.

While the Court has inherent authority to sanction, it must exercise this power with restraint and discretion.  *1100 West, LLC v. Red Spot Paint & Varnish Co,* 2009 U.S. Dist. LEXIS 47439, 73 (S.D. Ind. June 5, 2009), *citing, Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991).  In making a determination whether or not to levy a sanction under its inherent power, the Court must consider the putatively sanctionable actions in relation to all aspects of the judicial process.  *Id., citing, Greviskes v. Univs. Research Ass'n, Inc.,* 417 F.3d 752, 758-59 (7th Cir. 2005).  This very Court has recognized that a sanction under the Court's inherent authority must be proportionate to the gravity of the offense.  *Remy Inc. v. Tecnomatic, S.P.A.,* 2013 U.S. Dist. LEXIS 21972, 10 (S.D. Ind. Feb. 19, 2013), *citing, Montaño v. City of Chi.* 535 F.3d 558, 563 (7th Cir. 2008).

Section 1927 states that an attorney may be required to satisfy excess costs if he or she unreasonably and vexatiously multiplies proceedings.  28 U.S.C. § 1927.  The Court may, but does not have to, award sanctions in such a situation.  *Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 842 (N.D. Ind. 1995).  Unreasonable and vexatious action only occurs when an attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Dal Pozzo v. Basic Machinery Co.*, Inc., 463 F.3d 609, 614 (7th Cir. 2006). Sanctions are appropriate only when "counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules or court orders." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013), *quoting, Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-85 (7th Cir. 1992).

For the above methods of securing sanctions, the burden is on the fee petitioner to prove sanctionable conduct. *Vandeventer,* 893 F. Supp. at 842, *citing, Textor v. Bd. of Regents of N. Ill. Univ.,* 711 F.2d 1387, 1395 (7th Cir. 1983) (adopting the burden for § 1927 sanctions from an inherent authority sanction matter). Malibu has failed to meet this burden.

## IV. Argument

Malibu brings a broadside against undersigned's reputation and character; repeatedly asserting that ethical lapses resulted in the continuance of a hearing. Malibu errs. Malibu has no idea why Mr. Tashiro informed the Court that he would be asserting his Fifth Amendment right. Perhaps it will discover what area(s) of testimony Mr. Tashiro will assert his right at the continued hearing date, but for now, Malibu is simply guessing.

Malibu believes that conflict existed[2] because N. Charles Tashiro was accused of not disclosing a hard drive to his wife. Motion, p. 20 ("it was abundantly obvious and foreseeable that one of Phillips's clients would have to testify against the other . . ."); Motion, p. 21 (alleging that "Charles had hid material evidence from Kelley, thereby suborning her perjury and creating a crystal clear conflict of interest"); Motion, p. 21 (alleging that Kelly would have to testify against Charles "claim[ing] that he had suborned her perjury by concealing and lying about the Western Digital hard drive . . ."); *see also,* Motion, p. 7 (alleging an "apparent conflict of interest . . . when Charles admitted that he had concealed material evidence from his wife.").

As such, it must go uncontroverted that the crux of Malibu's argument that conflict was purportedly obvious rests on the facts surrounding the delayed disclosure of a hard-drive that we now know contained no Malibu Media works. With Malibu having the burden of proof under *Vandeventer,* we must proceed on this asserted theory. 893 F. Supp. at 842. Doing so, the only conclusion that can be reached is that Malibu is not entitled to the relief it seeks because this issue

---

[2] Or would be likely to exist, necessitating undersigned's withdrawal.

simply did not create a conflict that undersigned "sat on" until the last minute.   None of undersigned's actions rise to the levels of vexatious or unreasonable conduct or other standards, stated in Section III of this Memorandum, for sanctions to be levied.

### A.   Malibu's misunderstanding of perjury

The Seventh Circuit defines perjury as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Montaño v. City of Chi.*, 535 F.3d 558, 564 (2008) (applying the Supreme Court's standard to a §1983 civil case), *citing, United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (tracing the definition of perjury to the colonial laws of New York).   To commit perjury, an individual must willfully assert falsehoods that are material.   *Id.*   (emphasis added).   For over a century, Seventh Circuit law has required the existence of perjury in order for subornation of perjury to occur. *Epstein v. United States*, 196 F. 354, 356 (7th Cir. 1912).   Indeed, a person only suborns perjury when he or she "secures the perjurer's agreement to present false testimony."   *Newsome v. James*, 2001 U.S. Dist. LEXIS 16888, 11-12 (N.D. Ill. Oct. 15, 2001).

Attempting to show a "crystal clear" conflict, Malibu repeatedly states that Charles Tashiro was attempting to suborn his wife's perjury.   Motion, p. 21.   This is a legal impossibility.   In order for Kelley Tashiro to commit perjury regarding the initial non-disclosure of a hard drive to Malibu, she would have to (i) know the drive existed, (ii) know it was discoverable, and (iii) lie about its existence under oath.   It's apparent (and Malibu asserted on page seven of its Motion) that Mrs. Tashiro was unaware of the hard drive.   Accordingly, there cannot be willfulness.   Further, for perjury to exist, the delayed-disclosure would have to be material.   As soon as Mrs. Tashiro was aware of the hard drive, it (i) was identified, (ii) subsequently supplied to Malibu for inspection, and (iii) showed to not have a single Malibu work on it.   In short, the delayed disclosure was not material.   Further, nothing suggests that Mr. Tashiro secured the agreement of Kelley Tashiro to lie

about the existence of a hard drive – a necessary element of suborning perjury.  No amount of twisting facts and logic can possibly show that Mrs. Tashiro committed perjury or that Mr. Tashiro was, or was going to, suborn perjury.  Therefore, there simply was no conflict to appreciate.

### B.   Any testimony about the hard drive is of no consequence to a conflict

Malibu claims that it is obvious that one of undersigned's clients would have to testify against the other about the aforementioned hard drive.  Motion, p. 20.  Malibu claims that Mr. Tashiro admitted to not disclosing a hard drive to his wife.  Motion, p. 7.  If that is the case, it begs the question of who Malibu thinks was going to testify against whom?  Was Kelley to testify to what Malibu has asserted Mr. Tashiro was already going to state?  If so, there is no conflict, or such a conflict would certainly be waivable.

 Further, what consequence would such testimony have?  None.  Mr. Tashiro was not a party at all times relevant to this discussion.  Malibu did not subpoena Mr. Tashiro for information at the time.  He was not before this Court and was not subject to its jurisdiction.  Again, there would be no conflict, or it would be waivable.

Finally, the late disclosure of the hard drive is of no consequence.  It appears to have been lost to Malibu, in its intense, year long, efforts to have this case won via sanction, that the hard drive was disclosed and contained no Malibu works.  Neither of the defendants needs to "testify against each other" regarding the delay in disclosure of an irrelevant hard drive.

### C.   Malibu's timeline, refuted

Malibu asserts that undersigned should have been aware of a conflict when it had its first motion for sanctions denied on May 14, 2014 and the Court "direct[ed] Plaintiff to refile same after

joining Charles."[3]  Motion, p. 20.  However, if Mr. Tashiro is not a party, it is logically impossible for any conflict to be present.  Malibu then asserts that undersigned should have become aware of a conflict when Mr. Tashiro was added as a defendant on May 15, 2014.  Yet, the motion asserts that it was not until "May 31, 2014 . . . Charles came forward with the Western Digital hard drive . . . ." How could undersigned appreciate the only purported conflict Malibu asserts – the non-disclosed hard drive issue – exist before it was known?

Malibu next declares that Mr. Tashiro came forward with the Western Digital hard drive on May 31, 2014.  Motion, pp. 20-21.  As extensively discussed above, nothing about this raises a conflict.  Malibu then asserts, and emphasizes, that on June 9, 2014, Attorney Nicoletti (being the only attorney of the three that undersigned would have communicated with) informed undersigned of concerns about a conflict.  Even ignoring that undersigned does not recall being asked about the potential conflict, his notes do not reflect that he was asked about a potential conflict, and emails to and from Mr. Nicoletti do not reference the comment, it is manifest that no conflict regarding the disclosure of the Western Digital hard drive existed.

Malibu next claims that, on June 18, 2014, undersigned should have been aware of a conflict because of a discovery request.  Motion, pp. 20-21.  Again, Malibu misses the mark. Malibu attempts to contort the discovery requests' responses in a manner so as to convince this Court that undersigned told a non-party, non-client, to not disclose a device to undersigned's client. Motion, pp. 7, 17 fn. 8, Motion, p. 11 (suggesting that undersigned and Mr. Tashiro (at the time a non-party, non-client) were aware of the hard drive, but not Mrs. Tashiro).  This could not be further from the truth.  The referenced responses stated, "What the Defendant, at the time, solely Kelley Tashiro, was instructed to provide or not to provide for discovery, what was determined to be within

---

[3] Malibu, again, reads a self-serving statement into a plainly worded document, putting words in the Court's mouth. This Court did not direct Malibu to file anything at a later time; it merely granted leave to wait to refile the Motion until it might have N. Charles Tashiro added as a party. (ECF Doc.122).

the bounds of discovery, and the execution of the same is privileged. Without waiving the same, the request is denied as N. Charles Tashiro was not a recipient of any discovery requests." ECF Doc. 137-2, p. 6. <u>Nothing in that response indicates that Mr. Tashiro and undersigned conspired together to delay the disclosure of a drive</u>. Indeed, the response can only be read to state the exact opposite. By manifestly mischaracterizing the response in order to assault the character of undersigned, Malibu only belies the credibility of its own Motion.

Finally, Malibu asserts that on June 20, 2014, when Malibu filed its second (of three) motion for sanctions concerning the late disclosure of a hard drive, a conflict should have been known to be present. Again, nothing suggests that the facts surrounding the late disclosure of a single, immaterial, hard drive create a conflict.

D.   <u>Malibu misconstrues a motion to continue due to conflict</u>

Malibu also repeatedly relies upon Defendant's Motion to Continue Evidentiary Hearing Due to Conflict of Witness and Counsel. Motion, p. 13. That motion was clearly bought due to scheduling conflicts with expert witness Delvan Neville and undersigned. (ECF Doc. 166, ¶¶ 2, 3). Malibu took from that motion that Mr. Tashiro "advis[ed] that he would be prepared to testify and proceed with the hearing under Phillips's representation." Motion, p. 13. Nothing in that motion states as much. It states that Mr. Tashiro did not have a scheduling conflict that day. (ECF Doc. 166, ¶ 5). It further states that the Court could do greater justice by allowing all witnesses to testify. *Id.,* ¶ 6. Given that the motion was brought due to a scheduling conflict of <u>expert witness Delvan Neville</u> it is patently absurd to try to construe this statement into any affirmative statement of, or on behalf of, Mr. Tashiro. This argument is a red herring, and should be disregarded by the Court.

E.   <u>Malibu's excessive fees are not proportional to any alleged sanctionable activity</u>

Even assuming, *arguendo*, that this Court decides that undersigned has acted in a manner that is sanctionable, the sanction for the same must be in line with the gravity of the offense. *Remy*

*Inc. v. Tecnomatic, S.P.A.,* 2013 U.S. Dist. LEXIS 21972, 10 (S.D. Ind. Feb. 19, 2013), *citing,*

*Montaño v. City of Chi.* 535 F.3d 558, 563 (7th Cir. 2008).  During a phone call,[4]  Messrs. Lipscomb

and Cooper represented that they will be seeking easily exceed fifteen thousand dollars.  Malibu

complains that it held "depositions, prepared and filed witness lists, and briefed and filed various

evidentiary motions and motions in limine." *Id.,* p. 6.  Each and every one of these activities are not

impacted by the continuance of the hearing.  Malibu also complains that it undertook "considerable

time and expense creating lengthy outlines and questions for the direct examinations of both Kelley

and Charles," having prepared for "weeks" *Id.* at 6-7.  Malibu complains that it will have to research

"new law and issues."  Motion, p. 12.  Malibu also complains of the costs of drafting its twenty-six

page Motion.  *Id.*  This is a $21,000.00 case that Malibu now has three out-of-state attorney's

litigating.  The entirety of the hard drive dispute has gone on for a year now, even though the hard

drive was disclosed and did not contain any Malibu works.

Malibu fails inform the Court of the gravity of the sanction it seeks.  Motion, p. 1.  Instead, it

states that the Motion is "concerned only with entitlement, the reasonable amount of costs and fees

will be separately addressed at a later date."  Motion, p. 24.  There is no reason for such delay.

Bifurcating this Motion into two pieces is inappropriate.  Malibu had a present duty to prove to this

Court that a sanction it seeks is proportional to the gravity of the offense.  *Remy,* 2013 U.S. Dist.

LEXIS 21972, 10.  To this end, Malibu has failed to meet its burden and the Motion should be

denied on that ground alone.

Next, Malibu is only entitled to amounts that are in excess of what work would/will have

normally been done.  Malibu is not entitled to all of the amounts it complains of.  Items such as

depositions, filing of witness lists, and evidentiary motions were not affected by the continuance.

Indeed, outlines will remain usable with the incorporation of new research.  Further, researching

---

[4] The phone call noted is referenced in ECF Doc. 212, ¶ 4.

new issues is manifestly not related to the continuance – awarding fees for this would solely serve as punishment for asserting Constitutional rights.  The only amounts that could be argued to be in "excess" are travel, and perhaps, a bit of refreshing from the already completed preparation – insofar as the amounts are reasonable.

Even if Malibu did not have to address the amount of the sanction, and was allowed to hold it over this case until some other undisclosed time, it must be accepted that seeking an amount, for the continuance of a single hearing, that outstrips the value of the entirety of Malibu's action is wholly inappropriate for nearly any conduct.[5]  Even assuming, *arguendo,* that undersigned failed to recognize a conflict of interest soon enough, a financially crippling penalty of tens-of-thousands of dollars is not in line with the gravity of the purported offense.

Finally, fee awards should not compensate for excessive time spent on issues not necessary to the litigation.  *Moline v. Trans Union, L.L.C.,* 222 F.R.D. 346, 350 (N.D. Ill. 2004). This is the exact situation in the case at bar.  Three attorneys over litigating a tangential issue (about a hard drive that has been disclosed not containing any Malibu Media files) in a low-value case is clearly excessive and gets this Court no closer to determining whether or not Kelley or Charles Tashiro copied constituent elements of Malibu's works.

## V.  Conclusion

For the reasons stated above, it is respectfully submitted that the Court should deny the Motion for Entitlement to Fees and Sanctions.

Respectfully submitted,

/s/ Jonathan LA Phillips
Shay Phillips, Ltd.
456 Fulton St. | Ste. 255

---

[5] Arguably, even if the sanction was a default judgment against the Defendants, this Court may very well award the $21,000.00 sought and *reasonable* attorney's fees that would be less than the sanction being sought by Malibu for this tangential issue.

Peoria, IL 61602
p | 309.494.6155
f | 309.494.6156
e | jphillips@skplaywers.com
IL ARDC No. 6302752

## CERTIFICATE OF SERVICE

I certify that on March 16, 2015, a copy of the foregoing has been filed with the Clerk of the Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Jonathan LA Phillips

11