UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-00205-WTL-MJD |
| | ) | |
| KELLEY  TASHIRO, | ) | |
| N. CHARLES TASHIRO, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| Jonathan LA Phillips, | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR
ENTITLEMENT TO FEES AND SANCTIONS**

This matter comes before the Court on Plaintiff's Motion for Entitlement to Fees and

Sanctions. [Dkt. 211.] For the reasons that follow, the Magistrate Judge recommends that the

Court **DENY** Plaintiff's motion.

## I.        Background

On February 5, 2013, Malibu Media, LLC ("Plaintiff") filed suit against an unidentified

defendant, alleging that this individual had used a BitTorrent client to infringe the adult movies

on Plaintiff's X-Art website. [*See* Dkt. 1.] The individual was initially known only by her IP

address, but Plaintiff subpoenaed the alleged infringer's ISP to determine that the infringing

activity occurred at the address of Kelley Tashiro ("Kelley"). [*See* Dkt. 14.] Plaintiff accordingly

filed an amended complaint against Kelley on April 8, 2013, [Dkt. 13], and attorney Jonathan Phillips ("Phillips") entered an appearance for her. [Dkt. 19.]

Plaintiff deposed Defendant Kelley on February 25, 2014. [Dkt. 107-1 (Kelley Tashiro Dep., February 24, 2014).] She testified that she had visited adult websites, but she denied searching for Plaintiff's X-Art website. [Kelley Tashiro Dep. 52:12-53:23.] In her answers to Plaintiff's Interrogatories, Defendant Kelley also denied any knowledge of BitTorrent other than that gained through this lawsuit. [Dkt. 76-2 ¶ 13.]

Plaintiff also deposed Kelley's husband, Charles Tashiro ("Charles"). [Dkt 107-2 (Charles Tashiro Dep., February 25, 2014).] He testified that he had used BitTorrent, [Charles Dep. 26:3-27:13], and that he had visited Plaintiff's X-Art website. [Charles Dep. 52:23-53:7.] Thereafter, Plaintiff amended its complaint to add a claim of copyright infringement against Charles. [*See* Dkt. 124.] Plaintiff filed the amended complaint on May 15, 2014, [*id.*], and attorney Phillips began representing both Charles and Kelley. [*See, e.g.*, Dkt. 134.]

During the course of this litigation, Plaintiff also moved for sanctions for alleged spoliation of evidence and perjury. Plaintiff filed its first such motion on February 2, 2014 and asserted that Defendant Kelley had lied when she stated during her deposition that she had never used BitTorrent. [Dkt. 76.] Plaintiff also asserted that Defendant Kelley had deleted numerous files from a hard drive the night before the drive was to be given to a third party for forensic imaging. [*Id.*] The Court denied Plaintiff's motion without prejudice to its resubmission after Plaintiff amended its complaint. [Dkt. 122.] Plaintiff resubmitted the motion on June 20, 2014. [Dkt. 130.] This motion asserted that both defendants had participated in the deletion of files and that both defendants had withheld a separate hard drive from Plaintiff. [*Id.*] Finally, Plaintiff

2

supplemented its motion for sanctions on October 1, 2014, alleging that new evidence showed that both Defendants had perjured themselves during their depositions. [Dkt. 159.]

On November 25, 2014, the Court set Plaintiff's motion for an evidentiary hearing to be held on January 22, 2015. [Dkt. 165.] Defendants' counsel informed the court that both he and his expert witness had conflicts on that date, [Dkt. 166], and the Court accordingly rescheduled the hearing for January 29, 2015. [Dkt. 167.]

On the morning of the scheduled hearing, attorney Phillips advised the Court that Defendant Charles had decided to invoke his Fifth Amendment right to avoid testifying about certain matters. [Dkt. 206.] Phillips explained that he had learned of Charles' intent only hours before the hearing. [*Id.*] He concluded that Charles' invocation of his Fifth Amendment rights created a conflict of interest between Defendants Charles and Kelley, and he committed to withdrawing as Charles' attorney. [*Id.*] In light of these events, and in the interest of affording Charles the opportunity to be represented by counsel, the Court continued the evidentiary hearing until April 30, 2015. [*Id.*]

On February 13, 2015, the Court granted Phillips' motion to withdraw as Charles' attorney. [Dkt. 210.] Attorney Erin Russell subsequently entered an appearance on behalf of Defendant Charles. [Dkt. 216.]

After the hearing was postponed, Plaintiff filed the currently pending Motion for Entitlement to Fees and Sanctions. [Dkt. 211.] Plaintiff seeks an order holding Defendant Charles and attorney Phillips jointly and severally liable for the costs and fees incurred in Plaintiff's preparations for the January 29, 2015 evidentiary hearing. [*Id.* at 1, 25.] Mr. Phillips responded on his own behalf on March 16, 2015, [Dkt. 221], and Defendant Charles responded through his new counsel on April 1, 2015. [Dkt. 225.]

## II.      Discussion

Plaintiff's primary argument is that Phillips' failure to timely recognize the conflict of interest between Defendant Charles and Defendant Kelley led to unnecessary preparation for and delay of the January 2015 evidentiary hearing. [Dkt. 211 at 8-9.] Plaintiff asserts that it incurred several thousand dollars in fees, travel expenses, and other costs in preparing for the delayed hearing, and Plaintiff now contends that it is entitled to recover such fees, expenses, and costs 1) under Federal Rule of Civil Procedure 37; 2) under 28 U.S.C. § 1927; 3) through an exercise of the Court's inherent authority; and 4) under Federal Rule of Civil Procedure 16. [Dkt. 211 at 1.]

### A. Federal Rule of Civil Procedure 37

Rule 37 generally applies to disputes or misconduct during discovery. *See* Fed. R. Civ. P. 37; *see also Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994) ("Rule 37 sanctions, then, are appropriate here if, and only if, [defendant] violated a discovery order."). Thus, even if Plaintiff's underlying motion for sanctions relates to discovery misconduct, the rule is not readily applicable to Plaintiff's current motion for sanctions due to Phillips' alleged failure to appreciate a conflict of interest. In addition, the only specific subsection of Rule 37 that Plaintiff cites is Rule 37(d)(3). [*See* Dkt. 211 at 8.] That subsection applies only to situations in which a party fails to appear for a deposition, fails to serve responses to interrogatories, or fails to serve a response to a request for inspection. Fed. R. Civ. P 37(d)(1)(A). The preparation for and delay of the January 2015 evidentiary hearing did not result from any such conduct, and Rule 37 is thus inapplicable to Charles' and Phillips' alleged misconduct. As such, this rule does not entitle Plaintiff to the relief it seeks.

### B. 28 U.S.C. § 1927

Plaintiff next asserts that 28 U.S.C. § 1927 entitles it to an award of fees and expenses. [Dkt. 211 at 9.] This section provides that an attorney "who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An attorney acts "unreasonably and vexatiously" if he acts with either subjective or objective bad faith. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). Plaintiff in this case argues only that Plaintiff acted with "objective" bad faith. [Dkt. 211 at 9-10.] The standard for such conduct "does not require a finding of malice or ill will; reckless indifference to the law will qualify. If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Dal Pozzo*, 463 F.3d at 614 (citations and internal quotation marks omitted).

Plaintiff contends that a reasonably careful attorney in Phillips' situation would not have attempted to represent both Defendant Charles and Defendant Kelley because the conflict of interest between the two was obvious. [Dkt. 211 at 20.] In Indiana, a conflict of interest exists if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]" Ind. Rules of Prof'l Conduct R. 1.7(a). Notwithstanding such a conflict, a lawyer may jointly represent two clients if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client[.]" *Id.* R. 1.7(b).[1]

Plaintiff first argues that a conflict of interest was apparent from the date that Plaintiff named both Kelley and Charles as Defendants in Plaintiff's Second Amended Complaint. Because the alleged infringement occurred at the house shared by Defendants, Plaintiff argues

---

[1] Rule 1.7(b) also requires that the representation not be prohibited by law; that it not involve the same attorney representing parties on both sides of the same case; and that that the affected clients give informed consent. Ind. Rules of Prof'l Conduct R. 1.7(b). The parties have not raised any dispute about whether these conditions were satisfied.

that it was obvious that each defendant would have an incentive to blame the other for any infringement that had occurred. [Dkt. 224 at 3-4.] Plaintiff's counsel also asserts that he notified Phillips about this alleged conflict and advised Phillips that he might not be able to concurrently represent Kelley and Charles. [Dkt. 211 at 20-21; Dkt. 224 at 4.]  Such notification, according to Plaintiff, underscores the fact that Phillips was not "reasonably careful" in ignoring the alleged conflict until the date of the January hearing. [*See* Dkt. 211 at 20-21.]

This argument overlooks the fact that Kelley and Charles have consistently maintained that no infringement occurred. Defendants' answers to the Second Amendment Complaint, for instance, specifically denied Plaintiff's claim that the alleged "infringement . . .  emanated from Defendant's household." [Dkt. 127 ¶ 22; Dkt. 156 ¶ 22.] Similarly, both answers denied that any infringement occurred at all. [*See, e.g.*, Dkt. 127 ¶ 54; Dkt. 156 ¶ 54.] Finally, Defendants both indicated that were prepared to testify at the evidentiary hearing that no infringement of Plaintiff's works had occurred. [*See* Dkt. 168 at 1-2.] Defendants thus adopted a consistent position that allowed attorney Phillips to argue on Defendants' behalf without compromising his duty of loyalty to either client.

The Indiana Rules of Professional Conduct also indicate that Phillips' representation was permissible. First, the rules note that conflicts may develop in situations involving common representation "by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." Ind. Rules of Prof'l Conduct R. 1.7 cmt. 23. As explained above, however, this case involved no "incompatibility in positions" because both Defendants consistently maintained that no infringement occurred.

Second, the Indiana rules expressly note that "common representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met." Ind. Rules of Prof'l Conduct R. 1.7 cmt. 23. As explained above, the only condition of paragraph 1.7(b) at issue in this case is whether Phillips "reasonably believe[d]" that he could provide competent and diligent representation to both Kelley and Charles. Given the previously described consistency of their positions, the Court does not find that such a belief was unreasonable. *Cf. U.S. ex rel. Williams v. Franzen*, 687 F.2d 944, 950 (7th Cir. 1982) (emphasis added) ("[W]here two or more defendants have **inconsistent** stories relating to the crime charged, joint representation is impermissible.").

Plaintiff then argues that a clear conflict developed as the litigation progressed. [*See, e.g.*, Dkt. 211 at 4; Dkt. 224 at 5.]  In June 2014, Plaintiff filed the motion for sanctions that asserted that certain files had been deleted from one of the hard drives in the Tashiro household. [Dkt. 130 at 3-4.] This assertion could have created a conflict, as each Defendant could have argued that any deletion was done by the other defendant.

Then, in October 2014, Plaintiff filed its supplement to its motion for sanctions. There, Plaintiff noted that, in his response to Plaintiff's requests for admissions, Defendant Charles admitted that he had used the hard drive that was not disclosed on the night before the drive was to be turned over for forensic imaging. [Dkt. 159 at 5.] This indicates that Charles knew about the hard drive, but that Defendants nonetheless did not produce the drive for inspection. This, in turn, could have created another conflict: Charles could have argued that, after using the hard drive, he gave it to Kelley, only to have Kelley refuse to provide it to Plaintiff. Kelley, in contrast, could have argued that Charles had concealed his use of the hard drive, such that her failure to produce the drive was not an effort to knowingly conceal evidence.

As with Plaintiff's arguments about the merits of the case, however, Plaintiff's arguments about the alleged discovery violations overlook the fact that Defendants never actually adopted inconsistent positions. First, in regard to the deletion of files, Defendants maintained that "no evidence was destroyed" because any deleted files were actually recoverable, [Dkt. 137 at 3], and they sought expert testimony to support this contention. [*See* Dkt. 137-1 (Decl. of Expert Witness Delvan Neville).] Thus, regardless of the allegation of spoliation, Defendants continued to assert compatible positions.

Second, in regard to non-disclosure of the hard drive, Defendants maintained that Kelley did not know about the drive, and that Charles did not know that the drive was encompassed by Plaintiff's discovery requests. [Dkt. 160 at 4.] The parties did not attempt to escape liability by blaming each other; instead, they offered an innocuous explanation for what occurred. Phillips was thus able to advance both Defendants' interests without compromising his duty to either party.

Plaintiff then contends that even if the parties never *actually* took inconsistent positions, a conflict of interest was still present because the *potential* for inconsistency existed. As Plaintiff notes, [Dkt. 211 at 20 n.11], a conflict exists if "there is a **significant risk** that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]" Ind. Rules of Prof'l Conduct R. 1.7(a)(2) (emphasis added). Plaintiff thus maintains that Defendants' "likely" conflict of interests should have mandated Phillips' earlier withdrawal. [*See* Dkt. 211 at 20.]

The Rules of Professional Conduct, however, do not require such a withdrawal. Even if a "significant risk" of a material limitation exists, a lawyer, as noted above, may undertake the representation if the lawyer "reasonably believes that [he] will be able to provide competent and

diligent representation to each affected client[.]" Ind. Rules of Prof'l Conduct R. 1.7(b)(1). Here, the Court finds that Phillips' belief that he could concurrently represent both Charles and Kelley was reasonable, regardless of Plaintiff's motions for sanctions. First, as described above, the Defendants had legitimate and consistent explanations for their alleged misconduct. Phillips thus had a basis to believe that he could advocate his clients' position without limiting his representation to either one.

Second, the Defendants were husband and wife: Phillips thus had a basis to believe that neither Defendant would wish to adopt a position requiring the Defendant to testify against or otherwise harm the other Defendant.[2] Avoiding such positions would have allowed Phillips to avoid harming either client's interests, such that he could—and did—reasonably believe that his representation was appropriate. As a result, Phillips had no conflict of interest that required an earlier withdrawal, such that his concurrent representation did not exhibit the sort of "reckless indifference to the law," *Dal Pozzo*, 463 F.3d at 614, necessary to impose sanctions under 28 U.S.C. § 1927.

Plaintiff also faults Phillips for allegedly misrepresenting the willingness of his client to testify at the January 2015 evidentiary hearing. [Dkt. 211 at 13.] This argument relies on Phillips' request that the hearing be moved from January 22 to January 29. In so moving, Phillips noted that his expert witness—Delvan Neville—had a conflict that prevented him from attending

---

[2] Plaintiff recognizes as much when it writes that Defendant Kelley may "attempt to rely upon a spousal immunity privilege" to avoid testifying against Charles. [Dkt. 211 at 12.] Indeed, the very existence of the spousal immunity privilege indicates the importance of protecting the husband-wife relationship. In *Trammel v. United States*, for instance, the Supreme Court concluded that this "interest in marital harmony" was important enough to "outweigh the need for probative evidence in the administration of criminal justice." 445 U.S. 40, 51-53 (1980); *see also, e.g.*, *Mitchell v. Renico*, No. 1:04CV135, 2006 WL 3446565, at *9 (W.D. Mich. Nov. 28, 2006) (citations and quotation omitted) ("In other words, where the privilege applies, its goal of promoting marital harmony has been deemed to outweigh the harm it causes to the search for truth."). By analogy to such cases, Phillips had a basis to reasonably believe that his clients' interest in protecting their marriage would have outweighed any fleeting tactical advantage they might have gained by adopting adverse positions.

9

the January 22 hearing. [Dkt. 166 ¶ 3.] Phillips then requested a different date and noted that the "Court could do greater justice by allowing all witnesses to testify, which can occur on January 27th, 2015 through January 29th, 2015." [*Id.* ¶ 6.]

Plaintiff seizes on the "all witnesses" language as an affirmative representation that Defendant Charles "would be prepared to testify and proceed with the hearing under Phillips's representation on dates between January 27, 2015 through January 29, 2015." [Dkt. 211 at 13.] This argument borders on the absurd: it is obvious that the "all witnesses" language refers to Delvan Neville, not Charles Tashiro, and Defendant's motion for a continuance was in no way an attempt to misrepresent that Charles would testify.

Plaintiff could have made a stronger argument on this point by looking to Defendants' proposed witness list. That list indicates that "Charles Tashiro will testify . . . that he never used BitTorrent to download any Malibu Media, LLC works," that "he provided his wife with all hard drives that he understood to be relevant to this litigation," and that "he never purposefully, knowingly, or intentionally deleted any Malibu Media, LLC files from any hard drives." [Dkt. 168 at 2.] This proposed testimony is obviously inconsistent with Charles' later decision to invoke his Fifth Amendment rights, and so Plaintiff could have argued that its reliance on the witness list led it to incur costs in preparing for an examination of Defendant Charles that never happened.

As it is, however, Plaintiff did not reference the witness list, and in any case, the Court finds that the list is simply evidence that—until the date of the hearing itself—Phillips was under the impression that Charles was indeed going to testify.[3] Far from setting a trap for Plaintiff, that

---

[3] In response to Plaintiff's motion, Defendant Charles executed an affidavit supporting this conclusion. [Dkt. 221-5.] There, Charles stated that "until very early in the morning on January 29, 2015," he "never had any conversation with Mr. Phillips in which the possibility of [Charles] not providing testimony on all issues in this case was

is, it seems Phillips was just as surprised by Charles' decision not testify as were Plaintiff's attorneys. In light of this abrupt decision on Charles' part, the Court cannot say the Phillips proceeded recklessly or "unreasonably" in preparing for the hearing, such that sanctions under 28 U.S.C. § 1927 are not appropriate.  See *Dal Pozzo*, 463 F.3d at 614.

Next, even if the Court did conclude that Phillips had proceeded culpably, the Court would not award Plaintiff all costs and fees it seeks. Plaintiff, for instance, seeks an award of fees incurred in preparing for the examination of Defendants Charles and Kelley. [Dkt. 211 at 11-12.] Section 1927, however, applies only to "the *excess* costs, expenses, and attorney's fees incurred" because of the opposing attorney's conduct. *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994) (emphasis original). Thus, the statute covers only the expenses and fees "*that otherwise would not have been incurred.*" *Id.* (emphasis original) (quotation marks and alterations omitted); *see also Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (restricting § 1927 to "unnecessary" costs).

In this case, it is not at all clear that preparing the outline for the January 29 hearing was unnecessary or that Plaintiff would have refrained from preparing such an outline had Phillips withdrawn at an earlier date. Although it appears that Defendant Charles plans to invoke the Fifth Amendment at the rescheduled hearing, a defendant in a civil case may not simply use the Fifth Amendment to avoid testifying altogether. Such "a blanket invocation of the Fifth Amendment is not proper," and a civil litigant must therefore answer all questions *except* those that will actually expose the defendant to a danger of prosecution. *See, e.g.*, *Hillmann v. City of Chicago*, 918 F. Supp. 2d 775, 779-80 (N.D. Ill. 2013); *see also Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 599 (3d Cir. 1980) ("[T]he witness must appear and assert the

---

discussed." [*Id.* ¶¶ 5-6.] Phillips' proposed witness list was thus consistent with his understanding of Charles' testimony at the time that Phillips filed the list.

[F]ifth [A]mendment privilege as specific questions are asked[.]"); *United States v. Awerkamp*, 497 F.2d 832, 836 (7th Cir. 1974) (citation omitted) ("In responding to a summons, the individual summoned must present himself for questioning and 'claim the constitutional privilege as particular questions are asked.'"); *Battle v. City of Reading*, No. CIV. A. 90-7660, 1991 WL 208899, at *5 (E.D. Pa. Oct. 8, 1991), *aff'd*, 968 F.2d 12 (3d Cir. 1992) (citations omitted) ("In a civil case, it is permissible for an attorney to call a witness even though the attorney suspects that the witness may invoke the Fifth Amendment. This is because a witness in a civil case cannot invoke the 'blanket' protection of the Fifth Amendment which is available to a criminal defendant; the civil witness can only invoke the Fifth Amendment to avoid answering specific questions. The civil witness must therefore take the stand before invoking the Fifth Amendment.").

Thus, even if Defendant Charles intends to invoke the amendment with respect to some questions, much of Plaintiff's attorneys' examination outline may prove useable. Charles, for instance, may choose to invoke the Fifth Amendment to avoid answering questions about his allegedly false deposition testimony, [*see* Dkt. 159 at 3 (asserting that Charles lied about using BitTorrent)], but may still answer questions about other subjects, such as the alleged concealment of the hard drive. It is thus an exaggeration for Plaintiff to assert that all effort used to produce the outline was wasted.

Moreover, even if Charles does invoke the Fifth Amendment with respect to certain questions, these questions will still be useful to Plaintiff's attorneys. In civil litigation, invocation of the Fifth Amendment allows a fact-finder to infer that the witness's testimony would have been damaging to his interest. *See, e.g.*, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties

to civil actions when they refuse to testify in response to probative evidence offered against them[.]"). Plaintiff's attorneys thus may be able to use the examination outlines they have already prepared, and, when Defendant Charles refuses to answer certain questions, the Court may weigh that refusal in its ultimate determination of whether sanctions for spoliation of evidence or perjury are warranted. Hence, even if Phillips had earlier alerted Plaintiff's counsel to the potential that Charles would invoke his Fifth Amendment rights, Plaintiff's counsel would still have had a reason to prepare examination outlines for Charles. Preparation of these outlines therefore was not wasted effort, such that awarding fees for this preparation is not appropriate.

Preparing the outline for Kelley's examination likewise was not unnecessary. Plaintiff asserts that Kelley may invoke the "spousal immunity privilege . . . to limit her testimony," [Dkt. 211 at 12], but such an invocation would be ineffective, as this privilege is generally not available in civil trials. *See, e.g.*, *Stanfield v. Dart*, No. 10 C 06569, 2011 WL 5301784, at *1 (N.D. Ill. Nov. 3, 2011) ("[T]he marital testimonial privilege has historically been available to a witness-spouse only in a federal criminal proceeding, and not in a civil proceeding[.]"). Further, to the extent Plaintiff claims that Kelley may offer "some other basis" to limit her testimony, [Dkt. 211 at 12], this assertion is simply too vague justify a grant of fees for preparing Kelley's outline. Plaintiff has not explained why such "other basis" would be available only as a result of Phillips' withdrawal as counsel for Charles, and the Court can discern none: if Kelley has a valid reason to limit her testimony, then she may assert that reason regardless of whether Phillips or some other attorney is representing her husband. As a result, Plaintiff has failed to adequately establish its entitlement to fees for preparing Kelley's examination outline. *See, e.g.*, *Vandeventer v. Wabash Nat. Corp.*, 893 F. Supp. 827, 842 (N.D. Ind. 1995) (noting that party seeking fees has the burden to show that fees are warranted).

For all these reasons, the Magistrate Judge concludes that attorney Phillips did not act "unreasonably and vexatiously" within the meaning of 28 U.S.C. § 1927, and that, even if Phillips had so acted, Plaintiff's requested relief far exceeds the costs attributable to Phillips' purported misconduct. The Magistrate Judge accordingly recommends that Plaintiff's motion be **DENIED** with respect to the claim of entitlement under 28 U.S.C. § 1927

### C. The Court's Inherent Authority

Plaintiff also argues that the Court should use its inherent authority to sanction Defendant Charles and attorney Phillips. [Dkt. 211 1, 8-9.] This authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)). The Court must use this authority "with restraint and discretion" and only when a party has engaged in "conduct which abuses the judicial process." *Id.* at 44-45. Awards of attorneys' fees—such as those that Plaintiff requests in this case—are appropriate in "narrowly defined circumstances," as when a party willfully disobeys a court order or acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* at 45-46.

As described above, the Court has already determined that sanctions are not appropriate against attorney Phillips under § 1927. The Court has thus determined that Phillips did not act unreasonably or vexatiously, implying that an award of sanctions pursuant to the Court's inherent powers would likewise be improper. *See, e.g., Fail-Safe, LLC v. A.O. Smith Corp.*, No. 08-CV-310, 2011 WL 1002838, at *1 (E.D. Wis. Mar. 18, 2011) (internal quotation marks and alterations omitted) ("While Section 1927 and the court's inherent powers provide separate means by which the court can impose sanctions, ultimately the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is

14

that awards under § 1927 are made only against attorneys while an award made under the court's inherent power may be made against an attorney, a party, or both.")

Further, even considering whether the Court's inherent powers apply to Phillips' conduct is not necessarily appropriate. *See Dal Pozzo*, 463 at 614 (citations omitted) ("Two sources of authority fit this situation: either 28 U.S.C. § 1927 or the inherent power of the court. Since the inherent power of the court 'is a residual authority, to be exercised sparingly' and only when other rules do not provide sufficient basis for sanctions, we will presume [the district court's] sanctions to have been the product of § 1927."). The Court will therefore rely on its § 1927 determination to conclude that sanctions against Phillips are not warranted.

The only remaining question is thus whether the Court may use its inherent authority to sanction Defendant Charles. In response to Plaintiff's motion, Charles executed a declaration stating that he "never had a conversation with . . . Jonathan LA Phillips, about invoking [his] rights under the Fifth Amendment until very early in the morning on January 29, 2015." [Dkt. 225-1 ¶ 5.] "Prior to that time, [Charles] never had any conversation with Mr. Phillips in which the possibility of [Charles] not providing testimony on all issues in this case was discussed." [*Id.* ¶ 6.] Based on this representation, Charles' decision to invoke his Fifth Amendment rights at the time that he did was not an attempt to "abuse[] the judicial process" and was not the result of "bad faith" or other culpable behavior. *Chambers*, 501 U.S. at 43. Rather, Charles simply invoked his rights as soon as he was aware of them. Sanctions against Charles therefore are not warranted.[4]

---

[4] In reply, Plaintiff argues that even if Defendant's own conduct was not sanctionable, Defendant is still be liable for any misconduct by his attorney. [Dkt. 226 at 4.] This may be true, but, as described above, the Court has found that attorney Phillips did not engage in any sanctionable conduct, such that Defendant Charles likewise cannot be sanctioned for Phillips' conduct.

Plaintiff resists this conclusion on the grounds that Defendant invoked his Fifth Amendment rights for an improper purpose. [Dkt. 226 at 5.] As Plaintiff notes, Defendant stated in his response that he decided to invoke his Fifth Amendment rights because he was concerned about Plaintiff's "conduct in the litigation." [Dkt. 225 at 3.] Defendant, that is, was "convinced that [Plaintiff] would proceed against him in any way possible," even if Plaintiff could not prove its underlying copyright infringement claim. [*Id.*] Plaintiff's reply interprets this language as an admission that Defendant did not invoke his Fifth Amendment rights in good faith. As support, Plaintiff cites *Martin-Trigona v. Gouletas*, in which the Seventh Circuit wrote that Fifth Amendment rights may be validly exercised only when a court finds that there is a "credible reason why a response would pose a real danger of incrimination[.]" 634 F.2d 354, 360 (7th Cir. 1980). Plaintiff argues that Defendant's concern about Plaintiff's conduct does not amount to such a "credible reason," such that Defendant's invocation was "improper." [Dkt. 226 at 5.]

The Court does not agree. Plaintiff has argued at length in these proceedings that Defendant faces a mountain of damning evidence that confirms that Defendant perjured himself or suborned the perjury of his wife. [*See, e.g.*, Dkt. 159 at 1 (stating that "further evidence of perjury has come to light"); Dkt. 211 at 1 (describing "pervasive and ongoing" discovery violations); Dkt. 224 at 5 (referring to "obvious[]" suppression of evidence).] Based on these allegations, there is in fact a "credible reason" to believe that Defendant could incriminate himself if required to testify, such that invocation of his Fifth Amendment rights was proper. *See Martin-Trigona*, 634 F.2d at 360. In addition, even if Defendant phrases this threat of incrimination as concern about Plaintiff's "conduct in the litigation," the Court does not find such phrasing objectionable. As part of its conduct of this litigation, Plaintiff *has accused Defendant of a crime*: Plaintiff's accusation is thus the very reason that Defendant faces a threat

16

of self-incrimination, and for Defendant to invoke his Fifth Amendment rights as a response to that accusation is not improper. As a result, sanctions against Defendant Charles are not appropriate.

This conclusion is also consistent with the purpose of the Court's inherent authority. Inherent powers are to be used "to reprimand the offender" and "to deter future parties from trampling upon the integrity of the court." *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003). In this case, Charles does not deserve reprimand: If, as stated in his declaration, he never discussed the possibility of invoking his Fifth Amendment rights until the morning of the hearing, then he exhibited no dilatory or otherwise culpable conduct and hence was not an "offender" at all. Similarly, sanctioning Charles himself will do little to deter future dilatory conduct. Charles is not in a position to advise other parties in other cases about their rights, and the impact of any sanction applied to Charles would thus be limited to the case currently before the Court. Based on these considerations, the Magistrate Judge recommends that Defendant Charles not be sanctioned.

**D.  Federal Rule of Civil Procedure 16**

Plaintiff finally asks the Court to impose sanctions under Rule 16(f). [Dkt. 211 at 1, 8.] This rule provides that a court may issue sanctions "if a party or its attorney: (A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). Plaintiff acknowledges that this rule primarily applies to pretrial conferences, rather than contested matters, but asserts that courts have nevertheless expanded Rule 16(f) to include matters such as the evidentiary hearing in this case. [Dkt. 211 at 8.]

17

As support for this proposition, Plaintiff cites *In re Martin*, 350 B.R. 812, 815 (Bankr. N.D. Ind. 2006). [*Id.*] This is one of several cases from the Bankruptcy Court of the Northern District of Indiana, all of which conclude that Rule 16(f) should apply not only to conferences, but also to hearings, trials, and other contested matters. *See, e.g.*, *In re Parlor*, No. 07-22134-JPK, 2007 WL 4893483, at *1 (Bankr. N.D. Ind. Dec. 20, 2007); *In re Szymanski*, 344 B.R. 891, 894 (Bankr. N.D. Ind. 2006); *In re Shirar*, No. 04-40519, 2006 WL 2037327, at *1 (Bankr. N.D. Ind. Apr. 19, 2006); *In re Philbert*, 340 B.R. 886, 890 (Bankr. N.D. Ind. 2006).

These cases, however, rely for their conclusion at least in part on their court's local bankruptcy rules. *See, e.g.*, *Parlor*, 2007 WL 4893483, at *1 ("[B]y operation of N.D. Ind. L.B.R. B–9014–2(b), the provisions of Rule 16(f) of the Federal Rules of Civil Procedure apply in contested matters."). These cases also acknowledge that Rule 16(f), by its very terms, does not apply to contested matters. *See, e.g.*, *Philbert*, 340 B.R. at 888. Finally, other courts have taken a much more restrictive view of Rule 16(f). *See, e.g.*, *Figueroa-Rodriguez v. Lopez-Rivera*, 878 F.2d 1488, 1491 (1st Cir. 1988) ("[Rule 16(f)] is narrow-gauged. It authorizes the imposition of sanctions in only four specific instances: (1) failure to obey a scheduling or pretrial order, (2) failure to appear at a scheduling or pretrial conference, (3) substantial unpreparedness on the occasion of such a conference, or (4) failure to participate in such a conference in good faith."); *see also Lillie v. United States*, 40 F.3d 1105, 1110 (10th Cir. 1994) (same). Because the current motion does not involve a scheduling conference or other sort of pre-trial conference, it is thus unclear that Rule 16(f) is even the appropriate rule under which Plaintiff should seek sanctions.

Moreover, even if Rule 16(f) did apply, the rule would not change the disposition of Plaintiff's motion. Under the standard articulated in the cases upon which Plaintiff relies, imposition of sanctions under Rule 16(f) "does not depend upon a finding of bad faith,

willfulness, or contumaciousness." *Martin*, 350 B.R. at 816. Instead, mere "negligence will suffice." *Id.* An award of fees for such negligence is "almost, but not quite, mandatory," *id.*, in that sanctions are appropriate unless the negligent conduct was "substantially justified" or if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

Here, the Court has already determined that Phillips' conduct was reasonable for the purposes of 28 U.S.C. § 1927. As such, his conduct also was not negligent for the purposes of Rule 16(f). With respect to Charles, Plaintiff has not established what conduct was allegedly negligent. As noted above, Charles invoked his Fifth Amendment rights as soon as he was aware of them, such that he displayed no negligence in doing so. In addition, the Court finds that it would be "unjust" to sanction Charles for invoking his constitutional rights, such that sanctions would be inappropriate for this reason as well.[5] As a result, Rule 16(f) changes no part of the Court's previous analysis, and the Magistrate Judge accordingly recommends that no sanctions should be imposed.

### E.  Failure to Comply with Rule 7-1(g)

Finally, the Magistrate Judge recommends that Plaintiff's motion be denied for Plaintiff's failure to comply with Local Rule 7-1(g). That rule provides that a motion for attorney's fees (other than post-judgment fees) will not be granted unless "the movant's attorney files with the motion a statement showing that the attorney made reasonable efforts to confer with opposing

---

[5] In reply, Plaintiff emphasizes that it seeks sanctions only as compensation for its wasted time and effort, rather than as punishment for Defendant's invocation of his Fifth Amendment rights. [Dkt. 226 at 5-6.] Plaintiff would thus distinguish between Defendant's Fifth Amendment invocation itself and the *timing* of that invocation. The Court is not inclined to engage in such fine line-drawing exercises to determine at what point in a proceeding a party's constitutional rights may be validly burdened. Further, Defendant's declaration—as noted above—indicates that he invoked his rights as soon as he first had a conversation about the possibility of doing so. Hence, Defendant did not delay in invoking his rights once he was aware of them, such that it would be inappropriate to penalize Defendant for the timing of his invocation.

counsel." S.D. Ind. L.R. 7-1(g)(1). Plaintiff did not file such a statement, but argues that the rule is discretionary because it uses the word "may." [Dkt. 224 at 7.]

This argument is meritless. The rule states as follows: "The court **may not grant** the following motions **unless** the movant's attorney files with the motion a statement showing that the attorney made reasonable efforts to confer with opposing counsel and resolve the matters raised in the motion[.]" S.D. Ind. L.R. 7-1(g)(1) (emphasis added). The word "unless" plainly indicates that filing the statement is a condition precedent to the award of fees, such that filing the statement is in fact mandatory.

Plaintiff also notes that, after filing its motion, it attempted to confer with attorney Phillips and that the conferral did not resolve the dispute. [Dkt. 224 at 7-8.] Even if the Court were inclined to accept this belated conference, it would not change the disposition of this matter. For the reasons discussed in the previous sections, Plaintiff is not entitled to fees or sanctions, regardless of whether Plaintiff complied with Local Rule 7-1(g), and again, the Magistrate Judge recommends that Plaintiff's motion be denied.

### III.    Conclusion

For the reasons set forth above, the Magistrate Judge recommends that the Court **DENY** Plaintiff's Motion for Entitlement to Fees and Sanctions. [Dkt. 211.] Any objections to the Magistrate Judge's recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  04/15/2015

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

20

Distribution:

Jonathan LA Phillips
jphillips@skplawyers.com

Jason H. Cooper
LIPSCOMB, EISENBERG & BAKER, PL
jcooper@lebfirm.com

Michael K. Lipscomb
LIPSCOMB, EISENBERG & BAKER, PL
klipscomb@lebfirm.com

Paul J. Nicoletti
NICOLETTI LAW, PLC
paul@nicoletti-associates.com

Jonathan LA Phillips
SHAY KEPPLE PHILLIPS, LTD
jphillips@skplawyers.com

Erin Kathryn Russell
THE RUSSELL FIRM
erin@russellfirmchicago.com