**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT INDIANA**

MALIBU MEDIA, LLC,                    )
                                      )
            Plaintiff,                )    Civil Case No. 1:13-cv-00205-WTL-MJD
                                      )
v.                                    )
                                      )
KELLEY TASHIRO,                       )
N. CHARLES TASHIRO                    )
                                      )
            Defendants.               )
_____      )

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF REPORT AND**
**RECOMMENDATION [CM/ECF 228]**

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned Counsel, files

this motion for reconsideration of Your Honor's Report and Recommendation on Plaintiff's

Motion for Entitlement to Fees and Sanctions, and submits the following memorandum.

**I.      INTRODUCTION**

Among other things, this motion asks Your Honor to reconsider your finding that, until

the morning of the rescheduled hearing, Attorney Jonathan LA Phillips, Esq. ("Defense

Counsel") possessed a reasonable belief that he could provide competent and diligent

representation to co-defendants Kelley Tashiro ("Kelley") and N. Charles Tashiro ("Charles").

Your Honor's finding regarding the reasonableness of Defense Counsel's belief conflated

subjective surprise with the obligation to avoid being surprised in the first instance.  Indeed, it is

objectively unreasonable for an attorney to fail to advise his client of his right against self-

incrimination during the seven month pendency of a motion for sanctions asserting his client

committed perjury, suppressed and destroyed evidence, and was obstructing justice.

Additionally, the reasonableness of Defense Counsel's belief that he would be able to

provide competent and diligent representation to Kelley and Charles is not the end of the inquiry. Instead, it is the beginning.  As Your Honor held, Indiana Bar Rule 1.7 governs what is reasonable here.  It states:

> Notwithstanding the [significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client], a lawyer may represent a client if:
>
> (1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; *and*
>
> (4) each affected client gives informed consent, confirmed in writing.

Ind. R. Prof'l Cond. 1.7(b) (emphasis added).

Here, Defense counsel cannot satisfy either prongs two or three.  Indeed, as explained below, the representation of both Charles and Kelley was prohibited by law and it involved the assertion of a claim by one client against the other.  Further, prong four was also likely not performed.  For these reasons, as explained below, Plaintiff respectfully requests that Your Honor enter an order that finds Defense Counsel unreasonably multiplied the proceedings in violation of 28 U.S.C. § 1927.

## II.    FACTS

Defense Counsel was attorney of record for co-defendants Kelley and Charles.  *See* CM/ECF 13 & 124.  Defense Counsel presumably believed he could represent them both since Kelley and Charles have a joint bank account and aligned financial interests.  *See* CM/ECF 235 at p. 59.  On June 20, 2014, however, Plaintiff moved for sanctions against both Kelley and Charles for their independent perjury, spoliation, suppression of evidence, and obstruction of

justice.  *See* CM/ECF 130; 228 at p. 2.  Consequently, Plaintiff put each of their respective liberty interests at stake.  *See id.*  This changed the conflict analysis.

Regarding the financial interest-liberty interest dichotomy, it may be reasonable to assume a waivable conflict exists if two people with perfectly aligned financial interests are only being sued over money; but when a party's liberty interests are threatened, there is no such similar overlap of interests.[1]  If Kelley or Charles desired to plead the Fifth, it is a strong indicator of guilt with respect to the alleged perjury, spoliation, suppression of evidence, and obstruction of justice.  Defense Counsel explicitly or intuitively appreciated the financial-liberty interest dichotomy.  This is presumably why Charles's decision to invoke the Fifth Amendment caused Defense Counsel to reasonably believe his conflict of interest was unwaivable.  Significantly, the appreciation of the unwaivable nature of Defense Counsel's conflict admittedly occurred in connection with his advising Charles about his Fifth Amendment right.

Defense Counsel knew the substantive import and availability of the Fifth Amendment privilege, and realized he could not continue to represent both defendants at the sanctions hearing if one were to invoke the Fifth Amendment.[2]  And yet for the seven months leading up to the hearing, Defense Counsel maintained the dual representation without ever advising his clients of their Fifth Amendment rights.

Only on the morning of the evidentiary hearing did Defense Counsel first advise Charles

---

[1] It is axiomatic that a court may refer a civil litigant to the U.S. Attorney's office for criminal prosecution based on perjury and obstruction of justice in a civil case.  *See, e.g.*, *AF Holdings, LLC v. Does*, 752 F.3d 990, 993 (D.C. Cir. 2014) (referring litigants for investigation by federal law enforcement at the direction of the United States Attorney); *Cooper v. Steele*, No. 13-cv-2622, 2014 WL 3734255, *3 (D. Minn. July 29, 2014) (same); *Lightspeed Media Corp. v. Smith*, No. CV 12-889, 2013 WL 6225093, *5 (S.D. Ill. Nov. 27, 2013) (same); *AF Holdings, LLC v. John Does*, No. 0:12-cv-01445, CM/ECF 67 at p. 9 (D. Minn. Nov. 6, 2013) (same).

[2] Defense Counsel's awareness of his likely conflict of interest is not disputed.  As thoroughly addressed in Plaintiff's motion, the conflict was expressly and affirmatively brought to Defense Counsel's attention by Plaintiff's counsel.  *See generally* CM/ECF 211.

of his Fifth Amendment right and elicit Charles's confirmation that he would like to invoke same.  *See* CM/ECF 225 at p. 3, 15; 225-1.  Indeed, Your Honor found "[Charles] never had a conversation with [Defense Counsel] about invoking his rights under the Fifth Amendment until very early in the morning on January 29, 2015. … Charles simply invoked his rights as soon as he was aware of them."  CM/ECF 228 at p. 15.  Had Defense Counsel reasonably prepared and timely advised Charles of his Fifth Amendment right or performed the conflict analysis prior to the date of the hearing, Defense Counsel would have discovered his conflict before Plaintiff prepared for and traveled to the hearing.

On April 15, 2015, Your Honor issued a Report and Recommendation, recommending the Court deny Plaintiff's motion to recover its otherwise avoidable expenses since Defense Counsel "did not act unreasonably."  CM/ECF 228 at p. 14.  Respectfully, this finding is inconsistent with prevailing law and the recommended ruling otherwise fails to appreciate that the reasonableness of Defense Counsel's belief is, by itself, an insufficient basis to find that he acted reasonably in waiting seven months to investigate his appreciable conflict of interest.

## III.    LEGAL STANDARD

This motion is properly brought pursuant to Your Honor's inherent authority.  It is axiomatic that "the power to decide in the first instance carries with it the power to reconsider." *E.g.*, *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1087 (10th Cir. 1980).  Magistrate judges often review their own orders for error.  *See, e.g.*, *Banks v. Stolz*, No. 1:12-cv-01473, 2015 WL 1229040 (C.D. Ill. Mar. 16, 2015) (magistrate partially grants motion to reconsider own order); *Mota v. U.S. Stell Corp.*, No 2:12-cv-510, 2015 WL 413909 (N.D. Ind. Jan. 30, 2015) (magistrate's acknowledged authority); *Wilder v. Daniels*, No. 13-cv-01701, 2015 WL 424571 (D. Colo. Jan. 29, 2015) (magistrate reconsiders); *U.S. v. Pon*, No. 3:14-cr-75, 2014 WL

4

3340584 (M.D. Fla. May 29, 2014) (same); *Williams v. Pollard*, No. 09-cv-485, 2010 WL

3789325 (W.D. Wisc. Sept. 23, 2010) (same); *Creasey v. Cigna Life Ins. Co.*, 255 F.R.D. 483

(S.D. Ind. 2009) (same); *Grasso v. Bakko*, No. 08-cv-471, 2009 WL 347631 (W.D. Wisc. Feb.

11, 2009) (same); *Ramirez v. Bd. Of County Com'rs of Texas*, No. 91 C 4282 1991 WL 214151

(N.D. Ill. Oct. 18, 1991) (same).

"Not only is a motion to reconsider an allowable method of reviewing a prior order, it is

the most appropriate and advantageous method of seeking relief from an interlocutory order for a

party to pursue." *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993).  A

motion to reconsider is the favored procedure where, as here, the court has misapplied the record

facts to the controlling law.  *See Mitchell v. JCG Indus.*, 842 F. Supp.2d 1080, 1082 (N.D. Ill.

2012); *see also Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A manifest

error is demonstrated by … misapplication, or failure to recognize controlling precedent [or the

applicable facts].").

IV.    **ARGUMENT**

   **A. Your Honor Correctly Held That If Plaintiff's Expenses Were Wasted Because
   Of Defense Counsel's Unreasonable Conduct, He Should Reimburse Plaintiff**

Your Honor correctly noted "[i]f a lawyer pursues a path that a reasonably careful

attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively

unreasonable and vexatious."  CM/ECF 228 *Id.* at p. 5 (citing *Dal Pozzo v. Basic Mach. Co.*, 463

F.3d 609, 614 (7th Cir. 2006)).  Your Honor also implicitly recognized that one of the ways an

attorney acts in an "objectively unreasonable and vexatious" manner is if he unreasonably

maintains dual representation of co-defendants or if he needlessly delays addressing a conflict of

interest.  CM/ECF 228 at p. 8.  If that unreasonable conduct causes procedural delays and wasted

expenses, then the attorney should be required "to satisfy personally the excess costs, expenses,

and attorneys' fees reasonably incurred because of such conduct." *Id.* at p. 5 (citing 28 U.S.C. § 1927).

**B. Your Honor's Recommendation Correctly Held That Indiana Rule Of Professional Conduct 1.7 Controls The Conflict Of Interest Analysis, But Incorrectly Found Defense Counsel Could Potentially Maintain Dual Representation In Compliance With The Rule**

As Your Honor correctly observed, an attorney's ability to represent co-defendants notwithstanding a conflict of interest is controlled by Indiana Rule of Professional Conduct 1.7. *See* CM/ECF 228 at p. 8. This rule explains an attorney has a conflict of interest if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." CM/ECF 228 at p. 8 (citing Ind. R. Prof'l Cond. 1.7(a)). Here, Your Honor correctly held that prior to the hearing Defense Counsel had an actual conflict of interest in representing both Kelley and Charles given the likelihood that one of them might invoke the Fifth Amendment. *See* CM/ECF at p. 8.

Your Honor held that notwithstanding his actual conflict, Defense Counsel could (and did) reasonably proceed with the dual representation for the seven months leading up to the hearing by establishing a reasonable belief that he could provide competent and diligent representation to both Charles and Kelley. *See* CM/ECF 228 at p. 10–11. More specifically, Your Honor found it was reasonable for Defense Counsel to wait seven months and until the date of the hearing to notify the Court about his conflict of interest and move to withdraw, reasoning:

> [U]ntil the date of the hearing itself, Philips [Defense Counsel] was under the impression that Charles was indeed going to testify. Far from setting a trap for Plaintiff, that is, it seems Phillips [Defense Counsel] was just as surprised by Charles' decision not to testify as were Plaintiff's attorneys.

> In light of this abrupt decision on Charles' part, the Court cannot say the Phillips [Defense Counsel] proceeded recklessly or 'unreasonably' in preparing for the hearing.

6

CM/ECF 228 at p. 10–11.

### 1. Your Honor's Analysis Fails To Appreciate The Significance of Your Findings

The foregoing analysis fails to appreciate Your Honor's express factual findings (1) that Defense Counsel did not make any effort to learn whether Charles would invoke his Fifth Amendment right at any time during the seven months before the hearing and (2) that "Charles simply invoked his rights as soon as he was aware of them," just before the hearing. *See* CM/ECF 225 at p. 3; 225-1; 228 at p. 15. Your Honor indicated that the hearing was rescheduled at the last minute because of an "abrupt decision on Charles' part." *Id.* at p. 11. Respectfully, however, it is Defense Counsel's abrupt last minute preparation and advice that caused his own surprise and the consequent need to reschedule. Had Defense Counsel timely investigated his conflict of interest and advised Charles of his Fifth Amendment right, Defense Counsel would not have been surprised the morning of the hearing. Defense Counsel's subjective surprise at Charles's decision does not excuse Defense Counsel's failure to avoid being surprised in the first instance. Defense Counsel does not—and cannot—offer any explanation for his seven-month inaction. In short, Defense Counsel could not have formed a *reasonable* belief that he could competently represent both Charles and Kelley at the sanctions hearing because he did not make an effort to learn whether Charles would invoke the Fifth Amendment until just before the hearing was scheduled to commence. *See Holloway v. Arkansas*, 435 U.S. 475, 486 n.8 (1978) ("The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one co-defendant except in unusual situations when, *after careful investigation*, *it is clear that no conflict is likely to develop* and when the [co]-defendants give an informed consent").

### 2.  Your Honor's Analysis Fails To Appreciate Applicable Law

Case law makes clear that it is unreasonable to wait until the day of a scheduled evidentiary hearing to begin preparing and to first question whether or not a hearing will have to be postponed.  In *Matter of Maurice*, 69 F.3d 830, 833 (7th Cir. 1995) and *U.S. v. Associated Convalescent Enters., Inc.*, 600 F. Supp. 18, 20 (C.D. Cal. 1984), for example, attorneys were sanctioned under 28 U.S.C. § 1927 for this very conduct.  In *Maurice*, an attorney representing a debtor in bankruptcy filed a notice of appeal from an order and scheduled same for hearing.  *See Maurice*, 69 F.3d at 832.  The client did not want the appeal or hearing to go forward.  However, the attorney did not communicate with his client in advance of the hearing.  Consequently, the hearing was not cancelled.  On the day of the hearing, it was revealed that it would be cancelled because the client no longer wished to proceed.  The Court sanctioned the attorney for unreasonably multiplying the proceedings and ordered him to pay his adversary's wasted costs, reasoning:

> Kozel had a duty to communicate with his client [in advance of the hearing]. [Since Kozel waited until the hearing to do this], Maurice had to travel approximately 100 miles to attend the hearing, a pointless formality…. Dornik's lawyer also had to attend, because he could not know in advance what would transpire.  The district court ordered Kozel to pay $2,281.50 to Dornik's lawyer for the costs of traveling to Chicago, and of course for the value of the attorney's time diverted by this bootless exercise.

*Id.* at 833.

A similar situation was before the court in *Associated Convalescent*. There, as here, an attorney withdrew from representation moments before trial on the basis that a conflict materialized. Because the potential for the conflict was discoverable to the attorney for a considerable amount of time, the court imposed a sanction in the form of attorney's fees and costs.  It explained:

> Mr. Branton had a duty … to inform the Court of the existence and nature of his potential conflict so that his requested substitution [of counsel] could be properly [and timely] evaluated. The failure to so advise the Court necessitated a last minute continuance of the trial. This continuance resulted in needless expenditure[s] in connection with the bringing of witnesses and counsel to court and the waste of counsels' time in preparation for trial. Had Mr. Branton been candid and forthcoming with the Court, this entire matter could and would have been resolved well in advance of the time that [the other attorney] had to complete preparations for trial and the summoning of its witnesses. The direct result of [the] failure on the part of Mr. Branton to inform the Court has been an otherwise avoidable expenditure by the [other attorney] of money and resources which will in large part be necessarily duplicated when this matter again comes on for trial.

*Associated Convalescent*, 600 F. Supp. at 20.

Additional authority likewise teaches that Defense Counsel's delayed preparations were objectively unreasonable for purposes of the § 1927 analysis. *See also Blue & Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 594 (7th Cir. 2012) (waiting until last minute to make inquiries and prepare is objectively unreasonable); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) (same); *Woodward v. Algie*, No. 1:13-cv-1435, 2014 WL 1233530, *3 (S.D. Ind. Mar. 21, 2014) (same); *Peters v. Wal-Mart*, 876 F. Supp.2d 1025, 1041 (N.D. Ind. 2012) (same); *See Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) (finding defense counsel acted unreasonably in maintaining representation of co-defendants without thoroughly discussing his clients' expected testimonies and alibis in advance of trial); *U.S. v. Fish*, 34 F.3d 488, 493 (7th Cir. 1994) (noting that an attorney has an ethical duty to avoid conflicts of interest and to promptly "determine when a conflict of interest exists *or will probably develop*"); *Voss v. USS Great Lakes Fleet, Inc.*, 35 F.3d 567 (6th Cir. 1994) (imposition of sanction in the form of attorney's fees and costs against attorney for cancelling two depositions at the last minute); *U.S. ex rel. Ballard v. Bengston*, 702 F.2d 656, 663 (7th Cir. 1983) ("defense counsel has the ethical obligation to [investigate appreciable conflicts of interest regarding] joint representation as early as possible"); *Washington v. Smith*, 48 F.Supp.2d 1149, 1159 (E.D. Wisc. 1999) (holding that an

attorney acts unreasonably and provides ineffective assistance if he waits until just before a hearing to determine what witnesses will testify); *Nelson v. Green Builders, Inc.*, 823 F. Supp. 1439, 1451 (E.D. Wisc. 1993) (granting a motion to disqualify, and reprimanding conflicted attorney for failing to timely raise the issue when the potential for his conflict of interest was first appreciable); *U.S. v. Robinson*, No. 88-30021, 1990 WL 34678, *8 (S.D. Ill. Mar. 24, 1990) (noting that if delays in litigation are fairly and directly attributable to an attorney's failure to timely notify the court of a potential conflict of interest, equitable relief is warranted in favor of the prejudiced party).

### 3.   Your Honor's Analysis Fails To Fully Appreciate All Aspects Of Rule 1.7

Assuming *arguendo* that Defense Counsel acted reasonably in believing he could proceed conflict-free, the inquiry does not end there.  This is because the reasonableness of an attorney's belief is only one of the four required factors set forth in Indiana Rule of Professional Conduct 1.7.  Put another way, Indiana's bar rules <u>prohibited</u> Defense Counsel from proceeding <u>unless</u> Defense Counsel satisfied <u>three</u> additional requirements.  First, the representation must be permitted by applicable law and the conflict of interest must be waivable.  *See* Ind. R. Prof'l Cond. 1.7(b)(2); cmnt. 16.  Second, the representation must not "involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."  Ind. R. Prof'l Cond. 1.7(b)(3).  Third, each affected client must give "informed consent, confirmed in writing."  Ind. R. Prof'l Cond. 1.7(b)(4).

### a.   Defense Counsel's Conduct Was Prohibited By Rule 1.7(b)(2)

The joint representation of two co-defendants accused of conspiring to obstruct justice through perjury, spoliation, and suppression of evidence is prohibited by law.  *See Wheat v. U.S.*, 486 U.S. 153, 164 (1988) (refusing conflict of interest waiver under similar circumstances: "in

the likely event the defendant's co-conspirators were to testify, his chosen counsel would have been unable ethically to provide vigorous cross-examination"); *U.S. v. Algee*, 309 F.3d 1011, 1014 (7th Cir. 2002) (same); *see also Ross v. Heyne*, 638 F.2d 979, 983 (7th Cir. 1980) ("An actual conflict would arise where defense counsel is unable to cross-examine … effectively because the attorney also represented the [co-defendant].  The problem arises when one attorney … may have privileged information obtained from a [co-defendant] that is relevant to cross-examination, but which he refuses to use for fear of breaching his ethical obligation to maintain the confidences of his client"); *iHealthcare, Inc. v. Greene*, No. 2:11-cv-396, 2012 WL 2026361, *6 (N.D. Ind. June 5, 2012) (disqualifying an attorney for his unreasonable representation in the face of an unwaivable conflict of interest); *U.S. ex rel. Williams v. Franzen*, 531 F.Supp. 292, 296 (N.D. Ill. 1981) ("In any case where two or more defendants have inconsistent stories relating to the crime charged, joint representation is impermissible.  This is particularly true where one of the defendants [pleads the Fifth] because of conflicting loyalties.").

Consequently, and notwithstanding Defense Counsel's subjective beliefs, his seven month delay in withdrawing was *per se* unreasonable. *See id.*; *see also* Ind. R. Prof'l Cond. 1.7(b) cmnt. 14–17 (when a lawyer faces a prohibited representation, he must promptly withdraw); *Matter of Hoffman*, 700 N.E. 2d 1138, 1139 (Ind. 1998) (reprimanding attorney who failed to timely withdraw after it became apparent that his representation could become materially limited, finding such conduct unreasonable and in violation of bar rules).

### b.  Defense Counsel's Conduct Was Prohibited By Rule 1.7(b)(3)

Even if not otherwise prohibited by law, under no circumstances may a lawyer represent two clients if the representation "involve[s] the assertion of a claim by one client against another client."  Ind. R. Prof'l Cond. 1.7(b)(3).  In order for Defense Counsel to have reasonably

11

maintained representation of both Kelley and Charles he would have had to ensure that neither

client was going to implicate the other with respect to each other's at-issue perjury, spoliation,

suppression of evidence, and obstruction of justice.  The record confirms that the Defendants'

discovery responses indicated that Charles hid a crucial piece of evidence in this case from

Kelley, causing its prolonged nondisclosure.  *See* CM/ECF 137-2 at p. 1–3 (admitting that the

withheld hard drive was "hidden or secret" and not "reasonably discoverable" to Kelley).  This is

obstruction of justice.  Consistent with their discovery responses that Kelley would likely blame

Charles for his obstructions, Kelley testified at the continued April 30, 2015 hearing against

Charles's interests regarding the suppressed and spoliated hard drives.  *See* CM/ECF 235.

Defense Counsel's seven-month dual representation was therefore prohibited.  *See U.S. ex rel.*

*Gray v. Director*, 721 F.2d 586, 596–97 (7th Cir. 1983) (noting that a conflict of interest

precludes representation "whenever one defendant stands to gain significantly by counsel

adducing probative evidence or advancing plausible arguments that are damaging to the cause of

a codefendant whom counsel is also representing"); *Van Kirk v. Miller*, 869 N.E. 2d. 534, 542

(Ind. Ct. App. 2007) (explaining that there is a nonconsentable conflict of interest if a lawyer's

clients' interests are "directly adverse to each other in litigation that is before a tribunal.").

### c.   Defense Counsel's Conduct Was Prohibited By Rule 1.7(b)(4)

Even if Defense Counsel's conflict was waivable—and it was not—his conduct was

likely prohibited by Rule 1.7(b)(4).  This rule states that a lawyer may not proceed in the face of

a significant risk of a conflict of interest unless the lawyer obtains the written, informed consent

from each client.  *See* Ind. R. Prof'l Cond. 1.7(b)(4).  Here, there is no record evidence to suggest

Defense Counsel obtained written consent from Charles or Kelley.  *See Robertson v. Wittenmyer*,

736 N.E.2d 804, 806–07 (Ind. Ct. App. 2000) (disqualifying conflicted attorney for his

unreasonable failure to timely obtain written waivers).

### C. Plaintiff's Initial Failure To Confer With Defense Counsel Should Not Alter the Analysis

Plaintiff's initial failure to confer does not justify denying Plaintiff's motion. At best, it would only serve as a basis to deny Plaintiff's motion without prejudice, so that Plaintiff could re-file once it complies with the local rule. *See Rector v. Town of Fishers*, No. 1:11-cv-0674, 2012 WL 2154343, \*2 (S.D. Ind. June 13, 2012) (noting that the failure to confer can be overlooked and does <u>not</u> preclude granting a motion). However, since Rule 1 mandates that controversies be resolved speedily and inexpensively, courts routinely overlook failures to confer if the conferral would have been futile or if the movant otherwise cures its initial failure by confirming that the issues raised cannot be resolved without court intervention. *See, e.g.*, *Houston v. C.G. Sec. Servs., Inc.*, 302 F.R.D. 268, 270 (S.D. Ind. 2014) (encouraging courts to disregard noncompliance with local conferral rule if "the distasteful behavior [has] already occurred, [and] it is unlikely the issue would be resolved by meeting and conferring with opposing counsel"); *Meek v. Otis Elevator Co.*, No. 1:13-cv-00168, 2013 WL 5918765, \*2 (S.D. Ind. Oct. 31, 2013) (holding that when conferral efforts "would have made no difference, … Local Rule 7-1(g) should not bar Plaintiff's recovery of fees.").

Here, since Plaintiff seeks compensation for Defense Counsel's prior actions, a conferral would have been futile. Further, as soon as Plaintiff realized its initial failure to confer, it promptly conferred with Defense Counsel, and Defense Counsel confirmed he opposes Plaintiff's requested relief. *See* CM/ECF 224 at p., 7. Consequently, Plaintiff cured its initial failure and its noncompliance amounts to harmless error. *See Sambrooks v. Choiseme*, No. 2:12-cv-102, 2014 WL 4449914, \*3 (N.D. Ind. Sept. 10, 2014) (declining to dismiss a motion without prejudice for noncompliance with local conferral rule since the record suggested that conferral

would have been futile).

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests Your Honor reconsider the

Report and Recommendation, and issue an order finding Defense Counsel violated § 1927 and

ordering him to pay Plaintiff's *excess* and *reasonable* wasted costs, travel expenses, and

attorney's fees incurred in preparing and traveling to the January 29, 2015 evidentiary hearing.

Respectfully submitted,

By:     /s/ *M. Keith Lipscomb*
M. Keith Lipscomb, Esq. (429554)
klipscomb@lebfirm.com
Jason H. Cooper, Esq. (98476)
jcooper@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Business: (786) 431-2228
Facsimile: (786) 431-2229

Co-counsel:

Paul J. Nicoletti, Esq. (P-44419)
pauljnicoletti@gmail.com
NICOLETTI LAW, PLC
33717 Woodward Ave, #433
Birmingham, MI 48009
Business:  (248) 203-7800
Facsimile: (248) 928-7051

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2015, I electronically filed the foregoing document with
the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and
interested parties through this system.

By:     /s/ *M. Keith Lipscomb*

## CERTIFICATE OF CONFERRAL

I hereby certify that, on May 4, 2015 and prior to filing this motion, I emailed Defense Counsel and counsel for Charles in a good faith effort to confer regarding the subject motion. To avoid unnecessary and potentially prejudicial delay, undersigned files this motion notwithstanding the fact that Defense Counsel and counsel for Charles have not yet responded to Plaintiff's inquiry. Undersigned will promptly supplement the record with a statement certifying whether and to what extent Defense Counsel and counsel for Charles consent to Plaintiff's requested motion for reconsideration.

By:     /s/ *Jason H. Cooper*