UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-00205-WTL-MJD |
| | ) | |
| KELLEY TASHIRO, | ) | |
| N. CHARLES TASHIRO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION**

This matter comes before the Court on Plaintiff's "Motion for Reconsideration of Report and Recommendation." [Dkt. 238.] For the reasons that follow, the Magistrate Judge **DENIES** Plaintiff's motion.

## I.  Introduction

This order assumes that the reader is familiar with the facts giving rise to the previous Report and Recommendation on Plaintiff's Motion for Entitlement to Fees and Sanctions. [Dkt. 228.] In brief, attorney Jonathan Phillips ("Phillips") undertook to simultaneously represent Defendants Kelley and Charles Tashiro. Malibu Media ("Plaintiff") filed a motion for sanctions against Defendants in which it accused both Defendants of perjury and spoliation of evidence. [Dkts. 130 & 159.] On November 11, 2014, the Court set Plaintiff's motion for an evidentiary hearing to be held on January 22, 2015. [Dkt. 165.]

The morning of the hearing, attorney Phillips advised the Court that he had just learned that Defendant Charles Tashiro planned to invoke his Fifth Amendment right to avoid testifying in a way that could incriminate himself. [Dkt. 206.] Phillips concluded that this created a conflict

1

of interest between his clients, and Phillips committed to withdraw his appearance for Charles. [*Id.*] The Court then continued the hearing to allow Mr. Tashiro to seek new counsel. [*Id.*]

Following the continuance, Plaintiff filed its "Motion for Entitlement to Fees and Sanctions." [Dkt. 211.] Plaintiff sought to hold Defendant Charles and attorney Phillips liable for the fees and costs associated with preparing for the aborted evidentiary hearing, but the undersigned Magistrate Judge recommended that the Court deny Plaintiff's motion. [Dkt. 228.] Instead of objecting to the Report and Recommendation, Plaintiff filed the currently pending Motion for Reconsideration. [Dkt. 238.] Plaintiff's motion focuses on whether Phillips failed to satisfy Indiana Rule of Professional Conduct 1.7(b) in such a way that he "unreasonably and vexatiously" multiplied the proceedings within the meaning of 28 U.S.C. § 1927. The Magistrate Judge therefore will not address any other aspects of the prior Report and Recommendation. *See, e.g.*, *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 879 (7th Cir. 2014) (undeveloped arguments are waived).

## II.     Discussion

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). Plaintiff has not put forward any new evidence with its motion, and Plaintiff must thus be arguing that the undersigned's prior recommendation constituted a "manifest error[] of law or fact."  This is a difficult standard to meet: "Motions to reconsider are granted for 'compelling reasons,' such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier." *Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) (citation omitted). It is accordingly "inappropriate to argue matters that could have been raised in prior motions" or to

2

"rehash previously rejected arguments[.]" *United States v. Zabka*, No. 1:10-CV-1078, 2013 WL 9564253, at *2 (C.D. Ill. Aug. 19, 2013); *accord, e.g.*, *Caisse Nationale*, 90 F.3d at 1270 ("Again we emphasize, apart from manifest errors of law, reconsideration is not for rehashing previously rejected arguments."); *id.* ("[A] motion to reconsider is not the appropriate vehicle to introduce new legal theories[.]"). This Court ultimately has "broad discretion" in deciding whether to grant a motion for reconsideration, *Solis*, 557 F.3d at 780, and for the reasons that follow, the Magistrate Judge exercises that discretion to deny Plaintiff's motion.

### A. Indiana Rule of Professional Conduct 1.7

The previous Report and Recommendation explained that, until the morning of the originally scheduled evidentiary hearing, attorney Phillips had a reasonable belief that he could represent both Charles and Kelley Tashiro. [Dkt. 228 at 10-11.] In so finding, the undersigned Magistrate Judge determined that Phillips reasonably believed he was in compliance with Indiana's ethical rules governing concurrent conflicts of interest. The relevant rule provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>   (1) the representation of one client will be directly adverse to another client; or
>   (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>   (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>   (2) the representation is not prohibited by law;
>   (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)  each affected client gives informed consent, confirmed in writing.

Ind. Rules of Prof'l Conduct R. 1.7. Plaintiff now attacks the determination that Phillips reasonably believed he was in compliance with this rule.

   **1. Rule 1.7(b)(1)**

Plaintiff argues that the previous Report and Recommendation "conflated [attorney Phillips'] subjective surprise" that Charles would invoke his Fifth Amendment rights "with the obligation to avoid being surprised in the first instance." [Dkt. 238 at 1.] Plaintiff maintains that a reasonable attorney would have "timely investigated his conflict of interest and advised Charles of his Fifth Amendment rights" well in advance of the hearing, [*id.* at 7], such that Phillips could not have "reasonably believe[d]," Ind. Rules of Prof'l Conduct R. 1.7(b)(1), that he would be able to provide representation to both of the Tashiros.

This argument simply rehashes an argument raised in Plaintiff's original motion for sanctions. [*See* Dkt. 211 at 7 ("As is readily apparent, however, Charles's right against self-incrimination and Phillips's obvious potential conflict of interest were known (and affirmatively brought to Phillips's attention) months in advance of the sanctions hearing. Phillips should have advised Charles of his Fifth Amendment rights and requested to withdraw from representation based on his readily apparent conflict of interest by July 15, 2014[.]").] As such, this argument is not an appropriate basis on which to grant Plaintiff's motion for reconsideration. *See Caisse Nationale*, 90 F.3d at 1270 ("[R]econsideration is not for rehashing previously rejected arguments.").

Plaintiff nonetheless adds to its argument with a discussion of the "financial interest-liberty interest dichotomy." [Dkt. 238 at 2-3.] Plaintiff concedes that in the early stages of this litigation, it "may [have been] reasonable to assume a waivable conflict existe[d]" between

4

Charles and Kelley because the Tashiros' financial interests were aligned. [*Id.* at 3.] After Plaintiff accused Charles and Kelley of perjury, however, Plaintiff maintains that the Tashiros' "liberty" interests were put at risk: perjury, the argument goes, is a crime, and so Plaintiff's motion for sanctions threatened both Tashiros with jail time. [*Id.*] This, in turn, allegedly caused the Tashiros' interests to diverge in such a way that Phillips could no longer reasonably believe that he could represent them. [*Id.*]

As an initial matter, Plaintiff has offered no explanation for why this discussion of the "financial interest-liberty interest dichotomy" was raised for the first time in its motion for reconsideration. As a result, this argument is not an appropriate basis for a motion for reconsideration. *See Caisse Nationale*, 90 F.3d at 1270 ("[A] motion to reconsider is not the appropriate vehicle to introduce new legal theories[.]"); *see also Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal quotation marks and alteration omitted) ("The district court correctly observed that motions for reconsideration do not provide a vehicle for a party to introduce new evidence or legal theories that could have been presented earlier.").

More to the point, Plaintiff's argument lacks merit. Although Plaintiff notes that a court **may** "refer a civil litigant to the U.S. Attorney's office for criminal prosecution based on perjury," [Dkt. 238 at 3 n.1], such a referral has not occurred in this case, and the Court has no plans to make such a referral. It is thus speculative and unwarranted for Plaintiff to treat the Tashiros as if they are or were criminal defendants facing jail time. This case remains a civil matter, and the Magistrate Judge thus agrees with Plaintiff that it was reasonable to assume that any conflict between the Tashiros was waivable. [*See* Dkt. 238 at 3.]

The fact that this is a civil matter also reduces the force of Plaintiff's argument that Phillips should have more carefully investigated any potential conflict. Plaintiff relies on a

footnote from *Holloway v. Arkansas*: "The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, *after careful investigation*, *it is clear that no conflict is likely to develop* and when the [co]-defendants give an informed consent." [Dkt. 238 at 7 (emphasis and alteration added by Plaintiff) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 486 n.8 (1978)).] Based on this passage, Plaintiff maintains that Phillips did not conduct a sufficiently "careful investigation" of his conflict between the time Plaintiff moved for sanctions and the time of the evidentiary hearing, such that Phillips abdicated his responsibility to act as a reasonable attorney. [*See id.*]

    *Holloway*, however, dealt with conflicts in criminal cases. *See* 435 U.S. at 485 (internal quotation marks omitted) ("An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial."). And indeed, the very footnote on which Plaintiff relies was a quotation from the "American Bar Association in its Standards Relating to the Administration of **Criminal** Justice." *Id.* at 486 n.8 (emphasis added). Thus, even if *Holloway* suggests that an especially careful investigation of conflicts is required in the criminal context, the case has little relevance to the civil matter currently before the Court. *Accord, e.g.*, Ind. Rules of Prof'l Conduct R. 1.7 cmt. 23 ("The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant. On the other hand, common representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met.").

    Finally, the Magistrate Judge remains unconvinced that Phillips failed to reasonably investigate his clients' positions. The prior Report and Recommendation already explained that

the Tashiros maintained consistent positions throughout this litigation. [Dkt. 228 at 6 ("[T]his case involved no 'incompatibility in positions' because both Defendants consistently maintained that no infringement occurred[.]"); *id.* at 8 ("Plaintiff's arguments about the alleged discovery violations overlook the fact that Defendants never actually adopted inconsistent positions."); *id.* at 9 ("[T]he Defendants had legitimate and consistent explanations for their alleged misconduct.).")] The Tashiros' positions at all times up to the evidentiary hearing were thus consistently aligned, and the Magistrate Judge cannot say that it was sanctionably unreasonable for Phillips to continue representing both clients. *Accord, e.g.*, *Van Kirk v. Miller*, 869 N.E.2d 534, 541 (Ind. Ct. App. 2007) (quoting Ind. Rules of Prof'l Conduct R. 1.7 cmt. 28) ("[C]ommon representation is permissible where the clients are generally aligned in interest even though there is some difference in interest among them.").

   **2. Rule 1.7(b)(2)**

The Indiana Rules of Professional Conduct provide that joint representation is not permissible if the representation is "prohibited by law." Ind. Rules of Prof'l Conduct R. 1.7(b)(2). Plaintiff argues that this aspect of Rule 1.7 precluded attorney Phillips from representing both Tashiros, such that it was unreasonable for Phillips not to withdraw as the attorney for Charles Tashiro at an earlier time. [Dkt 238 at 10-11.]

Again, Plaintiff has offered no reason why it did not raise this issue in its initial motion for sanctions. In that motion, Plaintiff cited Rule 1.7 multiple times, [Dkt. 211 at 20, 22], and Plaintiff quoted at length from the Rule and its comments. [Dkt. 211 at 20 n.11.] Plaintiff was thus obviously aware of the requirements of Rule 1.7(b), and Plaintiff's failure to raise this issue at an earlier time makes this argument an improper basis on which to grant Plaintiff's motion for

7

reconsideration. *See Zabka*, 2013 WL 9564253, at *2 ("It is inappropriate to argue matters that could have been raised in prior motions[.]").

The 1.7(b)(2) argument also fails on the merits. Plaintiff cites a string of cases that allegedly support its contention that "[t]he joint representation of two co-defendants accused of conspiring to obstruct justice through perjury . . . is prohibited," [Dkt. 238 at 10-11], but these cases are unpersuasive. At the outset, these cases deal primarily with conflicts in the criminal context, *see, e.g.*, *United States v. Algee*, 309 F.3d 1011, 1013 (7th Cir. 2002) (addressing "a criminal defendant's right to his chosen attorney"), whereas this case—as explained above— remains a civil matter. Hence, even if a more stringent prohibition on conflicts of interest is required to protect a criminal defendant's liberty interests than is necessary to protect a civil defendant's property interests, [*see* Dkt. 238 at 2-3], this more stringent standard is not relevant to this case.

Moreover, even if the Tashiros were facing criminal charges, the cases Plaintiff cites do not establish a per se rule that would prohibit an attorney from jointly representing them. These cases instead recognize that, when a criminal co-defendant seeks to waive his right to an un-conflicted attorney, the district court has "substantial latitude" in deciding whether the proposed joint representation is permissible. *See id.*; *see also Wheat v. United States*, 486 U.S. 153, 163 (1988). The law therefore does not recognize Plaintiff's alleged per se rule against joint representation. *Accord, e.g.*, *Hanna v. State*, 714 N.E.2d 1162, 1166 (Ind. Ct. App. 1999) (citing *Holloway*, 435 U.S. 475, 482–83) ("Requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel. We have further recognized that a defendant may waive his right to be represented by counsel who is unencumbered by conflicting interests."); *see*

*also id.* (quoting *Holloway*, 435 U.S. at 482-83) ("[M]ultiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. . . . 'Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack.'"). Based on the this analysis, Phillips' representation was not "prohibited by law," and the undersigned accordingly concludes that Phillips did not ignore the requirements of Rule 1.7(b)(2).

### 3. Rule 1.7(b)(3)

Indiana provides that a conflict may be waived only if "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." Ind. Rules of Prof'l Conduct R. 1.7(b)(3). Plaintiff contends that this rule prohibited Phillips' joint representation because "Kelley would likely blame Charles for his obstructions," such that Kelley would essentially be "assert[ing] a claim" against Charles. [Dkt. 238 at 12.]

Once more, Plaintiff offers no explanation for its belated decision to raise this argument at this time, and its failure to do so is reason enough to deny the motion for reconsideration. *See Zabka*, 2013 WL 9564253, at *2. Plaintiff also misconstrues the meaning of Rule 1.7(b)(3). "Paragraph (b)(3) prohibits representation of **opposing** parties in the same litigation, regardless of the clients' consent. On the other hand, simultaneous representation of parties whose interests in litigation may conflict, **such as coplaintiffs or codefendants, is governed by paragraph (a)(2)**." Ind. Rules of Prof'l Conduct R. 1.7 cmt. 23. Rule 1.7(b)(3) is thus inapplicable to codefendants such as the Tashiros. Instead, the Court must look to Rule 1.7(a)(2), which states that a conflict arises if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]" *Id.* 1.7(a)(2). As

explained above, and as explained more fully in the prior Report and Recommendation, the Tashiros' case either 1) did not present such a "significant risk" or 2) presented only a risk to which the affected parties could consent. [*See* Dkt. 228 at 6-9.] Phillips thus did not violate Rule 1.7.

The case law Plaintiff cites does not change this analysis. Plaintiff first notes that the Seventh Circuit has observed that "[a] conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." *U.S. ex rel. Gray v. Dir., Dep't of Corr., State of Ill.*, 721 F.2d 586, 596-97 (7th Cir. 1983) (quoting *Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir.1975)). The court in *Gray*, however, said nothing about whether such a conflict may be waived, *see id.*, and in fact, the case that *Gray* quoted, *Foxworth*, expressly recognized that "[j]oint representation . . . does not inherently deprive a defendant of the effective assistance of counsel." 516 F.2d at 1076. *Gray* might therefore support Plaintiff's contention that Phillips' clients had a conflict of interest, but the case does not support Plaintiff's contention that Phillips could "under no circumstances" continue representing them. [Dkt. 238 at 11.] To the contrary, as long as Phillips complied with Rule 1.7—and as explained in this order, Phillips did—then Phillips' representation was appropriate. *See* Ind. Rules of Prof'l Conduct R. 1.7(b) (explaining the situations in which a lawyer may "represent a client" regardless of "the existence of a concurrent conflict of interest").

Plaintiff then cites *Van Kirk v. Miller*, 869 N.E.2d 534, 542 (Ind. Ct. App. 2007). [Dkt. 238 at 12.] There, the Indiana Court of Appeals acknowledged that some conflicts are not consentable, but the court went on to find that the conflict at issue **was** consentable because the affected clients "had a common goal" and because their interests were "generally aligned." 869

10

N.E.2d 534 at 542 (quoting Ind. Rules of Prof'l Conduct R. 1.7 cmt. 28). Here, Plaintiff itself acknowledges that the Tashiros' financial interests were "generally aligned," [*see* Dkt. 238 at 2-3], and the longstanding consistency between the Tashiros' legal positions confirms that they had both a common goal and aligned interests in defending this case. If anything, then, *Van Kirk* supports the conclusion that Phillips' representation was not unreasonable.

### 4. Rule 1.7(b)(4)

Indiana finally requires that a lawyer who seeks to represent conflicted clients must obtain each client's "informed consent, confirmed in writing." Ind. Rules of Prof'l Conduct R. 1.7(b)(4). Plaintiff asserts that "there is no record evidence to suggest Defense Counsel obtained written consent from Charles or Kelley," [Dkt. 238], but it is **Plaintiff's** burden to show that the imposition of sanctions is warranted. *See, e.g.*, *Vandeventer v. Wabash Nat. Corp.*, 893 F. Supp. 827, 842 (N.D. Ind. 1995). If Plaintiff believes that Phillips proceeded unreasonably because Phillips failed to obtain written consent from his clients, then Plaintiff must put forth evidence to support its claim. Plaintiff has not done so, and this argument thus presents no reason to reconsider the prior Report and Recommendation.

### 5. Case Law

In addition to Rule 1.7(b), Plaintiff supports its motion for reconsideration with *Matter of Maurice*, 69 F.3d 830 (7th Cir. 1995), and *U.S. v. Associated Convalescent Enters., Inc.*, 600 F. Supp. 18 (C.D. Cal. 1984). [*See* Dkt. 238 at 8-9; *see also* Dkt. 244 at 7 ("[Phillips] fails to address the vast majority of Plaintiff's case law, including *Matter of Maurice*, 69 F.3d 830 (7th Cir. 1995) and *U.S. v. Associated Convalescent Enters., Inc.*, 600 F. Supp. 18 (C.D. Cal. 1984), cases in which attorneys were sanctioned under 28 U.S.C. § 1927 for conduct identical to Phillips's under even less egregious circumstances.").] As an initial matter, these cases are the

same cases on which Plaintiff relied in its original motion for sanctions, and Plaintiff has in fact quoted many of the same sentences in both its original motion and the current motion for reconsideration. [*Compare* Dkt. 211 at 23-24, *with* Dkt. 238 at 8-9.] Once again, then, Plaintiff is merely rehashing the same arguments that were previously rejected, in apparent ignorance of the Seventh Circuit's admonition that it is not appropriate to do so. *See Caisse Nationale*, 90 F.3d at 1270 (7th Cir. 1996) ("Again we emphasize, apart from manifest errors of law, reconsideration is not for rehashing previously rejected arguments.").[1]

In any event, the cases on which Plaintiff relies do not establish that sanctions are warranted. In *Matter of Maurice*, the district court sanctioned attorney Kenneth Kozel because Kozel filed and then continued to pursue an appeal of his client's claims without his client's authorization. 69 F.3d at 833. The Seventh Circuit upheld the imposition of sanctions and quoted the district court in noting that "Kozel had a duty to communicate with his client and abide by his decision not to pursue an appeal. The right to appeal in this case was Maurice's, not Kozel's, regardless of how justified Kozel thinks it is." *Id.* The court also observed that Kozel failed to return his client's telephone calls and failed to answer his client's letters, with the end result that the appeal contravened the express wishes of Kozel's client. *Id.* at 832-33.

The current case presents no such flagrant misconduct. Presumably, Plaintiff cites the case for the proposition that Phillips breached his own "duty to communicate with his client" by failing to specifically explain to Defendant Charles at an earlier date that Charles might wish to invoke his Fifth Amendment rights. Even if Phillips did breach this duty, however, Phillips did not compound this breach by ignoring the express wishes of his client: Phillips' conduct, that is, would have been comparable to Kozel's only if Phillips had both failed to advise Charles about

---

[1] It is also ironic that Plaintiff seeks sanctions for conduct that allegedly "multiplie[d] the proceedings," 28 U.S.C. § 1927, when it is Plaintiff that has now chosen to rehash the same arguments and the same issues in multiple motions.

his Fifth Amendment rights and had then ignored Charles' wishes once Charles was later informed about those rights. Nothing indicates that Phillips engaged in this latter misconduct, and so the Magistrate Judge does not find that Phillips' conduct is so similar to Kozel's that sanctions are warranted on the basis of *Matter of Maurice*.

*United States v. Associated Convalescent Enterprises, Inc.* is also distinguishable. There, the government named Mr. Leo Branton, Jr., as a potential witness. 600 F. Supp. at 18. Six weeks before trial, however, Mr. Branton entered an appearance on behalf of the defendant. *Id.* This created a potential conflict, *see, e.g.*, Model Rules of Prof'l Conduct R. 3.7 ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness [.]"), but Mr. Branton did not inform the court about the conflict until four days before the trial was to begin. *Id.* The court then postponed the trial and sanctioned Mr. Branton. *Id.* at 20. The court found "no merit in Mr. Branton's claim that he was wholly unaware of any potential conflict," and it wrote that Mr. Branton "had a duty at the time that he requested to be allowed to enter [the] case to inform the Court of the existence and nature of his potential conflict so that his requested substitution could properly be evaluated." *Id.* The court also observed that if Mr. Branton "had been candid and forthcoming with the Court," then the continuance could have been avoided. *Id.*

The current case is distinguishable in two respects. First, the Magistrate Judge has already described that attorney Phillips had a reasonable belief that he could represent the Tashiros because their positions had been consistent throughout the litigation. Based on this finding, the Magistrate Judge concludes that—unlike Mr. Branton—Mr. Phillips **was** unaware that a conflict would necessitate his withdrawal. Second, it is unclear that any additional "candor" or openness about any potential conflict would have prevented the continuation of the original evidentiary hearing. Admittedly, Phillips could have advised Charles at an earlier time

13

that Charles could assert his Fifth Amendment rights, but it had always been Defendants' position that no infringement or discovery misconduct occurred. [*See* Dkt. 228 at 9 ("Defendants had legitimate and consistent explanations for their alleged misconduct.").] In light of these innocent explanations for their alleged wrongdoing, Defendants would have had no reason to invoke their Fifth Amendment rights, and so even if Phillips had "been candid and forthcoming with the Court" when he decided to begin jointly representing the Tashiros, it is unlikely that the Fifth Amendment issue would have been raised. Thus, even if the Court accepted the proposition that Phillips should have communicated more openly with the Court, it is unlikely that such additional communication would have changed the course of this litigation.

Finally, even if the facts of the above-cited cases were closer to the facts of the case currently at hand, this Court would not be bound to sanction Phillips. Sanctions under 28 U.S.C. § 1927 are not mandatory, *see, e.g.*, *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004) ("Section 1927 is permissive, not mandatory. The court is not obliged to grant sanctions once it has found unreasonable and vexatious conduct."), and the trial court has significant discretion in deciding whether to impose such sanctions. *See, e.g.*, *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (citations omitted) ("The review of an order imposing sanctions under section 1927 is a deferential one, subject to the abuse of discretion standard. This court need only inquire whether any reasonable person could agree with the district court's sanction award."). Here, an exercise of that discretion is warranted. Phillips reasonably believed that his clients had asserted and would continue to assert consistent positions that would allow him to represent both clients. And Phillips reasonably believed that his clients had legitimate explanations for their conduct, such that invoking the Fifth Amendment would not be necessary. These beliefs ultimately proved to be erroneous, but the Magistrate Judge does not

find that Phillips' conduct was so unjustified that sanctions are warranted. The motion to reconsider is **DENIED**.

### III. Conclusion

For the reasons set forth above, the Magistrate Judge **DENIES** Plaintiff's "Motion for Reconsideration of Report and Recommendation." [Dkt. 238.]

Date: 06/09/2015

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jonathan LA Phillips
jphillips@skplawyers.com

Jason H. Cooper
LIPSCOMB, EISENBERG & BAKER, PL
jcooper@lebfirm.com

Michael K. Lipscomb
LIPSCOMB, EISENBERG & BAKER, PL
klipscomb@lebfirm.com

Paul J. Nicoletti
NICOLETTI LAW, PLC
paul@nicoletti-associates.com

Jonathan LA Phillips
SHAY KEPPLE PHILLIPS, LTD
jphillips@skplawyers.com

Erin Kathryn Russell
THE RUSSELL FIRM
erin@russellfirmchicago.com