## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT INDIANA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 1:13-cv-00205-WTL-MJD |
| | ) | |
| v. | ) | |
| | ) | |
| KELLEY TASHIRO, | ) | |
| N. CHARLES TASHIRO | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S NOTICE REGARDING DAMAGES

Pursuant to this Court's June 11, 2015 Order [CM/ECF 246], Plaintiff, Malibu Media, LLC ("Plaintiff") files this notice to inform the Court how it wishes to proceed with regard to proving damages against Defendants Kelley Tashiro ("Kelley") and N. Charles Tashiro ("Charles") (together, "Defendants").

## I.    INTRODUCTION

This action involves Plaintiff's claims against Defendants for direct and contributory willful infringement with respect to twenty eight (28) copyrighted works. Plaintiff elected to pursue statutory, rather than actual, damages. Early in the proceedings, Plaintiff stipulated to only seek minimum statutory damages against Kelley. No such stipulation was made against Charles. Over the course of the ensuing year and a half, Kelley and Charles engaged in egregious bad faith litigation misconduct, including repeated commissions of perjury, as well as the destruction and withholding of material evidence. As a result of this misconduct and in light of Plaintiff's compelling evidence, this Court entered an order defaulting Defendants, finding them liable for the willful infringement of Plaintiff's twenty eight works. Plaintiff now asks this Court to award statutory damages in the amount of $630,000— $22,500 per work—$21,000 of

which Kelley should share joint and several liability.  As explained below, Plaintiff waives its

right to a jury trial on damages conditioned upon an award of not less than $252,000 in statutory

damages.  If Plaintiff's statutory award is not less than $500,000, Plaintiff will further waive its

right to attorneys' fees.  Plaintiff further asks this Court to include specific language in the final

default judgment to ensure that Defendants are not able to evade liability by discharging their

debt in bankruptcy.

## II.   FACTS

On May 18, 2015, the Honorable Judge Dinsmore issued a report and recommendation

finding by clear and convincing evidence that "Defendants spoiled evidence, committed perjury,

and failed to discharge their duties to conduct discovery reasonably and in good faith.  They lied

to the opposing party; they withheld the existence of material evidence; and they deleted

potentially damaging computer files the very night before they were to relinquish such files for

discovery."  CM/ECF 242 at p. 64.

First, the Honorable Judge Dinsmore found that Defendants completely disregarded their

obligations to participate honestly and diligently during discovery.  Kelley, Judge Dinsmore

found, "repeatedly failed to discharge her duty to reasonably investigate whether her discovery

responses were complete and accurate….  Kelley's failure to investigate was especially

egregious in light of her attorney's representations to the contrary."  *Id.* at p. 39–40.

Next, Judge Dinsmore found that Defendants did not merely fail to litigate in good faith,

but that they affirmatively litigated in bad faith since "Defendant Kelley agreed with Charles to

hide the truth in this case."  *Id.* at p. 45.  The Honorable Judge Dinsmore opined that Kelley

committed perjury throughout discovery and then also likely continued to provide false

testimony before the Court at the sanctions hearing.  *See id.* at p. 49–51.  Charles, in turn, lied

about receiving DMCA notices from his internet service provider and "intentionally fail[ed] to tell the truth [about numerous material issues] during his deposition." *Id.* at p. 20, 55.  Not only did Charles lie; he also spoiled evidence.  The Honorable Judge Dinsmore found that "Charles did in fact use BitTorrent to download Plaintiff's adult movies" and that he withheld hard drives and deleted "files that exposed him to liability" in a bad faith "calculated attempt to hide adverse evidence." *Id.* at p. 25–28.

Judge Dinsmore concluded that Defendants' repeated incidents of misconduct "flouted the important principles underpinning litigation carried on before this Court and other courts in the federal system" and caused "clear" and "extensive" prejudice to both Plaintiff and the judicial system as a whole:

> Plaintiff suffered extensive prejudice in … pursuing evidence that Defendants should have long ago disclosed.  Plaintiff spent a significant amount of time working on a strategy to further prove that the drives in fact existed and that Defendants were being untruthful.  Indeed, Kelley Tashiro acknowledged that searching for the Western Digital drive wasted a lot of Plaintiff's time, money, and energy, underscoring just how harmful Defendants' misconduct has been.
>
> Even worse, however, was the harm to the judicial system as a whole. … Defendants' conduct threatened to undermine the 'truth-seeking function' of this litigation, and the Court will not tolerate this 'affront' to the judicial process. [E]xposing the Tashiros' misconduct required multiple motions for sanctions, an aborted evidentiary hearing, a later, day-long evidentiary hearing, and a supplemental hearing for additional argument, all of which could have been avoided….  The Tashiros have thus imposed a severe burden on the judicial system, and the sanction for their conduct must likewise be severe.

*Id.* at p. 37, 61–63.

Defendants' "extensive pattern" of misconduct, the Honorable Judge Dinsmore determined, coupled with "the strength of Plaintiff's underlying copyright infringement claim," "warrants the harshest of sanctions." *Id.* at p. 23, 62–65.

On June 11, 2015, Your Honor entered an order adopting Judge Dinsmore's Report and

Recommendation, stating: "The Court will enter default judgment against Defendants Kelley Tashiro and N. Charles Tashiro once the issue of damages is resolved. To that end, within 14 days of the date of this order, the Plaintiff shall file a notice informing the Court how it wishes to proceed with regard to proving damages." CM/ECF 246.

### III.     PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES

Under the Copyright Act, "an infringer of copyright is liable for either—(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). "[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action…." 17 U.S.C. § 504(c)(1). If such an election is made, the available per-work statutory damages range from $750 to $30,000 for non-willful infringements, and from $750 to $150,000 for willful infringements. *See Sony BMG Music Ent'mt v. Tenenbaum*, 660 F.3d 487, 490 (1st Cir. 2011).

In this case, Plaintiff's Second Amended Complaint contains a count for willful direct copyright infringement against both Defendants and a count for willful contributory infringement against Kelley. *See* CM/ECF 124. Since a default judgment is being entered against Defendants, they are liable for willful direct and contributory infringement. *See White v. Marshall*, 771 F. Supp.2d 952, 954 (E.D. Wisc. 2011) ("A default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint. Upon entry of default, the court takes all well-pleaded allegations in plaintiff's complaint relating to liability as true." (citing *Breuer Electric Mfg. Co. v. Toronado Sys.*, 687 F.2d 182, 186 (7th Cir. 1982))).

In determining where within the per work range of $750 to $150,000 to enter an award against Defendants, this Court "may consider various factors such as the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Kinsey v. Jambow, Ltd.*, No. 14 CV 2236, 2014 WL 6845930, *2 (N.D. Ill. Dec. 4, 2014) (citing *Chi–Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229–30 (7th Cir.1991)).  Although there is no required formula, judges and juries typically award trebled damages—$2,500 per work—for willful infringement and then deviate upwards tenfold to $22,500 per work as a penalty and deterrent if there is litigation misconduct.  *See, e.g.*, *Sony BMG Music Ent'mt v. Tenenbaum*, 660 F.3d 487 (1st Cir. 2011) (affirming jury award of $22,500 per work for defendant's willful infringement where defendant committed perjury); *Malibu Media, LLC v. Etter*, No. 1:12-cv-01115, 2013 WL 6178626, *1 (S.D. Ind. Nov. 25, 2013) (awarding $2,250 per work in the absence of litigation misconduct); *Malibu Media, LLC v. Julien*, No. 1:12-cv-01730, 2013 WL 6178926, *1 (S.D. Ind. Nov. 25, 2013) (same); *Malibu Media, LLC v. Wei Goodrich*, 12-cv-01394-WYD-MEH, CM/ECF 121, at p. 16 (D. Colo. Oct. 30, 2013) (same); *Malibu Media, LLC v. John Does & Bryan White*, 2:12-cv-02078-MMB, CM/ECF 202 (E.D. Pa. June 18, 2013) (awarding $22,500 per work for defendant's willful infringement where defendant destroyed evidence).

Given Defendants' egregious misconduct in this case, Plaintiff submits that an award of trebled-tenfold damages—$630,000 ($22,500 per work)—should be entered.[1]  Statutory damages in this amount, although admittedly high, are entirely warranted and appropriate under the circumstances and are likely to be the amount a jury would award.  *White* and *Tennenbaum* are

---

[1] Although Defendants' liability is joint and several, *see* 17 U.S.C. § 504(c)(1), Plaintiff stipulated to seek only $750 per work against Defendant Kelley Tashiro.  *See* CM/ECF 95. Accordingly, Kelley should share joint and several liability with respect to $21,000 of the $630,000 judgment.

"must reads" insofar as they aptly illustrate why a judgment for less than this amount would be an inadequate penalty and deterrent.

In *White*, Plaintiff's Bellwether trial in the Eastern District of Pennsylvania, one of the defendants, Bryan White, engaged in litigation misconduct similar to—and perhaps even a bit less pervasive than—Defendants' in this case. Although Bryan White did not continuously withhold and lie about evidence for nine months—like Defendants did here—he nevertheless wiped his hard drive clean, reinstalled his computer's operating system to conceal his infringement, and testified falsely at an evidentiary hearing. *See Malibu Media, LLC v. John Does*, 950 F. Supp.2d 779, 786 (E.D. Pa. 2013). The Court ruled that Plaintiff was entitled to substantial statutory damages, noting that "there was no question about the willfulness" of the unlawful downloading and distributing of Plaintiff's copyrighted works through the BitTorrent protocol. *Id.* at 788. In calculating the statutory damages payable to Plaintiff, the Honorable Judge Baylson followed the accepted practice of trebling the statutory damages "to note that the defendant committed a serious tort" and then multiplying that award by ten to address defendant's litigation misconduct:

> [B]ecause of Bryan White's having perjured himself at the Rule 104 hearing and having taken steps to destroy and conceal evidence, a further substantial award of damages was necessary. In a criminal case, this conduct would be denominated as obstruction of justice. Bryan White's wiping clean of his computer in attempting to cover up the fact that he had downloaded the BitTorrent software, as well as five of Malibu's movies, required a substantial penalty, and also to make a statement that would effectively deter others from acting as Bryan White had acted in this case.

*Id.*; *see Malibu Media, LLC v. John Does & Bryan White*, 2:12-cv-02078-MMB, CM/ECF 202 (E.D. Pa. June 18, 2013) (setting damages at $22,500 per work).

Here, Defendants engaged in conduct similar to and more egregious than Bryan White. Like Bryan White, Defendants attempted to destroy evidence from a produced hard drive and

testified falsely at an evidentiary hearing. Defendants went even further than Bryan White because their perjury was not confined to an evidentiary hearing, but pervaded this entire litigation. Bryan White did not deliberately and consciously withhold and lie to the Court and opposing counsel about the existence of hard drives for nine months. Defendants did.

*Tenenbaum* is also illustrative and is one of the most well-known copyright infringement cases involving the use of an online peer-to-peer file sharing software. The district court entered judgment as to liability against the defendant, Joel Tenenbaum, and the jury awarded $675,000 in statutory damages ($22,500 per work). *See Tenenbaum*, 660 F.3d at 489. Although the district court reduced that award as excessive, the First Circuit reversed that reduction and reinstated the original $675,000 award, expressly finding same to be constitutional and not excessive, notwithstanding that Joel Tenenbaum admitted his responsibility at trial (unlike Defendants here) and confirmed that he had made false statements during discovery. *See id.* at 496. The First Circuit was not swayed by Tenenbaum's belated repentance, and ruled that the jury award was entirely consistent with the purpose and intent of the Copyright Act. *See id.* at 500 ("Congress last amended the Copyright Act in 1999 to increase the minimum and maximum awards available under § 504(c) . . . Congress found that 'copyright piracy of intellectual property flourishes, assisted in large part by today's world of advanced technologies,' and cautioned that 'the potential for this problem to worsen is great.'").

The First Circuit then explained that a trebled-tenfold damages award of $22,500 per work not only appropriately reflected Congress's concern with internet piracy, but also served an important punitive and deterrent function based on Joel Tenenbaum's misdeeds and the circumstances surrounding them. *See id.* To wit: the *Tenenbaum* Court emphasized that Joel Tenenbaum had shared thousands of copyrighted works and "was an early and enthusiastic user

of peer-to-peer networks" who had been downloading and distributing copyrighted works without authorization for years. *Id.* at 492. Tenenbaum had "accessed a panoply of peer-to-peer networks for [ ] illegal purposes from several computers" and had "copied illegally downloaded songs onto CDs and USB drives, both for personal use and to give to other individuals." *Id.* 492–95 ("At one point in time in 2004 alone, Tenenbaum had 1153 songs on his 'shared-directory' on the Kazaa network. Any one of those files within Tenenbaum's shared directory could be easily downloaded by other Kazaa users.").

Further, the Court noted that Tenenbaum "knew that his conduct, both his downloading and distribution, was illegal," since he had "received several warnings regarding the potential liability his actions carried with them" and because his internet service provider, who had terms of service prohibiting the use of the internet to infringe, had actually warned Joel Tenenbaum "against using the internet to illegally infringe copyrighted materials." *Id.* at 494–95. Although Tenenbaum was put on notice that "he had been detected infringing copyrighted materials," he "continued the illegal downloading and distribution of copyrighted materials [for] a full two years [and] stopped his activity only after th[e] lawsuit was filed against him." *Id.* Once litigation commenced, Tenenbaum then "lied in the course of [the] legal proceedings in a number of ways" and "attempted to shift responsibility for his conduct to other individuals. *See id.* at 495.

Once again, Defendants' misdeeds and dishonesty are similar to and more egregious than Joel Tenenbaum's. Just like Tenenbaum, Defendants were enthusiastic users of BitTorrent who had used various BitTorrent clients on several different computers. Just like Tenenbaum, Defendants downloaded and distributed copyrighted works without authorization for years, and Charles downloaded content to various sources for himself and to give to his wife Kelley. Just

like Tenenbaum, Defendants' internet service provider had terms of service prohibiting the use of the internet to infringe and sent Defendants numerous DMCA notices warning them to cease using their internet to illegally infringe copyrighted material.  And Plaintiff specifically warns against infringing its content on its website, a website that Charles admitted to visiting before this lawsuit.  In the face of these warnings and although on notice that their internet piracy was illegal, Defendants continued to infringe for about two years and only stopped their illegal file-sharing after this lawsuit was filed, just like Joel Tenenbaum.  And just like Tenenbaum, prior to trial, Defendants lied in a number of ways and attempted to shift responsibility for their conduct to other individuals.  Unlike Tenenbaum, though, Defendants never did ultimately admit liability or come clean.  Rather, Defendants attempted to continue their fraud by continuing their lies and by withholding and destroying evidence.  When finally confronted with evidence of their misconduct, Kelley then perpetuated her bad faith with new perjurious statements and Charles remained silent, choosing to invoke his Fifth Amendment right.

Taking all of the foregoing factors into consideration, Plaintiff is entitled to a very substantial award of statutory damages.  Since Defendants' conduct in this case is clearly as bad as, and indeed worse than, the conduct of Bryan White and Joel Tenenbaum, they should face a proportionate penalty.  Indeed, trebled-tenfold damages—$630,000 ($22,500 per work)—is more than warranted and is the amount that a jury would most likely award.

## IV.    PLAINTIFF'S CONDITIONAL WAIVER OF RIGHT TO JURY TRIAL AND ATTORNEY'S FEES

If a copyright owner elects to recover an award of statutory damages instead of actual damages and profits, "a defaulting defendant has no right to a jury trial on damages."  *See Teri Woods Publ'g, LLC v. Williams*, No. 12-4854, 2013 WL 6179182, *4 (E.D. Pa. Nov. 25, 2013); *UMG Recordings, Inc. v. Stewart*, 461 F. Supp.2d 837, 843 (S.D. Ill. 2006) (same).  Plaintiff, in

turn, waives its right to a jury trial on statutory damages contingent upon the Court not entering an award less than $250,000.  This amount corresponds to $9,000 per work, which is the lowest jury award ever entered in a peer-to-peer copyright infringement case involving litigation misconduct.  *See Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 889 (8th Cir. 2012).  Further, Plaintiff will waive its claim to attorneys' fees and costs if the Court enters a judgment equal to or greater than $500,000.

## V.    PLAINTIFF REQUESTS THAT THE COURT INCLUDE LANGUAGE IN THE JUDGMENT ADDRESSING DEFENDANTS' WILLFULNESS

Plaintiff also asks that the Court include language in the judgment explicitly reflecting that Defendants willfully infringed Plaintiff's copyrights.  Significantly, Plaintiff requests that this Court avoid including language in the final judgment that might suggest Defendants' infringements were committed negligently or with reckless indifference.  The semantics are pertinent because a debt arising from the "willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable in bankruptcy.  11 U.S.C. § 523(a)(6).  Willful copyright infringement qualifies as such a "willful and malicious injury." *Cf. Matter of Staggs*, 177 B.R. 92, 96 (N.D. Ind. 1995) ("Indiana has defined 'wrongful' as 'infringement of some right,' and 'wrong' as a 'violation of the municipal law, the law of civil conduct.'  Furthermore, under Indiana law, *if an act is wrongful and is done intentionally, without just cause or excuse, the act is malicious ... as those terms are defined by federal law under § 523(a)(6).*" (emphasis supplied)); *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) ("The term 'injury,' while not defined in the Code, is understood to mean a violation of another's legal right, for which the law provides a remedy. … 'Willfulness' can be found either if the "debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury."); *In re Pierce*, No. 12-80046, 2013 WL 1867606, *5 (S.D. Ind. April

10

30, 2013) ("[A] 'willful' injury is one arising out of the debtor's intentional act and is defined as 'deliberate or intentional. 'Maliciousness' means "a wrongful act done without just cause of excuse, which necessarily produces harm. It does not require ill will, spite or personal hatred.").

Since the volitional, injury-producing, and unjustified infringement of a copyright amounts to a "willful and malicious injury," the law is well settled that a judgment for willful copyright infringement is not dischargeable in bankruptcy. *See, e.g.*, *In re Frye*, No. CC-08-1055, 2008 WL 8444822, *7 n.15 (B.A.P. 9th Cir. Aug. 19, 2008) ("[W]illful copyright infringement is a willful and malicious injury and nondischargeable under § 523(a)(6)"); *In re Ahmed*, 359 B.R. 34 (E.D.N.Y. 2005) (granting summary judgment that an award of enhanced statutory damages for willful copyright infringement is a willful and malicious injury within the meaning of § 523(a)(6)); *In re Hibbs*, 161 B.R. 259 (C.D. Cal. 1993) (refusing to discharge in bankruptcy a judgment debt arising out of debtor's willful infringement of a copyright); *Matter of Remick*, 96 B.R. 935, 943 (W.D. Mo. 1987) ("the indebtedness of defendant … to plaintiffs for playing musical compositions subject to plaintiffs' copyrights after August 7, 1986, be, and it is hereby, declared to be nondischargeable in bankruptcy"); *In re Massier*, 51 B.R. 229, 231 (D. Colo. 1985) ("Where there has been a willful copyright infringement, the Debt occasioned thereby is not dischargeable.").

Here, default judgment is being entered against Defendants on Plaintiff's claims of willful copyright infringement, and so the default judgment—whatever the amount—cannot be discharged in bankruptcy. Nor should it be. This Court is deliberately entering the severe sanction of default against Defendants to (1) redress the wrongs inflicted upon Plaintiff; (2) deter future infringement, both respect to Defendants and generally; and (3) punish Defendants for their willful infringement and their subsequent pervasive obstructionist efforts to hide and lie

about their misconduct.  *See* CM/ECF 242 at p. 37, 62–65.  None of these goals would or could be adequately addressed if Defendants are able to simply skirt liability by declaring bankruptcy and discharging their debt.  To ensure that Defendants are unable to do this, Plaintiff respectfully requests that the Court not just state an amount in the judgment, but that it expressly holds that Defendants' infringements were "legally unjustified, willful, malicious, and injurious."

Respectfully submitted,

By:      /s/ *M. Keith Lipscomb*
         M. Keith Lipscomb, Esq. (429554)
         klipscomb@lebfirm.com
         Jason H. Cooper, Esq. (98476)
         jcooper@lebfirm.com
         LIPSCOMB EISENBERG & BAKER, PL
         2 South Biscayne Blvd.
         Penthouse 3800
         Miami, FL 33131
         Business: (786) 431-2228
         Facsimile: (786) 431-2229

         Co-counsel:

         Paul J. Nicoletti, Esq. (P-44419)
         pauljnicoletti@gmail.com
         NICOLETTI LAW, PLC
         33717 Woodward Ave, #433
         Birmingham, MI 48009
         Business:  (248) 203-7800
         Facsimile: (248) 928-7051

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ *M. Keith Lipscomb*